ACCEPTED
03-17-00365-cv
21266118
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/13/2017 1:13 PM
JEFFREY D. KYLE
CLERK

## NO. 03-17-00365-CV

**IN THE THIRD COURT OF APPEALS AUSTIN, TEXAS**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/13/2017 1:13:06 PM
JEFFREY D. KYLE
Clerk

*MATEO CORTEZ, AS REPRESENTATIVE OF THE ESTATE OF DEBORAH CORTEZ,*
*APPELLANT,*

*V.*

*SANDRA FLESHER BROWN; CHARLOTTE FLESHER ASH; CHARLENE FLESHER JOHNSTON; CONNIE LOU KEITH BARRY; RANDALL WAYNE DAVIS; VIRGINIA VILLERS; CHARLES ROBERTS; LISA A. SMITH; PATRICIA CHAPMAN; BETTY J. MARKS WEBB; JAMES BERL MARKS; LINDA MURRAY; THOMAS WAYNE MARKS; AND DONALD LEMAN WHITED,*
*APPELLEES.*

**Appeal from the Probate Court No. 1 of Travis County, Texas,
Trial Court Cause No. C-1-PB-16-002348**

**APPENDIX TO APPELLANT'S RESPONSE TO APPELLEES'
MOTION TO DISMISS FOR WANT OF JURISDICTION**

Respectfully submitted,

BROTHERTON LAW FIRM

By: /s/ William J. Brotherton
William J. Brotherton
State Bar No. 00789989
Shawn M. Brotherton
State Bar No. 24064956
BROTHERTON LAW FIRM
2340 FM 407, Suite 200
Highland Village, TX 75077
Phone: 972-317-8700
Fax: 972-317-0189

Susan S. Vance
State Bar No. 24036562
susan@svancelaw.com
SUSAN VANCE LAW PLLC
201 W. 5th Street, Suite 1100
Austin, Texas 78701
Phone: 512-736-7295
Fax: 866-523-5449

ATTORNEYS FOR APPELLANT

## I.    CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Appendix to Appellant's Response to Appellees' Motion to Dismiss for Want of Jurisdiction* was forwarded, on this 13th day of December, 2017, to the following:

Amanda G. Taylor
Beck Redden LLP
515 Congress Avenue, Suite 1900
Austin, TX 78701

Craig Hopper
Brian T. Thompson
Claire D. East
400 W. 15th Street, Suite 408
Austin, TX  78701

*Attorneys for Appellees: Linda Lou Marks Murray, individually; Charlene Rae Flesher Johnston; Charlotte Fae Flesher Ash; Sandra Kay Flesher Brown; Thomas Wayne Marks; James Berl Marks; Betty J. Webb; Patricia A. Chapman; Lisa A. Smith; Charles Bruce Roberts, Jr., Virginia Ann Roberts Villers; Randall Wayne Davis; Sherry Lynn Whited Salsbury; Terry Lee Whited; Michael Ray Whited; Donald Leaman Whited; and Connie Lou Keith Barry*

/s/ William J. Brotherton
William J. Brotherton

# APPENDIX

**Tab**    **Document**

A.    June 26, 2017, Letter from Aaron C. Boone (filed in West Virginia case)

B.    February 14, 2017, Defendant Connie Lou Keith Barry's Motion for Leave to File Surreply to Give Notice of Developments Relating to the Texas Litigation (filed in West Virginia case)

C.    June 23, 2017, Defendant Connie Lou Keith Barry's Response in Opposition to Motion to Intervene and Request for Sanctions (filed in West Virginia case)

D.    June 23, 2017, Defendant Connie Lou Keith Barry's Response in Opposition to Cortez's Post-Judgment Motion to Dismiss (filed in West Virginia case)

E.    June 22, 2017, Response of Linda Murray, in Her Capacity as Successor Trustee of the William D. Short and Phyllis D. Short Revocable Living Trust, to the Motion to Intervene Filed by The Estate of Deborah Cortez

F.    June 27, 2017, Finding of Fact and Conclusions of Law (entered in West Virginia case)

G.    July 27, 2017, Memorandum in Support of Defendant Connie Lou Keith Barry's Motion for Sanctions (filed in West Virginia case)

H.    September 19, 2017, Order Denying Defendant Mateo Cortez's Motion to Alter of Amend (entered in West Virginia case)

I.      September 19, 2017, Order Denying Motion to Dismiss (entered in the West Virginia case)

J.      September 19, 2017, Order Denying Motion to Intervene (entered in the West Virginia case)

K.      June 9, 2017, Docketing Statement

# APPENDIX A


600 Quarrier Street
Charleston, West Virginia 25301

101 South Queen Street
Martinsburg, West Virginia 25401

7000 Hampton Center
Morgantown, West Virginia 26505

501 Avery Street
Parkersburg, West Virginia 26101

Post Office Box 49
Parkersburg, West Virginia 26102
(304) 485-8500

www.bowlesrice.com

Southpointe Town Center
1800 Main Street, Suite 200
Canonsburg, Pennsylvania 15317

1217 Chapline Street
Wheeling, West Virginia 26003

480 West Jubal Early Drive, Suite 130
Winchester, Virginia 22601

June 26, 2017

Aaron C. Boone
Telephone — (304) 420-5501
Facsimile — (304) 420-5587

E-Mail Address:
aboone@bowlesrice.com

James W. Marshall, III
Michael W. Taylor
BAILEY & WYANT, PLLC
500 Virginia Street East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
jmarshall@baileywyant.com

William J. Brotherton
Shawn M. Brotherton
BROTHERTON LAW FIRM
2340 FM 407, Suite 200
Highland Village, Texas 75077
william@brothertonlaw.com
shawn@brothertonlaw.com

**VIA E-MAIL AND FAX**

Re: SANCTIONS NOTICE
Linda Murray, as Successor Trustee of the William D. Short and Phyllis D. Short Revocable Living Trust Dated April 30, 1991 v. Linda Lou Murray *et al.* Civil Action No. 15-C-28, Circuit Court of Wirt County, West Virginia

Ladies & Gentlemen:

The purpose of this letter is to put you and your client on notice that my client intends to seek sanctions pursuant to Rule 11 of the West Virginia Rules of Civil Procedure, or pursuant to the Court's inherent authority to sanction bad faith litigation conduct, unless your client immediately ceases and desists from continuing to pursue claims to the William D. Short and Phyllis D. Short Revocable Living Trust Dated April 30, 1991, either in his personal capacity or by proxy through "the Estate of Deborah Cortez."

The terms of the Trust instrument are crystal clear, and have been ruled upon as a matter of law by both the Circuit Court of Wirt County, West Virginia and the Probate Court of Travis


County, Texas. The plain language of the Trust instrument makes no provision for your client. Your client has no claim to the Trust, either in his personal capacity or as representative of "the Estate of Deborah Cortez." Your client's claims to the contrary lack any basis in the Trust instrument or support under the law, and have already been sanctioned in Texas. Unless your client withdraws his frivolous pleadings, my client will seek the same sanctions in West Virginia.

The Circuit Court of Wirt County, West Virginia granted summary judgment against your client on September 15, 2016. The Probate Court of Travis County, Texas followed suit on December 19, 2016. Both courts rejected your client's claims, and pursuant to the parties' Rule 11 Agreement you are bound to abide by those rulings. Nonetheless, you continue to file frivolous pleadings in West Virginia, with the admitted purpose of obstructing the Court's resolution of the Trustee's motion for summary judgment. Moreover, it is clear that your client is intentionally driving up the cost of this litigation to retaliate against the Trustee and the Trust's rightful beneficiaries.

The course of action you are pursuing in West Virginia has already been found by the Texas court to be frivolous as a matter of law. Moreover, there is sufficient evidence to make a compelling case to the Court that your client's continued pursuit of this matter is being conducted in bad faith. If your client is unwilling to do the right thing and dismiss his frivolous claims to the Trust, then my client has authorized me to aggressively pursue sanctions against you for facilitating his wrongful conduct.

This matter is set for hearing tomorrow in the Circuit Court of Wirt County, West Virginia. I strongly urge your client to immediately cease his frivolous and futile pursuit of the Trust, and to dismiss his claims with prejudice at tomorrow's hearing.

Sincerely,

Aaron C. Boone

ACB/ljp
Enclosures

APPENDIX B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

LINDA MURRAY, in her capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short Revocable Living Trust
dated April 30, 1991,

       Plaintiff,

v.

                                        CIVIL ACTION NO. 2:16-cv-09951
                                        JUDGE JOHNSTON

LINDA LOU MURRAY, et al.,

       Defendants.

**DEFENDANT CONNIE LOU KEITH BARRY'S MOTION FOR LEAVE TO FILE SURREPLY TO GIVE NOTICE OF DEVELOPMENTS RELATING TO THE TEXAS LITIGATION**

Defendant Connie Lou Keith Barry ("Mrs. Barry"), by counsel, pursuant to Rule 7.1(a)(7) of the Local Rules of Civil Procedure, files this motion requesting leave of this Court to submit a surreply to *Defendant Connie Lou Keith Barry's Motion to Remand & Motion for Attorney Fees and Costs* (ECF No. 7) and to *Defendant Connie Lou Keith Barry's Response in Opposition to Defendant Mateo Cortez's Motion to Dismiss* (ECF No. 28).

The purpose of the surreply would only be to provide this Court with supplemental authority from the Texas Litigation, to wit; the *Order on Third Party Defendants' Motion to Modify Judgment to Include Sanctions Award* ("Order") and *Amended Final Judgment* ("Amended Judgment") entered on February 10, 2017 by the Travis County Probate Court No. 1 in Texas, under Cause No. C-1-PB-16-002348. (Attached as *Exhibit 1* and *Exhibit 2.*) The attached Order granted the heirs-at-law's motion that sanctions be assessed against William J. Brotherton and the Brotherton Law Firm for legal fees the heirs-at-law incurred in Texas

defending against certain claims submitted by William J. Brotherton and the Brotherton Law Firm.  The attached Amended Judgment orders William J. Brotherton and the Brotherton Law Firm, jointly and severally, to pay $65,130.76 in legal fees.  The attached were entered only two (2) business days ago and were not available to Mrs. Barry at the time she filed *Defendant Connie Lou Keith Barry's Motion to Remand & Motion for Attorney Fees and Costs* (ECF No. 7) or at the time she filed *Defendant Connie Lou Keith Barry's Response in Opposition to Defendant Mateo Cortez's Motion to Dismiss* (ECF No. 28).

If the Court grants the instant motion for leave to file surreply, then Mrs. Barry asks that, provided it so pleases the Court, this motion and the attached Order and Amended Judgment be accepted as said surreply, so that no further documents relating to the instant motion need be filed by Mrs. Barry.

Submitted this 14th day of February, 2017.

/s/ Aaron C. Boone
Aaron C. Boone (WVSB #9479)
Bowles Rice LLP
Fifth Floor, United Square
501 Avery Street, Post Office Box 49
Parkersburg, West Virginia  26102
(304) 420-5501
Facsimile (304) 420-5587
aboone@bowlesrice.com

Counsel for Defendant Connie Lou Keith
  Barry

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

LINDA MURRAY, in her capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short Revocable Living Trust
dated April 30, 1991,

        Plaintiff,

v.                                     CIVIL ACTION NO. 2:16-cv-09951
                                       JUDGE JOHNSTON

LINDA LOU MURRAY,

        Defendants.

## CERTIFICATE OF SERVICE

        I hereby certify that on February 14, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

        Andrew R. Herrick, Esquire

        James W. Marshall , III, Esquire

        H. F. Salsbery, Esquire

        J. Nicholas Barth, Esquire

        I hereby certify that I have mailed the document by United States Postal Service to the following non-CM/ECF participants:

        Robert S. Fluharty, Jr., Esquire
        Fluharty & Townsend
        417 Grand Park Drive, Suite 101
        Parkersburg, WV  26105

Leslie L. Maze, Esquire
Post Office Box 279
Elizabeth, WV  26143

William J. Brotherton, Esquire
Brotherton Law Firm
2340 FM 407, Suite 200
Highland Village, Texas  75077

Joseph T. Santer, Esquire
Santer and Santer
Post Office Box 306
Parkersburg, WV  26102

Linda Lou Murray
197 Oakbrook Drive
Mineral Wells, WV  26150

Sandra Kay Flesher Brown
99 Woodridge Drive
Mineral Wells, WV  26150

Charlene Rae Flesher Johnston
37 Franklin Street
Elizabeth, WV  26143

Charlotte Fae Flesher Ash
8653 White Swan Drive #104
Tampa, FL  33614

Virginia Ann Roberts Villers
28649 Alessandria Circle
Bonita Springs, FL  34135

Charles Bruce Roberts, Jr.
487 Wilson Fork
Elizabeth, WV  26143

Lisa Ann Rader Smith
96 Franklin Street
Elizabeth, WV  26143

Patricia Ann Marks Chapman
2670 Pettyville Road
Parkersburg, WV  26101

2

3

James Berl Marks
1093 S. Pleasant Hill Road
Belleville, WV  26133

Thomas Wayne Marks
749 S. Long Run Road
Belleville, WV  26133

Betty J. Webb
280 Bethel Road
Parkersburg, WV  26101

Randall Wayne Davis
1663 Brookford Road
Kernersville, NC  27284

Magen Elizabeth Whited
164 Joe Shore Drive
Ravenswood, WV  26164

_/s/ Aaron C. Boone_
Aaron C. Boone

8755086.1

No. C-1-PB-16-002348

| | |
|---|---|
| MATEO CORTEZ, AS REPRESENTATIVE§ <br> OF THE ESTATE OF DEBORAH CORTEZ§ <br> *Plaintiff* § <br> § <br> V. § <br> § <br> SANDRA FLESHER BROWN, § <br> CHARLOTTE FLESHER ASH, § <br> CHARLENE FLESHER JOHSTON, § <br> CONNIE BARRY, RANDALL WAYNE § <br> DAVIS, VIRGINIA VILLERS, CHARLES § <br> ROBERTS, LISA A. SMITH, PATRICIA § <br> CHAPMAN, BETTY J. MARKS WEBB, § <br> JAMES BERL MARKS, LINDA MURRAY, § <br> THOMAS WAYNE MARKS, DONALD § <br> LEMAN WHITED, MICHAEL RAY § <br> WHITED, TERRY LEE WHITED and § <br> SHERRY LYNN WHITED SALSBURY § <br> *Defendants* § | IN THE PROBATE COURT NO. 1 <br><br><br> OF <br><br><br><br><br><br><br><br><br><br><br><br> TRAVIS COUNTY, TEXAS |

## ORDER ON THIRD PARTY DEFENDANTS' MOTION TO MODIFY JUDGMENT TO INCLUDE SANCTIONS AWARD

On this day, the Court considered the Motion To Modify Judgment to Include Sanctions Award and the Supplement to the Motion To Modify Judgment to Include Sanctions Award (collectively the "Motion"), each filed by Third Party Defendants Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lou Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks, Donald Leman Whited, Michael Ray Whited, Terry Lee Whited and Sherry Lynn Whited Salsbury (collectively "Third Party Defendants"). Having considered the Motion, the response thereto, the admissible evidence, the other papers on file in this matter, and the arguments of counsel, the Court hereby GRANTS the Motion in part and makes the following findings and orders:

The Court finds that attorney William J. Brotherton violated Texas Civil Practices and Remedies Code Chapter 10 in signing the Original Petition in Intervention, the First Amended

1

EXHIBIT
1

No.  C-1-PB-16-002348

Petition in Intervention and Third Party Petition, Second Amended Petition in Intervention and Third Party Petition, the Third Amended Petition in Intervention and Third Party Petition, and the Fourth Petition in Intervention filed in this matter. In particular, the Court finds that Mr. Brotherton violated Texas Civil Practices and Remedies Code § 10.001 by signing these pleadings because each of them contained the claim that Deborah Cortez was entitled to all assets from The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust") upon the death of Phyllis Short because Deborah was over the age of 35 when Ms. Short died. The Court finds that the plain language of the Trust foreclosed such a claim and that this claim was not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

The Court further finds that attorney William J. Brotherton should have known that as of September 16, 2016, his legal position regarding postponement of the trust was untenable.  By maintaining that legal position in his Fourth Petition in Intervention, he caused the Third Party Defendants to incur additional attorneys' fees in responding to attorney William J. Brotherton's claim regarding postponement of the trust.

The Court hereby sanctions William J. Brotherton and the Brotherton Law Firm, jointly and severally, in the amount of $31,150.76 for fees incurred for work done by Brian Thompson and his associates at Hopper Mikeska, PLLC and $33,980.00 for fees incurred by Aaron Boone and his associate attorney at Bowles Rice, LLP, for a total of $65,130.76.  The Court orders that this amount be paid to the Third Party Defendants within 30 days of the entry of this order. The Court finds that there is a direct relationship between the sanctions being imposed and Mr. Brotherton's sanctionable conduct, in that the aforesaid amount represents reasonable and necessary attorneys' fees expended by attorneys for the Third Part Defendants to defend against

2

No.  C-1-PB-16-002348

the frivolous claims advanced by William J. Brotherton and the Brotherton Law Firm; that the sanctions are not excessive; and that these sanctions will appropriately deter other attorneys from signing pleadings containing claims that violate Texas Civil Practices and Remedies Code Chapter 10.

The Court hereby modifies its judgment entered on December 19, 2016, to include this award of sanctions.

Signed this 10th day of February, 2017.

_____
HONORABLE JUDGE GUY HERMAN

3

CAUSE NO. C-1-PB-16-002348

| | |
|---|---|
| MATEO CORTEZ, AS REPRESENTATIVE§<br>OF THE ESTATE OF DEBORAH CORTEZ§<br>  *Plaintiff*          § | IN THE PROBATE COURT NO. 1 |
|                         §<br>**V.**                      §<br>                         § | **OF** |
| **SANDRA FLESHER BROWN,**        §<br>**CHARLOTTE FLESHER ASH,**        §<br>**CHARLENE FLESHER JOHSTON,**      §<br>**CONNIE BARRY, RANDALL WAYNE**    §<br>**DAVIS, VIRGINIA VILLERS, CHARLES** §<br>**ROBERTS, LISA A. SMITH, PATRICIA** §<br>**CHAPMAN, BETTY J. MARKS WEBB,**   §<br>**JAMES BERL MARKS, LINDA MURRAY,** §<br>**THOMAS WAYNE MARKS, DONALD**     §<br>**LEMAN WHITED, MICHAEL RAY**      §<br>**WHITED, TERRY LEE WHITED and**    §<br>**SHERRY LYNN WHITED SALSBURY**    §<br>  *Defendants*         § | |
| | **TRAVIS COUNTY, TEXAS** |

AMENDED FINAL JUDGMENT

On December 19, 2016, the Court considered the Traditional and No Evidence Motion for Summary Judgment (the "Motion for Summary Judgment") filed by Third Party Defendants, Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lee Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks, Donald Leman Whited, Michael Ray Whited, Terry Lee Whited and Sherry Lynn Whited Salsbury, all in their individual capacities (collectively "Third Party Defendants"), in Cause Number C-1-PB-14-001564. After considering the Motion for Summary Judgment, the response, all admissible summary judgment evidence, the arguments of counsel, and the other papers on file with the Court, the Court GRANTED the Motion for Summary Judgment in its entirety and ORDERED, that Mateo Cortez's claims against Third Party Defendants be dismissed in their entirety. In particular, the Court dismissed any and all claims that Mateo Cortez, in his individual

1

EXHIBIT
2

capacity or in his capacity as personal representative of the Estate of Deborah Cortez, had to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust"), other than his claim for undistributed income from the Trust during the life of Deborah Cortez.

Also on December 19, 2016, the Court considered Third Party Defendants' Motion to Sever. After considering the Motion to Sever, the response, the arguments of counsel, and the other papers on file with the Court, the Court GRANTED the Motion to Sever in its entirety and ORDERED that Mateo Corez's claims against Third Party Defendants in this lawsuit be severed in their entirety and assigned the new cause number C-1-PB-16-002348.

On January 16, 2017, Third Party Defendants filed their Motion to Modify Judgment to Include Sanctions Award (the "Motion to Modify"), which extended the plenary power of the Court to modify its judgment. The Motion to Modify was heard by the Court at a hearing on January 30, 2017. After considering the Motion to Modify, the response, the admissible evidence presented at the hearing, the response, the arguments of counsel, and the other papers on file with the Court, granted the Motion to Modify in part and granted sanctions. The Court sanctions attorney William J. Brotherton and the Brotherton Law Firm, jointly and severally, in the amount of $65,130.76, and ORDERS that this amount be paid to the Third Party Defendants within 30 days of the entry of this final judgment.

This amended judgment finally disposes of all claims and parties and is final and appealable.

Signed this 10th day of February, 2017.

_____<br>HONORABLE JUDGE PRESIDING

2

APPENDIX C

# IN THE CIRCUIT COURT OF WIRT COUNTY, WEST VIRGINIA

LINDA MURRAY, in her capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short Revocable Living Trust
Dated April 30, 1991,

      *Plaintiff*,

v.

                                     **CIVIL ACTION NO. 15-C-28**

                                       **Judge Waters**

LINDA LOU MURRAY, et al.,

      *Defendants*.

## DEFENDANT CONNIE LOU KEITH BARRY'S RESPONSE IN OPPOSITION TO MOTION TO INTERVENE AND REQUEST FOR SANCTIONS

Defendant Connie Lou Keith Barry ("Mrs. Barry"), by counsel, responds in opposition to the motion to intervene filed by Mateo Cortez, "in his capacity as the Personal Representative of the Estate of Deborah Cortez." Mateo Cortez ("Cortez")'s latest set of filings are yet another frivolous attempt to obstruct the Trustee's administration of the William D. Short and Phyllis D. Short Revocable Living Trust dated April 30, 1991 (the "Trust"), and to drive up the costs of this litigation for the Trust's true beneficiaries. Cortez's motion should be denied, and his counsel should be sanctioned for knowingly filing frivolous papers with this Court.

## INTRODUCTION

Cortez was the husband of Deborah Cortez (nee Short), and is her sole heir at law and the administrator of her estate. Cortez has been a party to this case since November 10, 2015 (the date of filing), but made zero effort to join "the Estate of Deborah Cortez" as a party, or to suggest that it should be made a party, until after this Court granted summary judgment against

him on September 15, 2016.[1] At all times, Cortez had actual knowledge of this case and sole control over "the Estate of Deborah Cortez" as its administrator, and was represented by the same lawyers who now seek to appear and re-litigate this case on behalf of "the Estate of Deborah Cortez." Indeed, both before this Court and the Texas court, Cortez argued prior to judgment that the entirety of the Trust belongs to him *personally* as the sole heir of his late wife. Now, nine months after this Court granted summary judgment against him, and two weeks before the Court takes up the Trustee's motion to distribute the Trust to its rightful beneficiaries, Cortez attempts to reargue the same baseless claims that this Court *and the Texas court* both rejected.

Of course, as this Court ruled in its September 15, 2016 order granting partial summary judgment, neither Cortez nor "the Estate of Deborah Cortez" have any interest in the Trust. By the plain language of the Trust instrument, Deborah Cortez only had an interest in the Trust during her life, and that interest extinguished upon her death. The Trust assets now belong to the heirs at law of William D. Short and Phyllis D. Short; Cortez and "the Estate of Deborah Cortez" are not heirs at law of either settlor, and have zero interest in the Trust. Both this Court and the Texas court reached this conclusion as a matter of law.

On December 19, 2016, the Texas court also granted summary judgment against Cortez on *all* of his claims, concluding as a matter of law that Cortez and "the Estate of Deborah Cortez" have zero interest in the Trust:

---

[1] Cortez moved to alter or amend the Court's judgment, arguing in part that the Court failed to join "the Estate of Deborah Cortez" as an indispensable party. Cortez failed to raise this defense prior to judgment, and thus waived it. *See* W.Va. R. Civ. P. 12(h)(2) (stating that defense of failure to join an indispensable party may only be made "in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."). In any event, Cortez's interests and "the Estate of Deborah Cortez's" interests are identical, so "the Estate" was neither necessary nor indispensable to this case.

2

On this day, the Court considered the Traditional and No Evidence Motion for Summary Judgment (the "Motion") filed by Third Party Defendants ... Connie [Lou] Keith Barry ... all in their individual capacities. Having considered the Motion, the response, all admissible summary judgment evidence, the arguments of counsel, and the other papers on file with the Court, the Court hereby GRANTS the Motion *in its entirety.*

It is therefore, ORDERED, that Mateo Cortez's claims against Third Party Defendants in this lawsuit are dismissed in their entirety. In particular, *the Court hereby dismisses any and all claims that Mateo Cortez, in his individual capacity or in his capacity as personal representative of the Estate of Deborah Cortez,* has to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust"), other than his claim for undistributed income from the Trust during the life of Deborah Cortez. This judgment has no effect on Mateo Cortez's breach of fiduciary duty against Linda Murray, in her capacity as trustee of the Trust.

*Exhibit A, Order Granting Third Party Defendants' Traditional and No Evidence Motion for Summary Judgment,* Civil Action No. C-1-OB-14-1564 (Tex. Probate Ct. Dec. 19, 2016) (emphasis added). The Texas court subsequently amended its judgment to include sanctions against Cortez's lawyers, finding that Cortez's argument that "the Estate of Deborah Cortez" was entitled to the assets of the Trust was frivolous:

The Court finds that attorney William J. Brotherton violated Texas Civil Practices and Remedies Code Chapter 10 in signing the Original Petition in Intervention [and subsequent pleadings] filed in this matter. *In particular, the Court finds that Mr. Brotherton violated Texas Civil Practices and Remedies Code § 10.001 by signing these pleadings because each of them contained the claim that Deborah Cortez was entitled to all assets from [the Trust]. The Court finds that the plain language of the Trust foreclosed such a claim* and that this claim was not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

The Court further finds that William J. Brotherton should have known that as of September 16, 2016, his legal position regarding postponement of the trust was untenable ....

3

*Exhibit B*, *Order on Third Party Defendants' Motion to Modify Judgment to Include Sanctions Award*, Civil Action No. C-1-OB-14-1564 (Tex. Probate Ct. Feb. 10, 2017) (emphasis added). The Texas court sanctioned Cortez's lawyers in the amount of $65,130.76 for driving up Mrs. Barry's legal fees in Texas with his frivolous claims.

Although Cortez seeks to "intervene" on behalf "of the Estate of Deborah Cortez," in reality he seeks to hide behind a nominal party to avoid this Court's judgment, and to reargue in West Virginia the same ridiculous and insupportable legal theories that led to sanctions against his lawyers in Texas. The Court should deny Cortez's motion (and all of his other frivolous claims for relief), and sanction his counsel for wasting the Court's time and the parties' resources.

## ARGUMENT

### A.    CORTEZ'S ATTEMPT TO "INTERVENE ON BEHALF OF THE ESTATE OF DEBORAH CORTEZ" SHOULD BE DENIED.

Cortez's motion to intervene is frivolous and should be denied. Rule 24 of the West Virginia Rules of Civil Procedure states:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this State confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

W.Va. R. Civ. P. 24. "West Virginia Rule of Civil Procedure 24(a)(2) allows intervention of right in an action if an applicant meets four conditions: (1) the application must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's

4

ability to protect that interest; and (4) the applicant must show that the interest will not be adequately represented by existing parties." Syl. Pt. 2, *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 540 S.E.2d 917 (1999). For obvious reasons, Cortez cannot meet a single one of these criteria.

First, Cortez's motion is untimely. "While Rule 24 of the West Virginia Rules of Civil Procedure provides for the intervention of parties upon a timely application, the timeliness of any intervention is a matter of discretion with the trial court." Syl. Pt. 3, *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 540 S.E.2d 917 (1999). Cortez had actual notice of this suit in 2015, and knew or should have known at that time that he needed to "intervene on behalf of the Estate of Deborah Cortez" if he or his lawyers believed "the Estate" had an interest in this litigation. Instead, Cortez fought this case on other grounds, and specifically argued that he was personally entitled to the proceeds from the Trust. Cortez did not move to "intervene on behalf of the Estate" until nine months after this Court rejected his claim to the Trust and granted summary judgment against him. The Supreme Court of Appeals of West Virginia has upheld refusals to grant intervention where the movant had knowledge of a case but failed to move for intervention until after entry of judgment. *See West Virginia Public Employees Ins. Bd. v. Blue Cross Hosp. Service, Inc.*, 180 W.Va. 177, 375 S.E.2d 809 (1988) (motion to intervene untimely when filed three months after entry of dismissal order and movants knew or had reason to know of the pendency of the action prior to judgment); *Pauley v. Bailey*, 171 W.Va. 651, 301 S.E.2d 608 (1983) (permissive intervention) (motion to intervene untimely when filed almost one year after evidentiary hearings had closed and seven months after court's orders). This Court should similarly deny Cortez's motion as untimely.

Next, "the Estate of Deborah Cortez" has absolutely no interest in the Trust. Under the second and third prongs of Rule 24(a)(2), the movant must demonstrate both "an interest

5

relating to the property ... which is the subject of the action" and that disposition of the action may "impair or impede the applicant's ability to protect that interest." W.Va. R. Civ. P. 24. Mrs. Barry will not belabor points which have already been established by this Court and the Texas court as a matter of law. "The Estate of Deborah Cortez" has no interest in the Trust because the plain and unambiguous language of the Trust instrument affords no interest to Deborah Cortez upon her death. Deborah Cortez only possessed a life interest in the Trust income, which extinguished when she died. The disposition of this action will not impair the ability of "the Estate of Deborah Cortez" to protect its interest in the Trust because "the Estate of Deborah Cortez" has no interest to protect. This Court has already ruled on that issue and need not revisit it.

Finally, "the Estate of Deborah Cortez" was adequately represented in this litigation by Cortez himself, who is the administrator and sole heir of the estate. As to adequacy of representation by existing parties, "generally courts compare the interests asserted by the proposed intervenor with the interests of the existing party. If the proposed intervenor's interest is not represented by the existing party, or the existing party's interests are adverse to those of the proposed intervenor, intervention should be granted. ... [However], if the interests are identical, intervention should be denied unless there is a compelling showing as to why the existing representation is inadequate." *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 403, 540 S.E.2d 917, 927 (1999) (internal citations omitted). Cortez and "the Estate of Deborah Cortez" have identical interests in the Trust (zero) and identical interests in this litigation: they both seek to obtain the entirety of the Trust proceeds, either through direct distribution to Cortez personally or through distribution to "the Estate of Deborah Cortez," which would then flow through to Cortez personally as its sole heir. Cortez and "the Estate's" identity of interest is clear from the simple fact that *Cortez controls every decision made by "the Estate of Deborah Cortez," and is the only*

6

*person that benefits from "the Estate."* Indeed, Cortez and "the Estate of Deborah Cortez" *are represented by the same legal counsel in this case*, which would violate the West Virginia Rules of Professional Conduct if their interests were adverse in any way. *See* W.Va. R. Prof. Conduct § 1.7 (simultaneous representation of adverse parties in litigation is a non-waivable conflict of interest). "The Estate of Deborah Cortez" cannot deny that Cortez himself, as the administrator and sole heir, had every opportunity to represent its claimed interest in this litigation.

**B.      THE COURT SHOULD SANCTION CORTEZ'S COUNSEL FOR ATTEMPTING TO OBSTRUCT THIS CASE WITH FRIVOLOUS FILINGS.**

Although Cortez ostensibly seeks to protect the interests of "the Estate of Deborah Cortez," both this Court and the Texas court have already rejected Cortez's claim that the Trust should have terminated, passed to Deborah Cortez, and ultimately inherited by Cortez personally as the sole beneficiary of "the Estate of Deborah Cortez." *Exhibit A*. In fact, the Texas court further found in February of 2017 that Cortez's claim was frivolous and sanctionable. *Exhibit B*.

The truth is that Cortez only filed his most recent round of West Virginia motions to obstruct or delay the Court's upcoming hearing on the Trustee's motion for summary judgment. Cortez's filings are clearly frivolous, and his attorneys should be sanctioned in West Virginia for the same reasons they were sanctioned in Texas. "There is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syl. Pt. 3, *Sally-Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986).

> Parties whose interest in the legal process is to oppress or cheat others should be discouraged. Non-disputes should, of course, be filtered out of the legal process by the subjective decision of the litigants themselves or else by their attorneys. Where they are not, **courts** and juries, which specialize in determining the question of

7

> good faith, **are capable of distinguishing good faith disputes from nondisputes and assessing** an appropriate penalty in the form of an award of **attorneys' fees**.

*Nelson v. West Virginia Public Employees Ins. Bd.*, 171 W.Va. 445, 454, 300 S.E.2d 86, 95 (1982) (Neely, J., concurring)(emphasis added).

"By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, *such as to harass or to cause unnecessary delay or needless increase in the cost of litigation*; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law ...." W.Va. R. Civ. P. 11(b) (emphasis added). The Court may impose sanctions on its own initiative if it finds that a party violated Rule 11(b). *See* W.Va. R. Civ. P. 11(c)(1)(B).[2]

The timing of Cortez's attempt to intervene as "the Estate of Deborah Cortez" was not a coincidence, and should not go unnoticed by this Court. Cortez filed his motion on June 12, 2017 -- two weeks before the Trustee intends to bring her motion for summary judgment on for a hearing. The Court's ruling on the Trustee's motion will determine as a matter of law the final

---

[2] Due to the fact that Cortez filed his motions within two weeks of the Court's hearing, Mrs. Barry is unable to provide the required twenty-one (21) day notice to file a Rule 11 sanctions motion in her own capacity before the Court's hearing. However, the Court may still take up the issue of sanctions *sua sponte* under Rule 11(c)(1)(B), and always has equitable authority to sanction bad faith conduct under *Sally-Mike Properties*. Mrs. Barry fully intends to seek recovery of all her attorneys' fees and costs in this action as a result of Cortez's frivolous and vexatious conduct, which includes not only filing frivolous claims to the Trust proceeds, but also improvidently removing the case to federal court to create additional delay, and filing additional frivolous motions to prevent the Court from reaching the merits of the Trustee's summary judgment motion.

8

distribution of the Trust to its rightful beneficiaries. The true purpose of Cortez's motion is obvious: Cortez hopes to delay or obstruct the Court's disposition of the Trustee's summary judgment motion by arguing that the Court must first rule on his new filings.

Indeed, Cortez's lawyers made no effort to conceal the improper purpose of his filings. By letter dated June 15, 2017, Cortez's counsel specifically requested that the Trustee reschedule the upcoming hearing on her summary judgment motion in light of Cortez's new filings:

> I called your office yesterday to confer regarding whether or not you and your clients wished to consider scheduling our motion to intervene and motion to dismiss for the 27th and reschedule the motion for summary judgment after the court has ruled on our motions. That would appear to be the best process for judicial economy.

*Exhibit C*, Letter dated June 15, 2017 from William J. Brotherton to Robert S. Fluharty, Jr. This Court and the Texas court have already rejected Cortez's position. His remedy under the law is to take an appeal of those decisions. Instead, Cortez continues to present frivolous filings, with the stated purpose of delaying this Court's consideration of the Trustee's summary judgment motion. Cortez's conduct smacks of bad faith, and the Court has inherent equitable authority under *Sally-Mike Properties*, and *sua sponte* authority under Rule 11(c)(1)(B), to sanction Cortez and his lawyers for their wrongful conduct. Accordingly, Mrs. Barry requests that the Court award Mrs. Barry and the Trustee all of their attorneys' fees and costs incurred in this action as a sanction against Cortez and his lawyers for their conduct in obstructing this case.

9

A.C. Boone

Aaron C. Boone (9479)
Bowles Rice LLP
Fifth Floor, United Square
501 Avery Street, Post Office Box 49
Parkersburg, West Virginia 26102
(304) 420-5501
Facsimile (304) 420-5587

and

David A. DeJarnett (5190)
J. Tyler Mayhew (11469)
Bowles Rice LLP
105 West Burke Street
Martinsburg, West Virginia 25401
(304) 264-4232
Facsimile (304) 264-3822

Counsel for Defendant Connie Lou Keith
  Barry

10

No. C-1-PB-14-001564

| | | |
|---|---|---|
| LINDA MURRAY, SUCCESSOR TRUSTEE AND ON BEHALF OF THE WILLIAM D. SHORT AND PHYLISS D. SHORT REVOCABLE LIVING TRUST INCLUDING THE CREDIT SHELTER TRUST CREATED THEREIN, PLAINTIFF | § § § § § § § § | IN THE PROBATE COURT NO. 1 |
| V. | § § | |
| MATEO CORTEZ, ROBERT F. SCHLAGER AND WELLS FARGO BANK, NATIONAL ASSOCIATION, DEFENDANTS | § § § § § | OF |
| ***** | § § § | |
| MATEO CORTEZ, AS REPRESENTATIVE OF THE ESTATE OF DEBORAH CORTEZ INTERVENOR | § § § § | |
| V. | § § § | |
| LINDA MURRAY, SUCCESSOR TRUSTEE AND ON BEHALF OF THE WILLIAM D. SHORT AND PHYLLIS D. SHORT REVOCABLE LIVING TRUST INCLUDING THE CREDIT SHELTER TRUST CREATED THEREIN | § § § § § § § § § | TRAVIS COUNTY, TEXAS |

## ORDER GRANTING THIRD PARTY DEFENDANTS' TRADITIONAL AND NO EVIDENCE MOTION FOR SUMMARY JUDGMENT

On this day, the Court considered the Traditional and No Evidence Motion for Summary Judgment (the "Motion") filed by Third Party Defendants, Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lee Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks, Donald Leman Whited, Michael Ray Whited,



EXHIBIT
A

## No. C-1-PB-14-001564

Terry Lee Whited and Sherry Lynn Whited Salsbury, all in their individual capacities. Having considered the Motion, the response, all admissible summary judgment evidence, the arguments of counsel, and the other papers on file with the Court. the Court hereby GRANTS the Motion in its entirety.

It is therefore. ORDERED, that Mateo Cortez's claims against Third Party Defendants in this lawsuit are dismissed in their entirety. In particular, the Court hereby dismisses any and all claims that Mateo Cortez, in his individual capacity or in his capacity as personal representative of the Estate of Deborah Cortez, has to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust"), other than his claim for undistributed income from the Trust during the life of Deborah Cortez. This judgment has no effect on Mateo Cortez's breach of fiduciary duty against Linda Murray. in her capacity as trustee of the Trust.

SIGNED this 19th day of December, 2016.

HONORABLE JUDGE PRESIDING

No. C-1-PB-16-002348

| | |
|---|---|
| MATEO CORTEZ, AS REPRESENTATIVE§<br>OF THE ESTATE OF DEBORAH CORTEZ§<br>   *Plaintiff*                   §<br>                                 §<br>V.                               §<br>                                 §<br>SANDRA FLESHER BROWN,      §<br>CHARLOTTE FLESHER ASH,     §<br>CHARLENE FLESHER JOHSTON,   §<br>CONNIE BARRY, RANDALL WAYNE  §<br>DAVIS, VIRGINIA VILLERS, CHARLES  §<br>ROBERTS, LISA A. SMITH, PATRICIA  §<br>CHAPMAN, BETTY J. MARKS WEBB,  §<br>JAMES BERL MARKS, LINDA MURRAY, §<br>THOMAS WAYNE MARKS, DONALD   §<br>LEMAN WHITED, MICHAEL RAY     §<br>WHITED, TERRY LEE WHITED and   §<br>SHERRY LYNN WHITED SALSBURY  §<br>   *Defendants*                  § | IN THE PROBATE COURT NO. 1<br><br><br>OF<br><br><br><br><br><br>TRAVIS COUNTY, TEXAS |

## <u>ORDER ON THIRD PARTY DEFENDANTS' MOTION TO MODIFY JUDGMENT TO INCLUDE SANCTIONS AWARD</u>

On this day, the Court considered the Motion To Modify Judgment to Include Sanctions Award and the Supplement to the Motion To Modify Judgment to Include Sanctions Award (collectively the "Motion"), each filed by Third Party Defendants Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lou Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks, Donald Leman Whited, Michael Ray Whited, Terry Lee Whited and Sherry Lynn Whited Salsbury (collectively "Third Party Defendants"). Having considered the Motion, the response thereto, the admissible evidence, the other papers on file in this matter, and the arguments of counsel, the Court hereby GRANTS the Motion in part and makes the following findings and orders:

The Court finds that attorney William J. Brotherton violated Texas Civil Practices and Remedies Code Chapter 10 in signing the Original Petition in Intervention, the First Amended

1

EXHIBIT
B

No. C-1-PB-16-002348

Petition in Intervention and Third Party Petition, Second Amended Petition in Intervention and Third Party Petition, the Third Amended Petition in Intervention and Third Party Petition, and the Fourth Petition in Intervention filed in this matter. In particular, the Court finds that Mr. Brotherton violated Texas Civil Practices and Remedies Code § 10.001 by signing these pleadings because each of them contained the claim that Deborah Cortez was entitled to all assets from The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust") upon the death of Phyllis Short because Deborah was over the age of 35 when Ms. Short died. The Court finds that the plain language of the Trust foreclosed such a claim and that this claim was not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

The Court further finds that attorney William J. Brotherton should have known that as of September 16, 2016, his legal position regarding postponement of the trust was untenable. By maintaining that legal position in his Fourth Petition in Intervention, he caused the Third Party Defendants to incur additional attorneys' fees in responding to attorney William J. Brotherton's claim regarding postponement of the trust.

The Court hereby sanctions William J. Brotherton and the Brotherton Law Firm, jointly and severally, in the amount of $31,150.76 for fees incurred for work done by Brian Thompson and his associates at Hopper Mikeska, PLLC and $33,980.00 for fees incurred by Aaron Boone and his associate attorney at Bowles Rice, LLP, for a total of $65,130.76. The Court orders that this amount be paid to the Third Party Defendants within 30 days of the entry of this order. The Court finds that there is a direct relationship between the sanctions being imposed and Mr. Brotherton's sanctionable conduct, in that the aforesaid amount represents reasonable and necessary attorneys' fees expended by attorneys for the Third Part Defendants to defend against

2

No. C-1-PB-16-002348

the frivolous claims advanced by William J. Brotherton and the Brotherton Law Firm; that the sanctions are not excessive; and that these sanctions will appropriately deter other attorneys from signing pleadings containing claims that violate Texas Civil Practices and Remedies Code Chapter 10.

The Court hereby modifies its judgment entered on December 19, 2016, to include this award of sanctions.

Signed this 10th day of February, 2017.

HONORABLE JUDGE GUY HERMAN

**CAUSE NO. C-1-PB-16-002348**

| | |
|---|---|
| MATEO CORTEZ, AS REPRESENTATIVE§<br>OF THE ESTATE OF DEBORAH CORTEZ§<br>   *Plaintiff*                  § | IN THE PROBATE COURT NO. 1 |

**V.**                          §              **OF**

SANDRA FLESHER BROWN,

CHARLOTTE FLESHER ASH,

CHARLENE FLESHER JOHSTON,

CONNIE BARRY, RANDALL WAYNE

DAVIS, VIRGINIA VILLERS, CHARLES

ROBERTS, LISA A. SMITH, PATRICIA

CHAPMAN, BETTY J. MARKS WEBB,

JAMES BERL MARKS, LINDA MURRAY,

THOMAS WAYNE MARKS, DONALD

LEMAN WHITED, MICHAEL RAY

WHITED, TERRY LEE WHITED and

SHERRY LYNN WHITED SALSBURY

   *Defendants*



**TRAVIS COUNTY, TEXAS**

## AMENDED FINAL JUDGMENT

On December 19, 2016, the Court considered the Traditional and No Evidence Motion for Summary Judgment (the "Motion for Summary Judgment") filed by Third Party Defendants, Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lee Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks, Donald Leman Whited, Michael Ray Whited, Terry Lee Whited and Sherry Lynn Whited Salsbury, all in their individual capacities (collectively "Third Party Defendants"), in Cause Number C-1-PB-14-001564. After considering the Motion for Summary Judgment, the response, all admissible summary judgment evidence, the arguments of counsel, and the other papers on file with the Court, the Court GRANTED the Motion for Summary Judgment in its entirety and ORDERED, that Mateo Cortez's claims against Third Party Defendants be dismissed in their entirety. In particular, the Court dismissed any and all claims that Mateo Cortez, in his individual

1

capacity or in his capacity as personal representative of the Estate of Deborah Cortez, had to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust"), other than his claim for undistributed income from the Trust during the life of Deborah Cortez.

Also on December 19, 2016, the Court considered Third Party Defendants' Motion to Sever. After considering the Motion to Sever, the response, the arguments of counsel, and the other papers on file with the Court, the Court GRANTED the Motion to Sever in its entirety and ORDERED that Mateo Corez's claims against Third Party Defendants in this lawsuit be severed in their entirety and assigned the new cause number C-1-PB-16-002348.

On January 16, 2017, Third Party Defendants filed their Motion to Modify Judgment to Include Sanctions Award (the "Motion to Modify"), which extended the plenary power of the Court to modify its judgment. The Motion to Modify was heard by the Court at a hearing on January 30, 2017. After considering the Motion to Modify, the response, the admissible evidence presented at the hearing, the response, the arguments of counsel, and the other papers on file with the Court, granted the Motion to Modify in part and granted sanctions. The Court sanctions attorney William J. Brotherton and the Brotherton Law Firm, jointly and severally, in the amount of $65,130.76, and ORDERS that this amount be paid to the Third Party Defendants within 30 days of the entry of this final judgment.

This amended judgment finally disposes of all claims and parties and is final and appealable.

Signed this 10th day of February, 2017.

HONORABLE JUDGE PRESIDING

2

# BROTHERTON LAW FIRM

### ATTORNEYS AND COUNSELORS AT LAW

2340 FM 407, SUITE 200
HIGHLAND VILLAGE, TEXAS 75077
TELEPHONE: 972-317-8700
FACSIMILE: 972-317-0189

WILLIAM J. BROTHERTON
LICENSED IN TEXAS AND NORTH DAKOTA

william@brothertonlaw.com

June 15, 2017

**Via E-Mail: rsfluharty@fntlawoffices.com**

Robert S. Fluharty, Jr.
Fluharty & Townsend
417 Grand Park Drive, Suite 101
Parkersburg, WV 26105

RE:   In the Circuit Court of Wirt County, West Virginia; Civil Action No. 15-C-28; *Linda Murray, in Her Capacity as Successor Trustee of the William D. Short and Phyllis D. Short Revocable Living Trust v. Mateo Cortez et al.*

Dear Mr. Fluharty:

I called your office yesterday to confer regarding whether or not you and your clients wished to consider scheduling our motion to intervene and motion to dismiss for the 27th and reschedule the motion for summary judgment after the court has ruled on our motions. That would appear to be the best process for judicial economy.

If this is something you wish to discuss, please do not hesitate to call. Otherwise, we will schedule our motions to be heard at the same time.

Very truly yours,

William J. Brotherton

WJB/dj

cc:   All Parties (per attached Certificate of Service)
      Client

**EXHIBIT
C**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing correspondence has been served on this 15th day of June, 2017, by U.S. First Class Mail to the below interested parties:

Robert S. Fluharty, Jr.
417 Grand Park Drive
Suite 101
Parkersburg, WV 26105
Attorney For: Linda Murray

J. Nicholas Barth
Barth & Thompson
PO Box 129
Charleston, WV 25321-0129
Attorney For: Linda Murray

Aaron C. Boone
Bowles Rice McDavid Graff & Love LLP
PO Box 49
Parkersburg, WV 26102-0049
Attorney For: Connie Lee Keith Barry

David A. DeJarnett
Bowles Rice McDavid Graff & Love LLP
PO Drawer 1419
Martinsburg, WV 25402-1419
Attorney For: Connie Lee Keith Barry

Leslie L. Maze
PO Box 279
Elizabeth, WV 26143
Attorney For: Donald Leaman Whited; Michael Ray Whited; Sherry Lynn Whited Salsbury; Sheila Pettry, Tywanna Pettry, and Amanda Pettry, Heirs of Teresa Annette Whited Pettrey; Terry Lee Whited

Joseph T. Santer
Santer & Santer
PO Box 306
Parkersburg, WV 26102
Guardian ad Litem For: Unknown beneficiaries

Betty Jo Marks
1834 S. Pleasant Hill Road
Belleville, WV 26133

Charlene Rae Flesher-Johnston
PO Box 793
Elizabeth, WV 26143

Charles Bruce Roberts
487 Wilson Fork
Elizabeth, WV 26143

Charlotte Rae Flesher-Ash
8653 White Swan Dr., #104
Tampa, FL 33614

James Berl Marks
1093 S. Pleasant Hill Road
Belleville, WV 26133

Linda Lou Murray
197 Oakbrook Drive
Mineral Wells, WV 26150

Lisa Ann Rader Smith
96 Franklin Street
Elizabeth, WV 26143

Magen Elizabeth Whited
Elizabeth, WV 26143

Patricia Ann Marks Chapman
2670 Pettyville Road
Parkersburg, WV 26101
Randall Wayne Davis
1663 Brooksford Road
Kernersville, NC 27284

Sandra Kay Flesher Brown
99 Woodridge Drive
Mineral Wells, WV 26150

Thomas Wayne Marks
749 S. Long Run Road
Belleville, WV 26133

Virginia Ann Roberts Villers
28649 Allesandria Circle
Bonita Springs, FL 31435

_____
William J. Brotherton

## IN THE CIRCUIT COURT OF WIRT COUNTY, WEST VIRGINIA

LINDA MURRAY, in her capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short
Revocable Living Trust
Dated April 30, 1991,

        Plaintiff,

v.                                                                    CIVIL ACTION NO. 15-C-28
                                                                     JUDGE WATERS
LINDA LOU MURRAY, et al.,

        Defendants.

### CERTIFICATE OF SERVICE

The undersigned, counsel for Defendant Connie Lou Keith Barry, hereby certifies that on the 23rd day of June 2017, he served the foregoing and hereto annexed **DEFENDANT CONNIE LOU KEITH BARRY'S RESPONSE IN OPPOSITION TO MOTION TO INTERVENE AND REQUEST FOR SANCTIONS** upon counsel of record and pro se parties by the methods described below:

Robert S. Fluharty, Jr., Esquire
Fluharty & Townsend
417 Grand Park Drive, Suite 101
Parkersburg, WV 26105
*VIA US Mail and Fax: 304-485-0560*

J. Nicholas Barth, Esquire
Barth & Thompson
202 Berkley Street
Charleston, WV 26321
*VIA US Mail and Fax: 304-342-6215*

Leslie L. Maze, Esquire
Post Office Box 279
Elizabeth, WV  26143
*VIA US Mail and Fax: 304-275-3721*

James W. Marshall, III, Esquire
H. F. Salsbery, Esquire
Michael W. Taylor, Esquire
Bailey & Wyant, PLLC
500 Virginia Street East, Suite 600
Post Office Box 3710
Charleston, WV  25337-3710
*VIA US Mail and Fax: 304-343-3133*

William J. Brotherton, Esquire
Shawn M. Brotherton, Esquire
Brotherton Law Firm
2340 FM 407, Suite 200
Highland Village, Texas  75077
*VIA US Mail and Fax: 972-317-0189*

Joseph T. Santer, Esquire
Santer and Santer
Post Office Box 306
Parkersburg, WV  26102
*VIA US Mail and Fax: 304-422-5599*

Linda Lou Murray
197 Oakbrook Drive
Mineral Wells, WV  26150

Sandra Kay Flesher Brown
99 Woodridge Drive
Mineral Wells, WV  26150

Charlene Rae Flesher Johnston
P.O. Box 793
Elizabeth, WV  26143

Charlotte Fae Flesher Ash
8653 White Swan Drive #104
Tampa, FL  33614

Virginia Ann Roberts Villers
28649 Alessandria Circle
Bonita Springs, FL  34135

2

Charles Bruce Roberts, Jr.
487 Wilson Fork
Elizabeth, WV 26143

Lisa Ann Rader Smith
Post Office Box 717
Elizabeth, WV 26143

Patricia Ann Marks Chapman
2670 Pettyville Road
Parkersburg, WV 26101

James Berl Marks
1093 S. Pleasant Hill Road
Belleville, WV 26133

Thomas Wayne Marks
749 S. Long Run Road
Belleville, WV 26133

Betty J. Webb
280 Bethel Road
Parkersburg, WV 26101

Randall Wayne Davis
1663 Brookford Road
Kernersville, NC 27284

Magen Elizabeth Whited
164 Joe Shore Drive
Ravenswood, WV 26164

_____
Aaron C. Boone

APPENDIX D

# IN THE CIRCUIT COURT OF WIRT COUNTY, WEST VIRGINIA

**LINDA MURRAY, in her capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short Revocable Living Trust
Dated April 30, 1991,**

     *Plaintiff,*

**v.**                                                                          **CIVIL ACTION NO. 15-C-28**
                                                                               **Judge Waters**

**LINDA LOU MURRAY, et al.,**

     *Defendants.*

## DEFENDANT CONNIE LOU KEITH BARRY'S RESPONSE IN OPPOSITION TO CORTEZ'S POST-JUDGMENT MOTION TO DISMISS

Defendant Connie Lou Keith Barry ("Mrs. Barry"), by counsel, responds in opposition to Mateo Cortez's ("Cortez") *post-judgment* motion to dismiss, in which Cortez again attempts to convince this Court to defer to proceedings in Texas.

## INTRODUCTION

Cortez's duplicative and untimely motion should be denied. Although presented as a motion to dismiss "for lack of jurisdiction" or "failure to state a claim," Cortez has simply repackaged the same *forum non conveniens* arguments that this Court and the Supreme Court of Appeals of West Virginia rejected last year. Indeed, the Texas court has specifically stated that it would not interfere with this Court's jurisdiction: "THE COURT: I'm not going to prohibit them from proceeding, I'm not going to order them to dismiss in West Virginia. You all can go to West Virginia and argue." First, Cortez lacks standing to assert a Rule 12(b) Motion to Dismiss because judgment has already been entered against him. Second, notwithstanding his lack of standing, Cortez's motion is based on the false premise that Texas is now administering the

Trust. Lastly, given that the instant motion is frivolous, and filed solely to delay this Honorable Court's efforts, sanctions should be assessed against Cortez's counsel.

## ARGUMENT

### A.    CORTEZ'S MOTION SHOULD BE DENIED BECAUSE POST-JUDGMENT MOTIONS TO ABSTAIN ARE NOT PERMITTED BY THE RULES OF CIVIL PROCEDURE.

On September 15, 2016, this Court entered judgment against Cortez, dismissing any and all claims that Cortez has to the Trust. *Order Granting Motion for Partial Summary Judgment*, Wirt County Civil Action No. 15-C-28 (September 15, 2016). As discussed below, Cortez's motion to dismiss seeks to re-litigate his argument that this Court should decline jurisdiction in deference to parallel proceedings in Texas. Cortez, however, has no legal right to ask this court to abstain post-judgment. W.Va. R. Civ. P. 12(h) (defenses other than lack of subject matter jurisdiction are waived unless raised prior to judgment). Moreover, Cortez's arguments are not only untenable, they are based on false and intentionally misleading premises.

### B.    CORTEZ'S MOTION SHOULD BE DENIED BECAUSE THE TEXAS COURT IS NOT ACTIVELY ADMINISTERING THE TRUST.

Cortez bases his motion on the *Princess Lida* doctrine, which is *not* a jurisdictional doctrine, but rather an abstention doctrine based on 75-year old *dicta*. *See al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225 (4th Cir. 2000) (citing cases holding that the *Princess Lida* doctrine is based on abstention and not lack of jurisdiction). *See also Crawford v. Courtney*, 451 F.2d 489, 491-92 (4th Cir. 1971) (describing the *Princess Lida* doctrine as dicta). Like *forum non conveniens*, abstention doctrines are not mandatory jurisdictional limitations on a court; they are discretionary doctrines, grounded in equitable concerns regarding comity between courts of concurrent jurisdiction. *See Quackenbush v.*

2

*Allstate Ins. Co.*, 517 U.S. 706, 722 (1996) (abstention and *forum non conveniens* doctrines proceed from the same premise that in rare circumstances, courts can relinquish their jurisdiction in favor of another forum).

The premise of Cortez's instant motion, and the premise of Cortez's earlier and unsuccessful *forum non conveniens* motion, are identical. Cortez argues that a Texas court is exercising concurrent jurisdiction over the parties' dispute, therefore this West Virginia Court should "step aside". Cortez filed a "Petition in Intervention" in Texas on behalf of "the Estate of Deborah Cortez," in which he sought a declaratory judgment regarding the distribution of the Trust assets.[1] Cortez, however, intentionally omitted from his motion to dismiss that: (1) no other party asked the Texas court to decide how the Trust should be distributed or to assume control over the Trust; and, more importantly, (2) the Texas court dismissed all of Cortez's claims in their entirety. The fact that no party other than Cortez asked the Texas court to administer the Trust is critical because, on December 19, 2016, the Texas court granted summary judgment against Cortez on *all* of the claims alleged in his "Petition in Intervention," concluding as a matter of law that Cortez and "the Estate of Deborah Cortez" have zero interest in the Trust:

> On this day, the Court considered the Traditional and No Evidence Motion for Summary Judgment (the "Motion") filed by Third Party Defendants ... Connie [Lou] Keith Barry ... all in their individual capacities. Having considered the Motion, the response, all admissible summary judgment evidence, the arguments of counsel, and the other papers on file with the Court, the Court hereby GRANTS the Motion *in its entirety*.
>
> It is therefore, ORDERED, that Mateo Cortez's claims against Third Party Defendants in this lawsuit are dismissed in their entirety. In particular, *the Court hereby dismisses any and all*

---

[1] Cortez filed his "Petition in Intervention" to establish a defense against the Trustee's tort claims against him for stealing from the Trust. Cortez has since pointed to his "Petition in Intervention" as the reason for why this case should be dismissed and litigated in Texas.

> _claims that Mateo Cortez, in his individual capacity or in his capacity as personal representative of the Estate of Deborah Cortez,_ has to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust"), other than his claim for undistributed income from the Trust during the life of Deborah Cortez. This judgment has no effect on Mateo Cortez's breach of fiduciary duty against Linda Murray, in her capacity as trustee of the Trust.

**Exhibit A**, _Order Granting Third Party Defendants' Traditional and No Evidence Motion for Summary Judgment_, Civil Action No. C-1-OB-14-1564 (Tex. Probate Ct. Dec. 19, 2016).

Moreover, the Texas court subsequently amended its judgment to include sanctions against Cortez's lawyers, finding that Cortez's claims were frivolous and were not warranted by existing law; the extension, modification, or reversal of existing law; or the establishment of new law. **_Exhibit B, Order on Third Party Defendants' Motion to Modify Judgment to Include Sanctions Award_**, Civil Action No. C-1-OB-14-1564 (Tex. Probate Ct. Feb. 10, 2017). Pertinent to this motion, the Texas court found that sanctions were appropriate because "attorney William J. Brotherton should have known that **_as of September 16, 2016,_** his legal position regarding postponement of the trust was untenable." **_Exhibit B._** The date referenced in the Texas court's sanction order is **_the day after this Court granted summary judgment against Cortez_**, which proves that the Texas court agrees that the Trustee's claims were properly brought in West Virginia. Otherwise, the Texas court obviously would not have deferred to the findings in this Court's September 15, 2016 order granting summary judgment.

In sum, Cortez claims that the _Princess Lida_ doctrine applies and deprives this Court of jurisdiction. Again, there is no claim before a Texas court to administer the Trust. Even if Cortez's "Petition in Intervention" did implicate the _Princess Lida_ doctrine, his claims have been dismissed in their entirety, which under Texas law is final for collateral estoppel

4

purposes irrespective of his right to appeal. *See Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1 (Tex. 1986) (judgment is final for purposes of issue and claim preclusion despite taking of appeal).[2] Although Cortez claims that the Texas court has taken a number of steps to administer the Trust, none of his claims are true. Neither the Trustee, nor any of the rightful beneficiaries of the Trust, have asked the Texas court to determine how the Trust should be distributed. That claim is only pending here in West Virginia, and the Texas court has stated that it won't interfere with this Court's adjudication of the issues before it: "THE COURT: I'm not going to prohibit them from proceeding, I'm not going to order them to dismiss in West Virginia. You all can go to West Virginia and argue." *Exhibit C*, Transcript Excerpt, *Application for Temporary Restraining Order and Injunctive Relief*, at p. 25, Civil Action No. C-1-OB-14-1564 (Tex. Probate Ct. Dec. 18, 2015). Accordingly, the Court should reject Cortez's arguments, and reject his attempt to further delay and obstruct the Trustee's efforts to distribute the Trust to its rightful beneficiaries.

## C.    CORTEZ AND HIS LAWYERS SHOULD BE SANCTIONED FOR FILING FRIVOLOUS PAPERS TO OBSTRUCT OR DELAY THIS CASE.

For the same reasons stated in *Defendant Connie Lou Keith Barry's Response in Opposition to Motion to Intervene and Request for Sanctions*, Cortez and his lawyers should be sanctioned for the filing of their Motion to Dismiss, which is frivolous and filed for the sole purpose of delaying further action in this Court.

DATED this 23rd day of June 2017.

---

[2] The Texas court's order granting summary judgment against Cortez meets the remaining elements of collateral estoppel. The elements of collateral estoppel are that: "(1) the facts sought to be litigated in the first action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990).

Aaron C. Boone (9479)
Bowles Rice LLP
Fifth Floor, United Square
501 Avery Street, Post Office Box 49
Parkersburg, West Virginia 26102
(304) 420-5501
Facsimile (304) 420-5587

and

David A. DeJarnett (5190)
J. Tyler Mayhew (11469)
Bowles Rice LLP
105 West Burke Street
Martinsburg, West Virginia 25401
(304) 264-4232
Facsimile (304) 264-3822

Counsel for Defendant Connie Lou Keith
  Barry

6

IN THE CIRCUIT COURT OF WIRT COUNTY, WEST VIRGINIA

LINDA MURRAY, in her capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short
Revocable Living Trust
Dated April 30, 1991,

        Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　CIVIL ACTION NO. 15-C-28
　　　　　　　　　　　　　　　　　　　　　　JUDGE WATERS
LINDA LOU MURRAY, et al.,

        Defendants.

## CERTIFICATE OF SERVICE

The undersigned, counsel for Defendant Connie Lou Keith Barry, hereby certifies that on the 23rd day of June 2017, he served the foregoing and hereto annexed **DEFENDANT CONNIE LOU KEITH BARRY'S RESPONSE IN OPPOSITION TO CORTEZ'S POST-JUDGMENT MOTION TO DISMISS** upon counsel of record and pro se parties by the methods described below:

Robert S. Fluharty, Jr., Esquire
Fluharty & Townsend
417 Grand Park Drive, Suite 101
Parkersburg, WV 26105
*VIA US Mail and Fax: 304-485-0560*

J. Nicholas Barth, Esquire
Barth & Thompson
202 Berkley Street
Charleston, WV 26321
*VIA US Mail and Fax: 304-342-6215*

Leslie L. Maze, Esquire
Post Office Box 279
Elizabeth, WV 26143
*VIA US Mail and Fax: 304-275-3721*

James W. Marshall, III, Esquire
H. F. Salsbery, Esquire
Michael W. Taylor, Esquire
Bailey & Wyant, PLLC
500 Virginia Street East, Suite 600
Post Office Box 3710
Charleston, WV 25337-3710
*VIA US Mail and Fax: 304-343-3133*

William J. Brotherton, Esquire
Shawn M. Brotherton, Esquire
Brotherton Law Firm
2340 FM 407, Suite 200
Highland Village, Texas 75077
*VIA US Mail and Fax: 972-317-0189*

Joseph T. Santer, Esquire
Santer and Santer
Post Office Box 306
Parkersburg, WV 26102
*VIA US Mail and Fax: 304-422-5599*

Linda Lou Murray
197 Oakbrook Drive
Mineral Wells, WV 26150

Sandra Kay Flesher Brown
99 Woodridge Drive
Mineral Wells, WV 26150

Charlene Rae Flesher Johnston
P.O. Box 793
Elizabeth, WV 26143

Charlotte Fae Flesher Ash
8653 White Swan Drive #104
Tampa, FL 33614

Virginia Ann Roberts Villers
28649 Alessandria Circle
Bonita Springs, FL 34135

2

Charles Bruce Roberts, Jr.
487 Wilson Fork
Elizabeth, WV 26143

Lisa Ann Rader Smith
Post Office Box 717
Elizabeth, WV 26143

Patricia Ann Marks Chapman
2670 Pettyville Road
Parkersburg, WV 26101

James Berl Marks
1093 S. Pleasant Hill Road
Belleville, WV 26133

Thomas Wayne Marks
749 S. Long Run Road
Belleville, WV 26133

Betty J. Webb
280 Bethel Road
Parkersburg, WV 26101

Randall Wayne Davis
1663 Brookford Road
Kernersville, NC 27284

Magen Elizabeth Whited
164 Joe Shore Drive
Ravenswood, WV 26164

_A.C. Boone_

Aaron C. Boone

3

9054566.1

No. C-1-PB-14-001564

| | | |
|---|---|---|
| LINDA MURRAY, SUCCESSOR TRUSTEE AND ON BEHALF OF THE WILLIAM D. SHORT AND PHYLISS D. SHORT REVOCABLE LIVING TRUST INCLUDING THE CREDIT SHELTER TRUST CREATED THEREIN, PLAINTIFF | § § § § § § § § | IN THE PROBATE COURT NO. 1 |
| V. | § § | |
| MATEO CORTEZ, ROBERT F. SCHLAGER AND WELLS FARGO BANK, NATIONAL ASSOCIATION, DEFENDANTS | § § § § § § | OF |
| ***** | § § | |
| MATEO CORTEZ, AS REPRESENTATIVE OF THE ESTATE OF DEBORAH CORTEZ INTERVENOR | § § § § | |
| V. | § § | |
| LINDA MURRAY, SUCCESSOR TRUSTEE AND ON BEHALF OF THE WILLIAM D. SHORT AND PHYLLIS D. SHORT REVOCABLE LIVING TRUST INCLUDING THE CREDIT SHELTER TRUST CREATED THEREIN | § § § § § § § § § | TRAVIS COUNTY, TEXAS |

## ORDER GRANTING THIRD PARTY DEFENDANTS' TRADITIONAL AND NO EVIDENCE MOTION FOR SUMMARY JUDGMENT

On this day, the Court considered the Traditional and No Evidence Motion for Summary Judgment (the "Motion") filed by Third Party Defendants, Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lee Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks, Donald Leman Whited, Michael Ray Whited,

1

EXHIBIT
A

## No. C-1-PB-14-001564

Terry Lee Whited and Sherry Lynn Whited Salsbury, all in their individual capacities. Having considered the Motion, the response, all admissible summary judgment evidence, the arguments of counsel, and the other papers on file with the Court, the Court hereby GRANTS the Motion in its entirety.

It is therefore, ORDERED, that Mateo Cortez's claims against Third Party Defendants in this lawsuit are dismissed in their entirety. In particular, the Court hereby dismisses any and all claims that Mateo Cortez, in his individual capacity or in his capacity as personal representative of the Estate of Deborah Cortez, has to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust"), other than his claim for undistributed income from the Trust during the life of Deborah Cortez. This judgment has no effect on Mateo Cortez's breach of fiduciary duty against Linda Murray, in her capacity as trustee of the Trust.

SIGNED this 19th day of December, 2016.

HONORABLE JUDGE PRESIDING

2

No. C-1-PB-16-002348

MATEO CORTEZ, AS REPRESENTATIVE§     IN THE PROBATE COURT NO. 1
OF THE ESTATE OF DEBORAH CORTEZ§
   *Plaintiff*             §
                           §
**V.**                         §     **OF**
                           §
SANDRA FLESHER BROWN,      §
CHARLOTTE FLESHER ASH,     §
CHARLENE FLESHER JOHSTON,  §
CONNIE BARRY, RANDALL WAYNE §
DAVIS, VIRGINIA VILLERS, CHARLES §
ROBERTS, LISA A. SMITH, PATRICIA §
CHAPMAN, BETTY J. MARKS WEBB, §
JAMES BERL MARKS, LINDA MURRAY, §
THOMAS WAYNE MARKS, DONALD §
LEMAN WHITED, MICHAEL RAY §
WHITED, TERRY LEE WHITED and §
SHERRY LYNN WHITED SALSBURY §
   *Defendants*            §     **TRAVIS COUNTY, TEXAS**



## ORDER ON THIRD PARTY DEFENDANTS' MOTION TO MODIFY JUDGMENT TO INCLUDE SANCTIONS AWARD

On this day, the Court considered the Motion To Modify Judgment to Include Sanctions Award and the Supplement to the Motion To Modify Judgment to Include Sanctions Award (collectively the "Motion"), each filed by Third Party Defendants Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lou Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks, Donald Leman Whited, Michael Ray Whited, Terry Lee Whited and Sherry Lynn Whited Salsbury (collectively "Third Party Defendants"). Having considered the Motion, the response thereto, the admissible evidence, the other papers on file in this matter, and the arguments of counsel, the Court hereby GRANTS the Motion in part and makes the following findings and orders:

The Court finds that attorney William J. Brotherton violated Texas Civil Practices and Remedies Code Chapter 10 in signing the Original Petition in Intervention, the First Amended

1

EXHIBIT
B

## No. C-1-PB-16-002348

Petition in Intervention and Third Party Petition, Second Amended Petition in Intervention and Third Party Petition, the Third Amended Petition in Intervention and Third Party Petition, and the Fourth Petition in Intervention filed in this matter. In particular, the Court finds that Mr. Brotherton violated Texas Civil Practices and Remedies Code § 10.001 by signing these pleadings because each of them contained the claim that Deborah Cortez was entitled to all assets from The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust") upon the death of Phyllis Short because Deborah was over the age of 35 when Ms. Short died. The Court finds that the plain language of the Trust foreclosed such a claim and that this claim was not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

The Court further finds that attorney William J. Brotherton should have known that as of September 16, 2016, his legal position regarding postponement of the trust was untenable. By maintaining that legal position in his Fourth Petition in Intervention, he caused the Third Party Defendants to incur additional attorneys' fees in responding to attorney William J. Brotherton's claim regarding postponement of the trust.

The Court hereby sanctions William J. Brotherton and the Brotherton Law Firm, jointly and severally, in the amount of $31,150.76 for fees incurred for work done by Brian Thompson and his associates at Hopper Mikeska, PLLC and $33,980.00 for fees incurred by Aaron Boone and his associate attorney at Bowles Rice, LLP, for a total of $65,130.76. The Court orders that this amount be paid to the Third Party Defendants within 30 days of the entry of this order. The Court finds that there is a direct relationship between the sanctions being imposed and Mr. Brotherton's sanctionable conduct, in that the aforesaid amount represents reasonable and necessary attorneys' fees expended by attorneys for the Third Part Defendants to defend against

2

No. C-1-PB-16-002348

the frivolous claims advanced by William J. Brotherton and the Brotherton Law Firm; that the sanctions are not excessive; and that these sanctions will appropriately deter other attorneys from signing pleadings containing claims that violate Texas Civil Practices and Remedies Code Chapter 10.

The Court hereby modifies its judgment entered on December 19, 2016, to include this award of sanctions.

Signed this 10th day of February, 2017.

HONORABLE JUDGE GUY HERMAN

CAUSE NO. C-1-PB-16-002348

| | |
|---|---|
| MATEO CORTEZ, AS REPRESENTATIVE§<br>OF THE ESTATE OF DEBORAH CORTEZ§<br>   *Plaintiff*              §<br>                              §<br>**V.**                            §<br>                              §<br>SANDRA FLESHER BROWN,     §<br>CHARLOTTE FLESHER ASH,    §<br>CHARLENE FLESHER JOHSTON, §<br>CONNIE BARRY, RANDALL WAYNE §<br>DAVIS, VIRGINIA VILLERS, CHARLES §<br>ROBERTS, LISA A. SMITH, PATRICIA §<br>CHAPMAN, BETTY J. MARKS WEBB, §<br>JAMES BERL MARKS, LINDA MURRAY, §<br>THOMAS WAYNE MARKS, DONALD  §<br>LEMAN WHITED, MICHAEL RAY    §<br>WHITED, TERRY LEE WHITED and  §<br>SHERRY LYNN WHITED SALSBURY §<br>   *Defendants*           § | IN THE PROBATE COURT NO. 1<br><br><br><br>OF<br><br><br><br><br><br><br><br><br><br><br><br>TRAVIS COUNTY, TEXAS |

## <u>AMENDED FINAL JUDGMENT</u>

On December 19, 2016, the Court considered the Traditional and No Evidence Motion for Summary Judgment (the "Motion for Summary Judgment") filed by Third Party Defendants, Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lee Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks, Donald Leman Whited, Michael Ray Whited, Terry Lee Whited and Sherry Lynn Whited Salsbury, all in their individual capacities (collectively "Third Party Defendants"), in Cause Number C-1-PB-14-001564. After considering the Motion for Summary Judgment, the response, all admissible summary judgment evidence, the arguments of counsel, and the other papers on file with the Court, the Court GRANTED the Motion for Summary Judgment in its entirety and ORDERED, that Mateo Cortez's claims against Third Party Defendants be dismissed in their entirety. In particular, the Court dismissed any and all claims that Mateo Cortez, in his individual

1

capacity or in his capacity as personal representative of the Estate of Deborah Cortez, had to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust"), other than his claim for undistributed income from the Trust during the life of Deborah Cortez.

Also on December 19, 2016, the Court considered Third Party Defendants' Motion to Sever. After considering the Motion to Sever, the response, the arguments of counsel, and the other papers on file with the Court, the Court GRANTED the Motion to Sever in its entirety and ORDERED that Mateo Corez's claims against Third Party Defendants in this lawsuit be severed in their entirety and assigned the new cause number C-1-PB-16-002348.

On January 16, 2017, Third Party Defendants filed their Motion to Modify Judgment to Include Sanctions Award (the "Motion to Modify"), which extended the plenary power of the Court to modify its judgment. The Motion to Modify was heard by the Court at a hearing on January 30, 2017. After considering the Motion to Modify, the response, the admissible evidence presented at the hearing, the response, the arguments of counsel, and the other papers on file with the Court, granted the Motion to Modify in part and granted sanctions. The Court sanctions attorney William J. Brotherton and the Brotherton Law Firm, jointly and severally, in the amount of $65,130.76, and ORDERS that this amount be paid to the Third Party Defendants within 30 days of the entry of this final judgment.

This amended judgment finally disposes of all claims and parties and is final and appealable.

Signed this 10th day of February, 2017.

HONORABLE JUDGE PRESIDING

2

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUMES
TRIAL COURT CAUSE NO. C-1-PB-14-001564

| | | |
|---|---|---|
| LINDA MURRAY, SUCCESSOR TRUSTEE AND ON BEHALF OF THE WILLIAM D. SHORT AND PHYLLIS D. SHORT REVOCABLE LIVING TRUST INCLUDING THE CREDIT SHELTER TRUST CREATED THEREIN PLAINTIFF | * * * * * * * | IN THE PROBATE COURT |
| VS, | * * | |
| MATEO CORTEZ, ROBERT F. SCHLAGER AND WELLS FARGO BANK, NATIONAL ASSOCIATION, DEFENDANTS | * * * * * | |
| ***** | * * | NO. 1 OF |
| MATEO CORTEZ, AS REPRESENTATIVE OF THE ESTATE OF DEBORAH CORTEZ, INTERVENOR | * * * * | |
| VS. | * * | |
| LINDA MURRAY, SUCCESSOR TRUSTEE AND ON BEHALF OF THE WILLIAM D. SHORT AND PHYLLIS D. SHORT REVOCABLE LIVING TRUST INCLUDING THE CREDIT SHELTER TRUST CREATED THEREIN, RESPONDENT IN THE INTERVENTION | * * * * * * * | TRAVIS COUNTY, TEXAS |

**********************************************************

**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF**

**********************************************************

On the 18th day of December, 2015, the following Application for Temporary Restraining Order and Injunctive Relief came on to be heard outside the presence of a jury, in the above-entitled and numbered cause before the Honorable Guy Herman, Judge Presiding, held in Austin, Travis County, Texas.

EXHIBIT
C

MR. BROTHERTON: It was a quick show.

THE COURT: I know. He's fast, he's speedy sometimes.

MR. HESTER: He showed it to the wrong person.

THE COURT: I'm not going to prohibit them from proceeding, I'm not going order them to dismiss in West Virginia. You all can go to West Virginia and argue.

MR. BROTHERTON: The problem is of course, Your Honor, is our guy has limited funds and --

THE COURT: But he's got good lawyers, so -- who are looking at an opportunity if you're right of getting five million dollars.

MR. COHEN: Yeah.

THE COURT: I'm sure that you can --

MR. COHEN: Should have signed a contingent fee.

THE COURT: -- make your way to West Virginia.

MR. BROTHERTON: Well, I certainly -- well, we can come back. What about the setting, the injunction?

THE COURT: Because this is just a TRO time so --

MR. COHEN: Yeah.

THE COURT: Be 14 days from now.

MR. BROTHERTON: Okay. So just get with your clerk to get set a date.

THE COURT: Well, yes. Let's see. I don't know when that would be.

THE STATE OF TEXAS          )

COUNTY OF TRAVIS           )

I, MELISSA VOIGT, Official Court Reporter in and for the Probate Court No. 1 of Travis County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $130.50 and was paid by Rose Cohen.

WITNESS MY OFFICIAL HAND this the 17th day of March, 2016.

/s/ Melissa Voigt
MELISSA VOIGT, CSR #4886
Official Court Reporter
Probate Court No. 1
Travis County, Texas
1000 Guadalupe, Room 217
Austin, Texas  78701
(512) 854-9258
C.S.R. Certification No. 4886
Expires:  12/16

MELISSA VOIGT, CSR
(512) 854-9258

APPENDIX E

IN THE CIRCUIT COURT OF WIRT COUNTY, WEST VIRGINIA

LINDA MURRAY, in her Capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short Revocable Living Trust,

        Plaintiff,

vs.                           CIVIL ACTION NO. 15-C-28
                                   HONORABLE ROBERT A. WATERS, Judge

LINDA LOU MURRAY, *et als*,

        Defendants.

### RESPONSE OF LINDA MURRAY, IN HER CAPACITY AS SUCCESSOR TRUSTEE OF THE WILLIAM D. SHORT AND PHYLLIS D. SHORT REVOCABLE LIVING TRUST, TO THE MOTION TO INTERVENE FILED BY THE ESTATE OF DEBORAH CORTEZ

Comes now Linda Murray, in her capacity as Successor Trustee of the William D. Short and Phyllis D. Short Revocable Living Trust, and files her Response to the Estate of Deborah Cortez' Motion to Intervene.

The Movant has filed a Motion to Intervene in the case at bar relying upon Rule 24(a)(2) of the West Virginia Rules of Procedure. Rule 24(a)(2) provides:

> (a)   Intervention of Right – Upon timely application anyone shall be permitted to intervene in an action: (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the adjudication of the action may as a practicable matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The timeliness of an application to intervene is a matter of discretion with the trial court. *Syllabus Point 10, Pioneer Co. v. Hutchinson*, 220 S.E.2d. 894 (1975), overruled on other

1

grounds; *Syllabus Point, West Virginia Public Employees Insurance Board v. Blue Cross Hospital Service, Inc.*, 180 W.Va. 178 (1988). In the *West Virginia Public Employees Insurance Board* case, the West Virginia Supreme Court of Appeals applied the same standard for review of the timeliness of a motion to intervene as applied in Federal Court Review of such decisions.

> "The same standard has been applied in federal review of such decisions. In *NAACP v. State of New York*, 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed. 2d. 648 (1973), the party moving to intervene filed its motion just four days after the entry of the summary judgment order, yet the United States Supreme Court affirmed the trial judge's denial intervention. The court enumerated the criteria for reviewing a trial judge's discretionary decision to deny motion to intervene. Three areas were considered by the court: whether the underlying action had progressed to a point that intervention would substantially affect the parties to the original action; whether unusual circumstances exist which establish that the interest the movant alleges was inadequately protected; and whether the movant knew or should have known of the pendency of the action." *NAACP*, 413 U.S. at 366-69, 93 S.Ct. at 2602-04, 37 L.Ed. 2d. at 662-64, West Virginia Public Employees Insurance Board, *supra*, at pg. 814.

Based upon review and analysis of the areas to be considered by this Court in ruling upon the pending motion, the motion should be denied for the following reasons:

## I.
## The Estate of Deborah Cortez has no standing to
## Intervene in this civil action.

It is axiomatic that the "Estate of Deborah Cortez" is not a proper party to this action, has no right to intervene and properly not named as a party. Estates are not natural or artificial persons, and they lack legal capacity to sue or to be sued, an action against an estate must be brought against an administrator or executor as a representative of the estate. 31 Am.Jur.2d, *Executors and Administrators.*§1141 (2016) The Estate of Deborah Cortez is *non sui juris*, as such it lacks the legal capacity to intervene in this action. This principle is clearly recognized in

2

the proposed intervenor hails.

It is well settled that "an 'Estate' is not an entity that can be a party to litigation. It is the personal representative of the estate, in a representative capacity, that is the proper party." *Gavishe v. Spence*, 129 S.W.3d 701, 704 n.1 (Tex. App. 2004). Defendant's estate was not a legal entity and could not be sued as such. *Henson v. Estate of Crow*, 734 S.W.2d 648, Supreme Court of Texas (1987). *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex. 1975).

## II.
## The Motion Is Untimely

This case was initially filed on November 20, 2015, nearly 19 months prior to the filing of the intervenor's motion. In the original Complaint filed in this action, Mateo Cortez, now the Personal Representative of the Estate of Deborah Cortez, was named as an individual defendant. Paragraph 13 of the Complaint stated:

> "13. Mateo Cortez, the surviving spouse of Deborah Ann (Short) Cortez, claims that as the surviving spouse of Deborah Ann (Short) Cortez he is entitled to the Trust proceeds. His claim is without legal merit, nevertheless, in order that he may appear and protect his interest, if any, he is named as a defendant herein."

Mateo Cortez was not named as a defendant in his capacity as Personal Representative of the Estate of Deborah Cortez in the Complaint for the reason that at the time filing of the Complaint there was no on-going administration of the Estate of Deborah Cortez. Over three and one-half years prior to the filing of the Complaint, on February 21, 2012, two and one-half months after the death of Deborah Cortez, the movant, Mateo Cortez filed a Small Estate Affidavit in the Probate Court of Travis County, Texas. A copy of the Affidavit is attached hereto, marked as Exhibit A and made part hereof. In his Affidavit, Mateo Cortez swore that the

3

total value of all known assets of the decedent, as of the date of her death, not including the homestead and exempt property, does not exceed $50,000.00. The Affidavit stated that there was no petition for appointment of a personal representative pending, nor had one been granted.

In the civil action *sub judice*, the defendant Mateo Cortez has repeatedly claimed that: (1) he was married to Deborah Cortez; (2) Deborah Cortez died intestate and without issue; and (3) he is the sole heir at law of Deborah Cortez. Mateo Cortez is the individual who had a right to open the estate of Deborah Cortez, V. T. C.A., Estate Code §304.001. He failed to do that with the result that he was the only person who could be served with the legal process intended to notify the heirs of Deborah Cortez of this litigation. The interests of Mr. Cortez are identical to the interest of "the estate of Deborah Cortez". Mr. Cortez should not be heard to complain about what he caused by willfully misrepresenting to the Texas Probate Court the extent of the assets of Deborah Cortez.

The movant has been aware of the pendency of this action since its initial filing. Mateo Cortez did not become appointed as the Personal Representative of the Estate of Deborah Cortez until well after the filing of the Complaint. The movant has no justification, other than malicious interference, for the delay in filing the Motion to Intervene as the Personal Representative of the Estate of Deborah Cortez.

### III.
### The Estate of Deborah Cortez has no interest in the Property
### <u>which is subject of this action.</u>

The Estate of Deborah Cortez has no interest in the property which is the subject of this action. This has been specifically found by the Travis County Probate Court. In a parallel case filed in the State of Texas, styled *Mateo Cortez, as Representative of the Estate of Deborah*

4

*Cortez, Plaintiff, vs. Sandra Fleshman Brown, et al.*, Travis County Probate Court No. 1, Cause No. C-1-PB-16-002348, Judge Guy Harmon on February 10, 2017, entered an Amended Final Judgment ordering that the claim of Mateo Cortez as Personal Representative of the Estate of Deborah Cortez be dismissed in its entirety. The Judgment Order states in pertinent part:

> "In particular, the court dismissed any and all claims that Mateo Cortez, in his individual capacity <u>or in his capacity as personal representative of the Estate of Deborah Cortez</u>, (emphasis added) had to any assets of the William D. Short and Phyllis D. Short Revocable Living Trust (the Trust), other than his claim for undistributed income from the Trust during the life of Deborah Cortez."

In its Amended and Final Judgment, the Texas Probate Court imposed sanctions upon the attorney for Mateo Cortez, William J. Brotherton and the Brotherton Law Firm, jointly and severally, in the amount of $65,130.76. The defendants in the Texas litigation had previously filed a Motion to Modify Judgment to include the sanctions award. The Court in its Order granting the Motion found that William J. Brotherton violated Texas Civil Procedure Remedies Code Chapter 10 in signing the original Petition in Intervention, the First Amended Petition in Intervention and the Third Party Petition, Second Amended Petition in Intervention and the Third Party Petition, the Third Amended Petition in Intervention and the Third Party Petition and the Fourth Petition in Intervention filed in this matter. In particular, the Court found that "Mr. Brotherton violated Texas Civil Procedure and Practices Remedies Code §10.001 by signing these pleadings because each of them contained the claim that Deborah Cortez was entitled to all the assets from the William D. Short and Phyllis D. Short Revocable Living Trust (the Trust) upon the death of Phyllis Short because Deborah was over the age of 35 when Ms. Short died. The court finds that the plain language of the Trust foreclose such claim and that this claim does not warrant

5

by existing law or by a non-frivolous argument for the extension, modification, or reversing of existing law or the establishment of new law." Copies of the Amended Final Judgment entered in the Travis County Probate Court litigation on February 10, 2017, and the Order on Third Party Defendant's Motion to Modify Judgment and Include Sanction Award dated February 10, 2017, are attached hereto, marked as Exhibits A and B, and made part hereof.

## IV.
### The Movant's interest in the proceeding has been adequately represented by the original defendant, Mateo Cortez.

Mateo Cortez was originally named as a defendant in this proceeding and has heretofore been dismissed from this action by this Court. By Order entered by this Court on September 15, 2016, the Court found that "Mateo Cortez is not a beneficiary of the Trust and is not entitled to share in the distribution of Trust assets."

The Movant's claimed interest in the property set out in his Motion to Intervene is identical to the claim made by Mateo Cortez in his individual capacity. Mateo Cortez is the sole beneficiary of the Estate of Deborah Cortez. The claim now being advanced by Mateo Cortez in his capacity as the Personal Representative of the Estate of Deborah Cortez is identical in all respects to the claim made by Mateo Cortez in his individual capacity. With both claims, Mateo Cortez is ultimately seeking an Order from the Court that he is entitled to distribution of all the assets of the Short Trust. The Court has already fully considered his claim as to Mateo Cortez in his individual capacity and found it to be without any merit whatsoever and dismissed Mateo Cortez as a party to this action. Now, Mateo Cortez, wearing a different hat, is simply attempting to re-litigate his dismissal. The Motion is frivolous and is filed in violation of Rule 11 of the West

6

Virginia Rules of Civil Procedure.

## V.
### Intervention will unduly delay or prejudice the adjudication
### of the rights of the remaining parties to this action.

The controversy giving rise to this proceeding has been the subject of extensive litigation in this Court, the Travis County Probate Court in the State of Texas, the United States District Court for the Southern District of West Virginia, and the West Virginia Supreme Court of Appeals at considerable time and expense to the parties. All aspects of this case have been reviewed in detail by the various Courts. In each instance of court review, the Movant has been rendered an adverse ruling. The Motion before the Court is simply another effort by the Movant, Mateo Cortez, and his sanctioned counsel, William J. Brotherton, to delay the ultimate conclusion of this case, all to the prejudice of the real parties in interest.

## VI.
### Conclusion

For all the above-stated reasons, Linda Murray, in her Capacity as Successor Trustee of the William D. Short and Phyllis D. Short Revocable Living Trust, respectfully prays that the Court deny the Motion to Intervene filed by the Estate of Deborah Cortez.

**LINDA MURRAY**
**BY COUNSEL**

7

J. Nicholas Barth
WV State Bar #255
BARTH & THOMPSON
P. O. Box 129
Charleston, WV 25321
304/342-7111
*Counsel for Linda Murray*

Robert S. Fluharty
WV State Bar #1229
417 Grand Park Drive, Suite 101
Parkersburg, WV   26105
304/422-5449
*Counsel for Linda Murray*

8

Cause No. C-1-PB-12-00**0335**          EXHIBIT A

| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| DEBORAH A. CORTEZ | § | NO. __1__ |
| | § | |
| DECEASED | § | TRAVIS COUNTY, TEXAS |

<u>SMALL ESTATE AFFIDAVIT</u>

| STATE OF TEXAS | § |
| COUNTY OF TRAVIS | § |

MATEO CORTEZ ("Distributee") furnishes the following information to the Court:

1.      "DEBORAH A. CORTEZ ("Decedent") died intestate on December 9, 2011 in Austin, Travis County, Texas, at the age of 54 years.

2.      "Decedent's domicile was in TRAVIS County, Texas, where the principal part of Decedent's property at the time of her death was situated.

3.      "There is no petition for the appointment of a personal representative pending, nor has one been granted, for the Decedent's Estate.

4.      "Decedent died more than thirty (30) days prior to the filing of this Small Estate Affidavit.

5.      "The total value of all of the known assets of the Decedent, as of the date of her death, not including the homestead nor exempt property, does not exceed $50,000.00, and those nonexempt assets exceed the known liabilities of the Estate, exclusive of liabilities secured by homestead and exempt property.

6.      "The only real property of the Estate of the Decedent is a homestead which is community property and located at 2602 Douglas Street, Austin, Texas 78744. The Estate's interest in said homestead is valued at approximately $60,000.00, which is more particularly described as follows:

>      Lot 7, Block B, Burleson Road Heights, a subdivision in Travis County,
>
>      Texas, according to the map or flat thereof recorded in Volume 6, Page 52,
>
>      Plate Records of Travis County, Texas.

7.      "Decedent's marital history was as follows:  Married; surviving spouse; Mateo Cortez

8.      "Decedent did not have or adopt any children and did not take any children into decedent's home or raise any children, except:  None.

9.      "Decedent's mother was:  Phyllis Dale Whited, whose date of death was 02/05/2011.

10.      "Decedent's father was:  William Dorsey Short, whose date of death was 01/03/2001.

11.      "Decedent had the following siblings: None.

12.      "Decedent did not apply for and receive Medicaid benefits on or after March 1, 2005

13.      "The names, addresses, relevant family history facts showing relationship of each Distributee to the Decedent, and the share of the Estate to which each Distributee is entitled are as follows:

"Name: MATEO CORTEZ

Address: 2602 Douglas Street, Austin Texas 78741

Relationship: husband

Status: Adult

Share of Estate: 100% of community property real and personal of the homestead located at 2602 Douglas St. Austin, Texas 78741 including the known assets of Decedent's Estate as follows:

Description: State Paying Agency: Texas Department of Insurance

Last payroll check and accrued vacation leave

Type: Community

Value: 100% of $683.39 wages and $89.43 accrued vacation leave totaling $772.82

Encumbrances: None

## LIABILITIES

"No claims are due and owing by the Estate of DEBORAH A. CORTEZ, Deceased.

"Distributee states that the facts contained in this Affidavit are true and prays that this Affidavit be filed in the Small Estate Records; that the same be approved by the Court; and the Clerk issue certified copies thereof in order to allow the Distributee to present the same to persons owing money to the Estate of DEBORAH A. CORTEZ, Deceased, or acting as registrar, fiduciary, or transfer agent of anyone having evidences of interest, indebtedness, property, or other right belonging to said Estate."

_MATEO CORTEZ_
MATEO CORTEZ, Distributee


SWORN TO and SUBSCRIBED BEFORE ME by MATEO CORTEZ, this 21 day of February, 2012, to certify which witness my hand and seal of office, in the capacity therein stated.

(Seal)

Susie A. Barrera

SUSIE A. BARRERA
My Commission Expires
July 24, 2015

Notary Public in and for
Travis County, State of Texas
My Commission Expires: 7/24/15

STATE OF TEXAS                                                    §
                                                                  §
COUNTY OF TRAVIS                                                  §

   "I have no interest in the Estate of DEBORAH A. CORTEZ, Deceased, and am not related to Decedent under the laws of descent and distribution of the State of Texas. The facts contained in this Affidavit are true."


_____
Sergio Madrigal, Affiant

   **SWORN TO and SUBSCRIBED BEFORE ME** by Sergio Madrigal, this 16 day of February _____, 2012, to certify which witness my hand and seal of office, in the capacity therein stated.

(Seal)

> CYNTHIA J. MENDEZ
> MY COMMISSION EXPIRES
> February 19, 2012

Notary Public in and for
Travis County, State of Texas
My Commission Expires: 2/19/2012


STATE OF TEXAS                                                    §
                                                                  §
COUNTY OF TRAVIS                                                  §

   "I have no interest in the Estate of DEBORAH A. CORTEZ, Deceased, and am not related to Decedent under the laws of descent and distribution of the State of Texas. The facts contained in this Affidavit are true."

_____
John Alvarez, Affiant

   **SWORN TO and SUBSCRIBED BEFORE ME** by John Alvarez, this 21 day of February, 2012, to certify which witness my hand and seal of office, in the capacity therein stated.

(Seal)

> SUSIE A. BARRERA
> My Commission Expires
> July 24, 2015

Notary Public in and for
Travis County, State of Texas
My Commission Expires: 7/24/15


_____
RUBEN I. BARRERA
Attorney for MATEO CORTEZ
State Bar No.: 01808450]
606 W. Oltorf
Austin, Texas 78704
Telephone: (512) 445-2054
Facsimile: (512) 445-4985



No. C-1-PB-14-001564

| | | |
|---|---|---|
| LINDA MURRAY, SUCCESSOR TRUSTEE AND ON BEHALF OF THE WILLIAM D. SHORT AND PHYLISS D. SHORT REVOCABLE LIVING TRUST INCLUDING THE CREDIT SHELTER TRUST CREATED THEREIN, PLAINTIFF | § § § § § § § § | IN THE PROBATE COURT NO. 1 |
| V. | § § | |
| MATEO CORTEZ, ROBERT F. SCHLAGER AND WELLS FARGO BANK, NATIONAL ASSOCIATION, DEFENDANTS | § § § § § | OF |
| ***** | § § § | |
| MATEO CORTEZ, AS REPRESENTATIVE OF THE ESTATE OF DEBORAH CORTEZ INTERVENOR | § § § | |
| V. | § § | |
| LINDA MURRAY, SUCCESSOR TRUSTEE AND ON BEHALF OF THE WILLIAM D. SHORT AND PHYLLIS D. SHORT REVOCABLE LIVING TRUST INCLUDING THE CREDIT SHELTER TRUST CREATED THEREIN | § § § § § § § § | TRAVIS COUNTY, TEXAS |

## ORDER GRANTING THIRD PARTY DEFENDANTS' TRADITIONAL AND NO EVIDENCE MOTION FOR SUMMARY JUDGMENT

On this day, the Court considered the Traditional and No Evidence Motion for Summary Judgment (the "Motion") filed by Third Party Defendants, Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lee Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks, Donald Leman Whited, Michael Ray Whited,

1

No. C-1-PB-14-001564

Terry Lee Whited and Sherry Lynn Whited Salsbury, all in their individual capacities. Having considered the Motion. the response. all admissible summary judgment evidence. the arguments of counsel, and the other papers on file with the Court, the Court hereby GRANTS the Motion in its entirety.

It is therefore. ORDERED, that Mateo Cortez's claims against Third Party Defendants in this lawsuit are dismissed in their entirety. In particular. the Court hereby dismisses any and all claims that Mateo Cortez. in his individual capacity or in his capacity as personal representative of the Estate of Deborah Cortez. has to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust"). other than his claim for undistributed income from the Trust during the life of Deborah Cortez. This judgment has no effect on Mateo Cortez's breach of fiduciary duty against Linda Murray. in her capacity as trustee of the Trust.

SIGNED this 19th day of December. 2016.

HONORABLE JUDGE PRESIDING

2

EXHIBIT C

## CAUSE NO.  C-1-PB-16-002348

| | |
|---|---|
| MATEO CORTEZ, AS REPRESENTATIVE§<br>OF THE ESTATE OF DEBORAH CORTEZ§<br>*Plaintiff* §<br> §<br>V.                                            §<br> §<br>SANDRA FLESHER BROWN,              §<br>CHARLOTTE FLESHER ASH,            §<br>CHARLENE FLESHER JOHSTON,         §<br>CONNIE BARRY, RANDALL WAYNE       §<br>DAVIS, VIRGINIA VILLERS, CHARLES  §<br>ROBERTS, LISA A. SMITH, PATRICIA  §<br>CHAPMAN, BETTY J. MARKS WEBB,     §<br>JAMES BERL MARKS, LINDA MURRAY, §<br>THOMAS WAYNE MARKS, DONALD        §<br>LEMAN WHITED, MICHAEL RAY         §<br>WHITED, TERRY LEE WHITED and      §<br>SHERRY LYNN WHITED SALSBURY       §<br>*Defendants* § | IN THE PROBATE COURT NO. 1<br><br><br>OF<br><br><br><br><br><br><br><br><br><br><br><br>TRAVIS COUNTY, TEXAS |



FILED FOR RECORD
2017 FEB 10  PM 4: 01
DANA DEBEAUVOIR
COUNTY CLERK
TRAVIS COUNTY, TEXAS

## AMENDED FINAL JUDGMENT

On December 19, 2016, the Court considered the Traditional and No Evidence Motion for Summary Judgment (the "Motion for Summary Judgment") filed by Third Party Defendants, Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lee Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks, Donald Leman Whited, Michael Ray Whited, Terry Lee Whited and Sherry Lynn Whited Salsbury, all in their individual capacities (collectively "Third Party Defendants"), in Cause Number C-1-PB-14-001564. After considering the Motion for Summary Judgment, the response, all admissible summary judgment evidence, the arguments of counsel, and the other papers on file with the Court, the Court GRANTED the Motion for Summary Judgment in its entirety and ORDERED, that Mateo Cortez's claims against Third Party Defendants be dismissed in their entirety. In particular, the Court dismissed any and all claims that Mateo Cortez, in his individual

1

capacity or in his capacity as personal representative of the Estate of Deborah Cortez, had to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust"), other than his claim for undistributed income from the Trust during the life of Deborah Cortez.

Also on December 19, 2016, the Court considered Third Party Defendants' Motion to Sever. After considering the Motion to Sever, the response, the arguments of counsel, and the other papers on file with the Court, the Court GRANTED the Motion to Sever in its entirety and ORDERED that Mateo Corez's claims against Third Party Defendants in this lawsuit be severed in their entirety and assigned the new cause number C-1-PB-16-002348.

On January 16, 2017, Third Party Defendants filed their Motion to Modify Judgment to Include Sanctions Award (the "Motion to Modify"), which extended the plenary power of the Court to modify its judgment. The Motion to Modify was heard by the Court at a hearing on January 30, 2017. After considering the Motion to Modify, the response, the admissible evidence presented at the hearing, the response, the arguments of counsel, and the other papers on file with the Court, granted the Motion to Modify in part and granted sanctions. The Court sanctions attorney William J. Brotherton and the Brotherton Law Firm, jointly and severally, in the amount of $65,130.76, and ORDERS that this amount be paid to the Third Party Defendants within 30 days of the entry of this final judgment.

This amended judgment finally disposes of all claims and parties and is final and appealable.

Signed this 10th day of February, 2017.

HONORABLE JUDGE PRESIDING

2

IN THE CIRCUIT COURT OF WIRT COUNTY, WEST VIRGINIA

Linda Murray, in Her Capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short
Revocable Living Trust
Dated April 30, 1991,
        Plaintiff,

                                    CIVIL ACTION NO: 15-C-28
vs.                                    Honorable Robert A. Waters, Judge

Linda Lou Murray, *et als.*,
        Defendants.

## CERTIFICATE OF SERVICE

        The undersigned, counsel of record for Plaintiff, Linda Murray in Her Capacity as Successor Trustee of the William D. Short and Phyllis D. Short Revocable Living Trust, in the above styled action, hereby certifies that on this **22nd day of June, 2017,** he served the foregoing and hereto attached **RESPONSE OF LINDA MURRARY, IN HER CAPACITYAS SUCCESSOR TRUSTEE OF THE WILLIAM D. SHORT AND PHYLLIS D. SHORT REVOCABLE LIVING TRUST, TO THE MOTION TO INTERVENE FILED BY THE ESTATE OF DEBORAH CORTEZ** upon the Defendants, by United States Mail, First-Class postage prepaid, to the following counsel of record and other persons in envelopes addressed as follows:

| | | |
|---|---|---|
| James W. Marshall, III, Esquire BAILEY & WYANT, PLLC 500 Virginia Street, East - Suite 600, Post Office Box 3710 Charleston, WV 25337-3710 Counsel of Record for the Defendant, Mateo Cortez | Leslie L. Maze, Esquire Attorney at Law PO Box 279 Elizabeth, WV 26143 Counsel of record for the following Defendants: Sherry Lynn Whited Salsbury Terry Lee Whited Michael Ray Whited Donald Whited Estate of Teresa Whited Pettrey, deceased - Sheila Pettrey, Tywanna Pettrey, and Amanda Pettry, Beneficiaries | Aaron C. Boone, Kaitlyn N. McKitrick, David A. DeJarnett Bowles Rice, LLP Fifth Floor, United Square 510 Avery Street, PO Box 49 Parkersburg, WV 26101 Counsel of Record for the Defendant, Connie Lou Keith Barry. |
| Joseph T. Santer, Esquire Santer and Santer PO Box 306 Parkersburg, WV 26102 Guardian ad litem for unknown Defendants. | Randall Wayne Davis 1663 Brooksford Road Kennersville, NC 27284 | Virginia Ann Villers 28649 Allesandria Circle Bonita Springs, FL 34135 |

| | | |
|---|---|---|
| Charlotte Flesher Ash<br>8653 White Swan Drive<br>Apt. 104<br>Tampa, FL 33614 | Charles Bruce Roberts<br>487 Wilson Fork<br>Elizabeth, WV 26143 | Lisa Ann Rader Smith<br>96 Franklin Street<br>Elizabeth, WV 26143 |
| Thomas Wayne Marks<br>749 South Long Run Road<br>Belleville, WV 26133 | James Berl Marks<br>1093 South Pleasant Hill<br>Road<br>Belleville, WV 26133 | Betty Jo Marks<br>1834 South Pleasant Hill<br>Road<br>Belleville, WV 26133 |
| Patricia Ann Marks Chapman<br>2670 Pettyville Road<br>Parkersburg, WV 26101 | Sandra Kay Brown<br>99 Woodridge Drive<br>Mineral Wells, WV 26150 | Magen Elizabeth Whited<br>164 Joe Shore Drive<br>Ravenswood, WV 26143 |
| Charlene Flesher Johnston<br>37 Franklin Street<br>Elizabeth, WV 26143 | Linda Lou Murray<br>197 Oakbrook Drive<br>Mineral Wells, WV 26150 | William J. Brotherton<br>Brotherton Law Firm<br>2340 FM 407, Suite 200<br>Highland Village, TX 75077 |

Plaintiff Linda Murray
By Counsel,

ROBERT S. FLUHARTY, JR.
WV State Bar No. 1229
Fluharty & Townsend
417 Grand Park Drive, Suite 101
Parkersburg, WV 26105
304.422.544

APPENDIX F

# IN THE CIRCUIT COURT OF WIRT COUNTY, WEST VIRGINIA

Linda Murray, in Her Capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short
Revocable Living Trust
Dated April 30, 1991,

        Plaintiff,

vs.

        CIVIL ACTION NO. 15-C-28
        HONORABLE ROBERT A. WATERS,
        Judge

Linda Lou Murray, *et als*,

        Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came on for hearing this 27th day of June 2017 on the properly served motion for summary judgment and notice of hearing thereon filed by the Plaintiff, Linda Murray, in her capacity as Successor Trustee of the William D. Short and Phyllis D. Short Revocable Living Trust Dated April 30, 1991.

The plaintiff, Linda Murray, appeared in person and by her counsels Robert S. Fluharty Jr., and J. Nicholas Barth. The defendant Connie Lou Keith Barry, appeared in person and by her counsel Aaron A. Boone. The defendants Donald Lehman Whited, Michael Ray Whited, Sheri Lynn Whited Saulsberry, Sheila Patry, I want to Patry, Amanda Patry (all heirs of Theresa Annette Whited Patry), and Terry Lee Whited appeared by their counsel Leslie Maze. Joseph Santer, Guardian ad Litem for unknown defendants and the minor defendant was present throughout the hearing. The court reporter made a list of the parties who appeared pro se.

Although Mateo Cortez was dismissed as a party to this civil action pursuant to the order of this Court entered September 15, 2016, counsel for Mr. Cortez were present at the hearing on this motion for summary judgment allowed to participate, and the Court considered the matters raised by them in their response to the motion for summary judgment served on the 21st day of June, 2017. The Court has reviewed the pending motions and memoranda filed by all parties herein and being fully apprised of the parties respective positions in finding the motion ripe for decision the Court hereby makes the following findings of fact and conclusions of law.

FILED
Circuit Court
Date 6-30-17
CLERK TW

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. This action was filed pursuant to the West Virginia Uniform Declaratory Judgment Act seeking an Order from the Court directing the distribution of assets from a Trust to the persons determined by the Court to be entitled to receive the same.

2. In its order dated the 15th day of September, 2016 this Court made Findings of Fact and Conclusions of Law. Those findings of fact and conclusions of law are hereby ratified and approved and confirmed and adopted herein as though set forth herein verbatim.

3. The court having denied the Motion to Intervene served by the Estate of Deborah Cortez on the 12th day of June, 2017 and the Motion to Dismiss served by Mateo Cortez on the 12th day of June, 2017, and the Motion to Alter or Amend, (denominated as Motion for Reconsideration in the certificate of service) served by Mateo Cortez on the 29th day of September, 2016.

4. The Court concludes that there is no just reason for delay and expressly directs the entry of a judgment order setting forth the identity of the persons entitled to share in the William D. Short and Phyllis D. Short Revocable Living Trust, and the proportionate interest of the net Trust which each is entitled to receive.

ENTER:

_____ 6-27-17

JUDGE ROBERT WATERS

PREPARED BY:

_____
ROBERT S. FLUHARTY, JR.

_____
J. NICHOLAS BARTH

I hereby certify that the foregoing is a true and correct copy of the original entry on file in my office ATTEST: Carol Frame Circuit Clerk-Wirt County, WV

_____
Date 7-11-17

G:\RSF\Civil\Short Family Trust, Linda Murray, Trustee 9360\WIRT COUNTY SUIT\version 2 Findings of Fact and Conclusions of Law 06.26.16.wpd

ACCEPTED
03-17-00365-cv
21267080
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/13/2017 1:36 PM
JEFFREY D. KYLE
CLERK

# APPENDIX G

IN THE CIRCUIT COURT OF WIRT COUNTY, WEST VIRGINIA

LINDA MURRAY, in Her Capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short Revocable Living Trust
Dated April 30, 1991,

Plaintiff,

v.

CIVIL ACTION NO. 15-C-28
JUDGE WATERS

LINDA LOU MURRAY, et al.,

Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANT CONNIE LOU KEITH BARRY'S MOTION FOR SANCTIONS

Defendant Connie Lou Keith Barry ("Mrs. Barry"), by counsel, submits the following memorandum of law in support of *Defendant Connie Lou Keith Barry's Motion for Sanctions* (the "Motion"), pursuant to this Court's equitable power to sanction bad faith, vexatious, wanton, or oppressive litigation conduct articulated in Syllabus Point 3, *Sally-Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986).

## I.    INTRODUCTION

Mateo Cortez, for years, never claimed that he or the Estate of Deborah Cortez were the sole beneficiaries to the Trust. However, as soon as Mateo Cortez and his counsel discovered that the Trust contained 5.2 Million in assets, they immediately concocted meritless arguments to suggest that he was the sole beneficiary to the Trust Assets. This forced Mrs. Barry to hire counsel to refute these claims. However, even after winning judgment against Mateo Cortez on September 15, 2016, Mrs. Barry had to expend tens of thousands of additional dollars in litigation costs solely to respond to further, frivolous filings that were submitted solely to:

(a) delay this Court's consideration of the Trustee's motion for summary judgment, and (b) to drive up Mrs. Barry's litigation costs and deplete the Trust Assets. Accordingly, this Court should sanction Mateo Cortez and his counsel, and order them, jointly and severally, to pay any and all costs incurred on behalf of Mrs. Barry, at a minimum, since September 15, 2016.

## II. STANDARD OF REVIEW

1. "There is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syl. Pt. 3, *Sally-Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986).

2. "In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case." Syl. Pt. 2, *Bartles v. Hinkle*, 196 W.Va. 381, 472 S.E.2d 827 (1996).

3. "Before imposing sanctions for filing frivolous pleadings and advancing frivolous arguments, a trial court must give the alleged contemnor notice and an opportunity to be heard on the questions of frivolousness, appropriate sanctions, and, if an award of attorney's fees is to be made, on the necessity and reasonableness of such fees. At the conclusion of such hearing, the trial court must make sufficient findings of fact and conclusions of law to enable the

2

appellate court to conduct a meaningful review." Syl. Pt. 6, *Czaja v. Czaja*, 208 W.Va. 62, 537 S.E.2d 908 (2000).

### III.     STATEMENT OF CONDUCT GIVING RISE TO SANCTIONS

#### *Background*

4.      This action involves the proper distribution of the assets of the "William D. Short and Phyllis D. Short Revocable Living Family Trust Dated April 30, 1991," as amended and restated by the "Second Amendment and Restatement of The William D. Short and Phyllis D. Short Revocable Living Trust" dated January 5, 2000 (collectively, the "Trust").

5.      On December 9, 2011, Deborah Cortez, the sole daughter of William D. Short and Phyllis D. Short died.

6.      On February 23, 2012, Mateo Cortez, the widower of Deborah Cortez, filed a Small Estate Affidavit (***Exhibit A – Small Estate Affidavit***, Cause No. C-1-PB-12-338, Probate Court of Travis County, Texas), confirming that he was the sole heir to the Estate of Deborah Cortez, and confirming that the Estate of Deborah Cortez had less than $50,000 in assets.

7.      On August 28, 2014, the Trustee, Linda Murray, filed an action in the Probate Court of Travis County, Texas, asserting, *inter alia*, that Mateo Cortez and/or Deborah Cortez had misappropriated certain trust assets during Deborah's lifetime.

8.      On October 3, 2014, Mateo Cortez filed "Mateo Cortez's Original Answer" (***Exhibit B – Mateo Cortez's Original Answer***, Cause No. C-1-PB-14-1564, Probate

3

Court of Travis County, Texas) to the Trustee's action. In his Answer, Mateo Cortez did not claim that he or the Estate of Deborah Cortez was entitled to the entirety of the Trust Assets.

9. On March 16, 2015, Mateo Cortez filed "Mateo Cortez's First Amended Answer" (*Exhibit C – Mateo Cortez's First Amended Answer*, Cause No. C-1-PB-14-1564, Probate Court of Travis County, Texas) to the Trustee's action. In his Amended Answer, Mateo Cortez did not claim that he or the Estate of Deborah Cortez was entitled to the entirety of the Trust Assets.[1]

10. On June 19, 2015, counsel for Mateo Cortez deposed the Trustee. During this deposition, the Trustee revealed, for the first time to Mateo Cortez and his counsel, that the Trust contained approximately 5.2 Million in assets.

11. On June 26, 2015, Mateo Cortez and his counsel (the Law Firm of William Brotherton) filed their Original Petition in Intervention[2], arguing (for the first time, ever) that Mateo Cortez and/or the Estate of Deborah Cortez were the sole beneficiaries to the Trust and were, therefore, entitled to the entirety of the Trust Assets.

---

[1] Of note, "Mateo Cortez's Original Answer" and "Mateo Cortez's First Amended Answer" were signed by Attorney John Clark Long IV of Dallas, Texas (Texas State Bar No. 12520500). The signature line for these two pleadings suggests that Mr. Long was not directly affiliated with the Brotherton Law Firm at this time because Mr. Long had a mailing address separate from the Brotherton Law Firm, and because Mr. Long's email address was john@johnlonglawyer.com. However, when Mateo Cortez filed his "Original Petition in Intervention," Mr. Long was directly affiliated with the Brotheron Law Firm because Mr. Long's name appeared directly underneath William Brotherton's name, because Mr. Long no longer had a separate mailing address, and because Mr. Long's email address was john@brothertonlawfirm.com.

[2] Mrs. Barry believes that most, if not all, of the pleadings referenced herein have previously been submitted to this Court. As such, unless otherwise indicated, they will not be attached as exhibits to this Motion. Notwithstanding, Mrs. Barry submits all prior pleadings in further support of her Motion for Sanctions as though they were specifically attached hereto.

4

12. On November 20, 2015, the Trustee filed her Complaint in the Circuit Court of Wirt County, West Virginia, asking this Honorable Court to determine who were the rightful beneficiaries to the Trust.

13. On September 15, 2016, this Court granted Mrs. Barry's motion for partial summary judgment, and dismissed Mateo Cortez as a defendant in this case based upon the findings, conclusions, and rulings reflected therein. Among other findings, the Court concluded that the plain and unambiguous language of the Trust instrument provides that: (i) the net income of the Trust would be paid to Mr. and Mrs. Short during their lives; (ii) upon Mr. and Mrs. Short's death, the net income of the Trust would then be paid to their daughter, Deborah Cortez, during her life; and then, (iii) upon Deborah's death, any remaining Trust assets would be distributed to the "heirs of law" of Mr. and Mrs. Short, and not to Cortez. The Court also rejected Mateo Cortez's arguments that the Trust should have terminated upon the death of Mrs. Short and its assets distributed to Deborah during her life; and as a result the Trust assets should be treated as an asset of Deborah's estate, of which Cortez is the sole heir and beneficiary.

### *Statement of the improper purposes underlying Mateo Cortez's actions*

14. Following this Court's entry of summary judgment against him on September 15, 2016, Mateo Cortez, in both his personal capacity and his capacity as the Personal Representative of the Estate of Deborah Cortez (collectively, "Mateo Cortez"), filed numerous additional pleadings that are improper under the rules of procedure, that assert obviously frivolous claims, and that were filed to obstruct further progression of this case and to drive up the parties' litigation costs. These pleadings were filed for the following improper purposes:

5

a.      The primary improper purpose of Mateo Cortez's frivolous post-judgment filings was to delay this Court's consideration of the Trustee's motion for summary judgment, filed September 21, 2016, the resolution of which would trigger the parties' "Rule 11 Agreement" in Texas. (*Exhibit D – Rule 11 Agreement*, Cause No. C-1-PB-14-1564, Probate Court of Travis County, Texas)  The "Rule 11 Agreement" was executed by counsel for Mateo Cortez and the Trustee, and permits the Trustee to distribute assets of the Trust "as may be permitted by a final order by a court of competent jurisdiction."  Point being, once Judge Waters ruled on the Trustee's motion for summary judgment, then the Trustee could distribute the Trust assets per the Rule 11 Agreement.

b.      The secondary improper purposes of Mateo Cortez's frivolous post-judgment filings were:  (a) to drive up the litigation costs incurred by the Trustee and the true beneficiaries of the Trust; (b) to deplete the Trust assets available for distribution; and (c) to retaliate against individual beneficiaries (such as Mrs. Barry) for asserting their rightful interests in the Trust.

*Frivolous pleadings filed after Mrs. Barry obtained judgment against Mateo Cortez[3]*

15.     Mateo Cortez submitted the following frivolous filings after this Court granted judgment against him:

---

[3] To be clear, Mrs. Barry contends that, from the outset of litigation in West Virginia, Mateo Cortez and his counsel have proffered meritless arguments not founded in law or fact.  As such, this Court has every right, under *Sally Mike Properties*, to order Mateo Cortez and his counsel to pay all of Mrs. Barry's legal fees.  However, this Motion for Sanctions will focus on why the pleadings filed after Mrs. Barry obtained judgment against Mateo Cortez are particularly egregious.

6

a.    ***Motion to Amend or Alter:***  On September 29, 2016, Mateo Cortez filed a motion to alter or amend the Court's summary judgment order against him. Although the motion was procedurally proper, the grounds for relief were frivolous and simply sought to rehash the Court's rulings under baseless alternate legal theories.

b.    ***Notice of Removal, Motion to Dismiss:***  On October 21, 2016, Mateo Cortez filed a notice of removal of this case to the United States District Court for the Southern District of West Virginia, despite the fact that he was no longer a party to the case, there was no basis for invoking federal jurisdiction, and the time for removal had expired nearly a year earlier.  Mateo Cortez filed for removal two (2) days after the Trustee noticed her summary judgment motion for a hearing, and did so to prevent the Court from holding that hearing and to delay the Court's disposition of his motion to alter or amend.  Additionally, upon removing the case, Mateo Cortez attempted to collaterally attack this Court's rulings by filing a successive, post-judgment motion to dismiss in federal court.  On April 10, 2017, the Federal Court rejected Mateo Cortez's argument, and remanded this matter back to the Circuit Court of Wirt County, West Virginia.

c.    ***Motion to Dismiss & Motion to Intervene:***  On June 12, 2017, Mateo Cortez filed (1) a second post-judgment motion to dismiss "in his personal capacity," and (2) a motion to intervene "in his capacity as personal representative of the Estate of Deborah Cortez," along with a proposed intervenor complaint seeking to re-argue his entitlement to the Trust under yet another baseless legal theory.  By letter to counsel dated June 15, 2017, (***Exhibit E – Brotherton June 15, 2017 letter***) counsel for Mateo Cortez conceded that the intent of these two motions was to delay this Court's resolution of the Trustee's motion for summary judgment:

7

(Mr. Brotherton):    I called your office yesterday to confer regarding whether or not you and your clients wished to consider scheduling our motion to intervene and motion to dismiss for the 27th and reschedule the motion for summary judgment after the court has ruled on our motions. That would appear to be the best process for judicial economy.

*Exhibit E.*

### Notice to Mateo Cortez and his counsel that their conduct was sanctionable

16.    As mentioned below, counsel for Mateo Cortez has, on occasion, argued that he should not be sanctioned because he was never given notice that his conduct was sanctionable. *See infra.* Accordingly, to demonstrate the efforts to avoid seeking the requested sanction in West Virginia, the following chronicles the various filings, letters, statements, and/or rulings placing Mateo Cortez and his counsel on notice that his claims have no merit and/or that continued litigation of his claims is oppressive, vexatious, and sanctionable:

a.    *September 15, 2016*: In this Court's Order granting Mrs. Barry's motion for partial summary judgment, this Court made clear that neither Mateo Cortez, nor the Estate of Deborah Cortez, are entitled to take under the Trust.

b.    *November 7, 2016*: In her November 7, 2016, Motion to Remand and Award of Attorneys Fees and Costs, Mrs. Barry made clear that Mateo Cortez removed this case to Federal Court solely to delay the proper administration of the Trust:

> Additionally, Defendant Cortez did not seek to remove this case until after the state court ruled that he is NOT entitled to a distribution from the Trust. Therefore, it is clear from the timing of this Notice of Removal that the purpose of removing to federal court was solely to obstruct the progression of the state court case, and to delay his obligation to appeal that court's judgment.

8

(*See* Document 8, Memorandum in support of Mrs. Barry's Motion to Remand, p. 2, not attached[4])

    c.    *November 11, 2016:*  In her November 11, 2016, Motion to Remand and Award Attorney Fees and Costs, the Trustee made clear that Mateo Cortez removed this case to Federal Court solely to delay the proper administration of the Trust:

> In the case at bar there is no reason, other than delay or obstruction, for Cortez to have waited until October 21, 2016, to seek to remove this proceeding from the state court to federal court.

(*See* Document 14, Memorandum in support of Plaintiff's Motion to Remand, p. 14, not attached)

    d.    *December 19, 2016:*  On December 19, 2016, the Texas court also granted summary judgment against Mateo Cortez, dismissing "any and all claims that Mateo Cortez, in his individual capacity or in his capacity as personal representative of the Estate of Deborah Cortez, has to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the 'Trust'), other than his claim for undistributed income from the Trust during the life of Deborah Cortez." (*See, Order Granting Third Party Defendants' Traditional and No Evidence Motion for Summary Judgment*, Cause No. C-1-PB-14-1564, Probate Court of Travis County, Texas, Dec. 19, 2016, not attached).

    e.    *January 30, 2017:*  During a sanctions hearing before the Probate Court of Travis County, Texas, counsel for Mateo Cortez argued, incredulously, that they were never informed that their arguments qualified as bad faith:

---

[4] Mrs. Barry believes the pleadings in Federal Court have been transmitted to the Circuit Clerk and the Court can consider the same as if they were attached hereto. Should the Court need courtesy copies of any pleading, Federal or other, please contact the office of Mrs. Barry's counsel.

(Mr. Ruback) If counsel believed that my client was making bad faith arguments from the initial filing in the case, from each hearing that this Court has heard in the case, why didn't counsel bring that to my client's attention? Why didn't counsel bring that to the Court's attention? Laches would bar the arguments they're making today. (*Exhibit F — Transcript of January 30, 2017 Hearing*, Cause No. C-1-PB-16-2348, Probate Court of Travis County, Texas, p. 15[5]).

However, during this hearing, the undersigned made clear that counsel for Mateo Cortez knew or should have known as early as February of 2016 that Mateo Cortez's claims were sanctionable:

(Mr. Ruback) Q: Mr. Boone, when did you first advise my clients that you believe their conduct was sanctionable?

(Mr. Boone) A: I think when we had a hearing — I think it was back in February or March [of 2016] there was a room full of heirs at law in West Virginia, and there was Judge Waters, there was myself, there was several other attorneys. And I — I believe the discussion about the claims raised by Mateo Cortez, the discussion how they were without any merit at all should have given notice to the Brotherton Law Firm that these claims should not have been continued.

(*Exhibit F*, p. 109)

     f.      ***February 10, 2017:*** On February 10, 2017, the Texas court awarded sanctions against Cortez's lawyers, finding that arguments advanced by Cortez in Texas were frivolous. *(**Exhibit G** - Order on Third Party Defendants' Motion to Modify Judgment to Include Sanctions Award*, Cause No. C-1-PB-16-2348, Probate Court of Travis County, Texas). The Texas court sanctioned Cortez's lawyers in the amount of $65,130.76 for driving up Mrs. Barry's legal fees in Texas with frivolous claims.

---

[5] The entire transcript is attached as an exhibit to this Motion. Mrs. Barry asks this Court to take judicial notice of this transcript, and to accept and consider same in support of this Motion.

g. ***February 23, 2017:*** On February 23, 2017, the undersigned sent a letter to William J. Brotherton, with carbon copy to James W. Marshall, III, H. F. Salsbery, and Andrew R. Herrick of the law firm of Bailey and Wyant, demanding "that Mateo Cortez and/or the Estate of Deborah Cortez immediately withdraw any and all claims to the Trust Assets," and explaining that if counsel for Mateo Cortez failed to immediately withdraw their claims to the Trust Assets, then the undersigned "will take appropriate action to: (a) seek additional sanctions against your firm and (b) seek sanctions against Mr. Mateo Cortez personally." (***Exhibit H*** – *Boone February 23, 2017 letter*) On March 1, 2017, William Brotherton rejected the undersigned's February 23, 2017, demand, suggesting that the orders from Judge Waters and Judge Herman are "riddled with errors and inaccuracies." (***Exhibit I*** – *Brotherton March 1, 2017 letter*).

h. ***April 11, 2017:*** On April 11, 2017, the United States District Court for the Southern District of West Virginia remanded this matter back to the Circuit Court of Wirt County, West Virginia, thereby rejecting the arguments proffered by Mateo Cortez to justify removal. (*See* Document 36, Memorandum Opinion and Order, not attached)

i. ***May 10, 2017:*** On May 10, 2017, the parties conducted mediation in Houston Texas. The matter did not resolve.

j. ***June 26, 2017:*** By letter dated June 26, 2017, the undersigned again warned Mateo Cortez's attorneys that their litigation tactics were frivolous and taken in bad faith, and further warned that Mrs. Barry would seek sanctions against them if they refused to cease their obstruction of this case. (***Exhibit J*** – *Boone June 26, 2017*

11

*letter)* Mateo Cortez and his attorneys have nonetheless refused to withdraw their frivolous claims.

## IV. ARGUMENT

To recover reasonable attorneys' fees and costs as a sanction, the prevailing litigant must show that the losing party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *See* Syl. Pt. 3, *Sally-Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986). In order to determine whether the losing party's conduct rises to such a level, the Court must evaluate "(1) the seriousness of the misconduct; (2) the impact the conduct had in the case and in the administration of justice; (3) whether there are mitigating circumstances; and (4) whether the conduct was an isolated occurrence or was a pattern of wrongdoing." *Pritt v. Suzuki Motor Co., Ltd.*, 204 W.Va. 388, 397, 513 S.E.2d 161, 170 (1998) (citing Syl. Pt. 2, *Bartles v. Hinkle*, 196 W.Va. 381, 472 S.E.2d 827 (1996)).

### A. The Seriousness of the Misconduct

1. Mateo Cortez And His Attorneys Began Their Vicious Assault On The Rightful Heirs Only After Discovering That The Trust Contained Over Five Million Dollars In Assets.

From the outset, it is important to review the facts and circumstances surrounding the genesis of Mateo Cortez's frivolous arguments. In 2012, Mateo Cortez filed a Small Estate Affidavit, for the Estate of Deborah Cortez, confirming that the Estate had less than $50,000. *(Exhibit A).* In 2014, when Mateo Cortez responded to allegations that he misappropriated certain Trust Assets, he never claimed that he or the Estate of Deborah Cortez were the sole beneficiaries to the Trust. In fact, Mateo Cortez and his counsel did not discover the sizeable nature of the Trust until the deposition of the Trustee on June 19, 2015.

12

During a hearing before the Probate Court, the Trustee testified regarding her experience during this June 19, 2015, deposition.[6] The Trustee testified that, during her deposition, it became clear Mateo Cortez and his counsel did not know the amount of the Trust prior to this deposition and that, upon learning the amount of the Trust, Mateo Cortez and his counsel became instantly enamored of the sizeable nature of the Trust.

> Q. (By Mr. Boone) Who was -- who was taking the deposition?
>
> A. Brotherton.
>
> Q. The Brotherton Law Firm? Someone from the Brotherton Law Firm?
>
> A. Yes, it was.
>
> Q. And Mateo Cortez was there?
>
> A. Yes.
>
> Q. All right.
>
> A. He was with them.
>
> Q. Okay. So when they asked you how much was in the trust did you know the answer?
>
> A. Yes, I did.
>
> Q. And did you tell them the answer?
>
> A. Yes, I did.
>
> Q. What was your answer?
>
> A. 5.2 million dollars.
>
> Q. What if any reaction did you observe at that time?

---

[6] As noted above, on February 10, 2017, the Honorable Guy Herman, Judge of the Probate Court of Travis County, Texas, sanctioned William Brotherton and the Brotherton Law Firm for filing frivolous claims, and ordered them to pay $65,130.76 within 30 days to Mrs. Barry. In advance of this sanctions award, Judge Herman conducted an evidentiary hearing on January 30, 2017. At this evidentiary hearing, the Trustee testified regarding her efforts in Texas to recoup monies that were misappropriated by Mateo Cortez, including her experience sitting for her deposition on June 19, 2015.

13

A. **You could see eyes rolling.**

Q. How so?

A. Just so you could -- **you could just see that they knew there was a lot of money**. And then shortly after we had a break.

Q. Shortly after that question there was a break?

A. Yes.

Q. And what do you mean by "a break?"

A. 15 minute break.

Q. Counsel left and --

A. Counsel left, we -- yes.

Q. And do you recall if there were many questions after the break concluded?

A. No, there wasn't.

Q. And that deposition occurred on June 19th, 2015, correct?

A. That is correct.

Q. Now, did Mateo through his counsel make any claims after that deposition that were new and different? Did they file any papers or pleadings or anything after that deposition?

A. Oh, yes. They filed -- they filed saying that that money belonged to Mateo Cortez and all -- and it was all of it. He -- Matt said all of the money belonged to him.

(*Exhibit F*, pp. 85-86)(emphasis added).

As such, in light of Mateo Cortez's filings in 2012 and 2014, and in light of the June 19, 2015, deposition, it is clear that Mateo Cortez had no any idea regarding the sizeable nature of the Trust. In fact, it wasn't until seven (7) days after the June 19, 2015, deposition, did Mateo Cortez first allege that he and/or the Estate of Deborah Cortez were entitled to the entirety of the Trust Assets; on that date, June 26, 2015, William Brotherton filed Mateo Cortez's

14

"Original Petition in Intervention," claiming that Mateo Cortez is the sole heir to the Trust Assets.

Point being, it was only after learning that the Trust Assets contained 5.2 Million did Mateo Cortez and his Legal Team begin to embark with their "no holds bar" quest to strip the rightful beneficiaries of their rights to the Trust Assets. Without question, the timing of their actions reveal that Mateo Cortez and his counsel have been motivated solely by greed, and not by any legitimate claim to the Trust Assets.

2.      Mateo Cortez And His Attorneys Filed Their Claims Without Any Justification In Fact Or Law.

The inability of Mateo Cortez's counsel to articulate any reasonable justification for claiming Mateo Cortez is sole heir to the Trust Assets further demonstrates the seriousness of the misconduct. At the January 30, 2017, hearing before the Probate Court, Texas Counsel for the heirs-at-law, Brian Thompson, examined Mr. Brotherton under oath, and asked Mr. Brotherton to explain why Mateo Cortez is entitled to take under the "Postponement Section" of the Trust. (*Exhibit F*, pp. 37 – 48). As the record demonstrates, Mr. Brotherton could not sufficiently explain the basis for his claim. First, Mr. Brotherton rationalized his inability to fully explain the basis for his initial pleading with being preoccupied by a matter in North Dakota.

> Q. (Mr. Thompson) Okay. It seems to me that most of the claims that you brought -- or all of the claims that you brought on behalf of your client were based on Texas law as it exists now. You weren't saying that law should change, were you?
>
> A. (Mr. Brotherton) Again -- and I've got to say over the last six months I've spent most of my time in North Dakota so I haven't been involved in this case in a little while. So you may want to talk with Mr. Hester about some of those technical issues.

15

(*Exhibit F*, p. 20).

Further, when pressed for a simple explanation as to why the Estate of Deborah Cortez is entitled to take under the Postponement Provision (Section D), Mr. Brotherton could not provide an explanation:

> Q. And again, back to my original question, is there any other language in that D portion, the postponement of possession portion, that you believe supports this postponement provision claim?
>
> A. You're talking about in the trust?
>
> Q. Well, sir, the claim cites in every single one of the pleadings that we looked at, the claim cites Article 8 Section D to support this claim. And I'm asking you, can you point out what language you believe in Article 8, Section D supports this claim? And that's on Page 5 of the trust.
>
> A. Well, I mean, whatever we put in our pleadings is -- is -- addresses that. I'm not going to sit here and try and explain it all to you at this point because certainly we've outlined in our pleadings, we've consulted with necessary experts and we believe every claim we've made is colorable.
>
> Q. Was Mr. Kelsey going to testify in this case if it had reached trial as an expert?
>
> A. I hadn't made that decision yet.
>
> Q. He certainly was never designated as an expert, was he?
>
> A. Correct.

(*Exhibit F*, pp. 40-41).

In sum, Mr. Brotherton could not justify his argument that Mateo Cortez, pursuant to the Postponement provision, was entitled to the Trust Assets. As such, Judge Herman agreed that Mr. Brotherton's conduct was sanctionable, and ordered Mr. Brotherton to pay $65,130.76 to Mrs. Barry for her legal fees in Texas. (To date, Mr. Brotherton refuses to pay this sanctions

16

award.)  Mr. Brotheron testified that the arguments proffered in Texas were "virtually identical" to the arguments proffered in West Virginia.  (*Exhibit F*, p. 42).  As such, just as Judge Herman awarded sanctions against the Brotherton Law Firm for fees and costs expended by Mrs. Barry in Texas, so should this Honorable Court similarly award sanctions for fees and costs expended by Mrs. Barry in West Virginia.

> 3. Mateo Cortez And His Attorneys Deliberately Filed Frivolous Pleadings With The Improper Purpose Of Obstructing The Progression Of This Case And Driving Up The Parties' Litigation Costs.

Each time the Trustee would notice her motion for summary judgment for a hearing, Mateo Cortez would initiate a new filing to delay this Court's consideration of the Trustee's motion.  First, when the Trustee filed a notice on September 21, 2016, setting her Motion for Summary Judgment for hearing on November 3, 2016, Mateo Cortez removed this case to Federal Court on October 21, 2016.  Later (after remand), when the Trustee again filed a notice on April 20, 2017, setting her motion for hearing on June 27, 2017, counsel for Mateo Cortez filed a Motion to Dismiss and Motion to Intervene.  Incredulously, a letter from William Brotherton confirms that the sole intent of these two motions was to delay consideration of Trustee's motion for summary judgment.

> I called your office yesterday to confer regarding whether or not you and your clients wished to consider scheduling our motion to intervene and motion to dismiss for the 27th and reschedule the motion for summary judgment after the court has ruled on our motions.  That would appear to be the best process for judicial economy.

*Exhibit E*

The reason why Mateo Cortez has repeatedly attempted to derail consideration of the Trustee's Motion for Summary Judgment is because once the Court grants the Trustee's

17

motion for summary judgment, then the assets may be distributed. Pursuant to a Rule 11 Agreement executed by counsel for Mateo Cortez and counsel for Trustee, the Trustee may distribute assets of the Trust "as may be permitted by a final order by a court of competent jurisdiction." *Exhibit D*. Mateo Cortez has attempted to obstruct the proceedings in this Court precisely because the declaratory relief requested by the Trustee (i.e., "an order directing the distribution of the assets of the Trust to those persons determined by this Court to be entitled to receive the same") would trigger the Rule 11 Agreement.

Additionally, Mateo Cortez has also filed these pleadings to drive up the costs of this litigation, in a plan to deplete the Trust assets and to cause financial harm to the individual Trust beneficiaries. In West Virginia alone, the rightful beneficiaries of the Trust have been forced to defend against multiple motions, an extraordinary writ petition, and an improvident post-judgment case removal, to the tune of tens of thousands of dollars in legal fees and nearly two years of delay. Each of Mateo Cortez's litigation tactics have been rejected by the court(s) that have considered them, yet the Trustee and the true beneficiaries of the Trust have nonetheless suffered real financial harm in defending against them.

B. The Conduct of Mateo Cortez and His Counsel has Impacted the Financial, Physical and Emotional Wellbeing of the Parties.

 1. Mrs. Barry Has Expended Over Tens of Thousand Dollars Fighting Meritless Litigation.

The impact of Mateo Cortez's misconduct was the abuse of the legal system through the attempted prosecution of a series of baseless claims:

> Although there is an undeniable interest in the maintenance of unrestricted access to the judicial system, unfounded claims or defenses asserted for vexatious, wanton, or oppressive purposes

18

place an unconscionable burden upon precious judicial resources already stretched to their limits in an increasingly litigious society. In reality to the extent that these claims or defenses increase delay or divert attention from valid claims or defenses asserted in good faith, they serve to deny the very access to the judicial system they would claim as justification for their immunity from sanction.

*Daily Gazette Co. v. Canady*, 175 W.Va. 249, 252, 332 S.E.2d 262, 265 (1985). Mateo Cortez's misconduct also had a profound impact on Mrs. Barry, who has incurred tens of thousands of dollars in legal fees defending against baseless claims that never should have been pursued.

2.     The Trustee Has Suffered Emotionally And Physically.

During the January 30, 2017, hearing, the Trustee testified that the frivolous litigation has adversely affected the Trustee's relationship with her family, and adversely impacted her emotional and physical health.

Firstly, the litigation has adversely affected the Trustee's relationship with her family. Once Mateo Cortez argued that he was entitled to the entirety of the Trust Assets, the Trustee was forced to institute proceedings in West Virginia to determine the rightful heirs. Once the Trustee filed the Complaint in West Virginia, and served notice to her family members, her family members became unhappy with her. (*Exhibit F*, pp. 91-92). The Trustee testified that the ongoing litigation has caused a strain with her sister and brother. (*Exhibit F*, pp. 91-92).

Secondly, the litigation has adversely affected the Trustee's physical and emotional health. The litigation has caused the Trustee to gain significant weight (*Exhibit F*, p. 95) and has required her to take anti-anxiety medication (*Exhibit F*, p. 95).

19

In sum, the conduct of Mateo Cortez and his counsel, in prosecuting his baseless claim, has adversely impacted the emotional and physical well-being of the Trustee, Linda Murray.

C.    There are No Mitigating Circumstances to Excuse the Misconduct

There are no mitigating circumstances that can justify Mateo Cortez's misconduct. Every court to consider Mateo Cortez's claims to the Trust has rejected them. Moreover, on February 10, 2017, the Texas court sanctioned Mateo Cortez for the amount of Mrs. Barry's accrued attorneys' fees and costs in Texas, finding that his claims in Texas (and which he has sought to litigate here) were frivolous and were not warranted by existing law; by the extension, modification, or reversal of existing law; or by the establishment of new law. Despite one court already finding his litigation tactics frivolous as a matter of law, Mateo Cortez has continued to pursue those claims in this Court.

D.    The Conduct of Mateo Cortez and His Counsel has Permeated the Entirety of Litigation.

Mateo Cortez's misconduct was not an isolated occurrence, but has been a repeated pattern of misconduct not only before this Court but also in the litigation in Texas. Mateo Cortez has repeatedly attempted to distort the status of this case and the Texas case, the plain language of the Trust instrument, and the laws applicable to the Trust. He has abused the rules of procedure in West Virginia and in Texas in an effort to either convince a court to agree with his distorted and frivolous view of the Trust instrument, or to obstruct the lawful administration of the Trust. As a result, the Trustee, Mrs. Barry, and others have expended an incredible amount of time, effort, and money in defending the plain language of the Trust (and the clear intent of the settlors) against a never-ending succession of bogus filings, filings

20

submitted by a party that doesn't even have an interest in the Trust assets. Moreover, Mateo Cortez has continued to file frivolous pleadings in West Virginia and in Texas even after being specifically put on notice that his litigation conduct is being conducted in bad faith, and even after having been sanctioned in Texas.

## V.    **CONCLUSION**

From the outset of this case, Mateo Cortez and his attorneys have wrongfully and unnecessarily forced Mrs. Barry and others to expend over tens of thousands of dollars in legal fees, over the course of nearly two years, defending against obviously frivolous claims. The sole purpose of this improper conduct is clear: to obstruct the administration of justice, to deplete the assets of a Trust to which he has zero claim, and to retaliate against the true beneficiaries of the Trust for defending their interests.

Although Mrs. Barry, as well as others, are arguably entitled under *Sally Mike Properties* for **all** their attorney fees expended in the case, Mrs. Barry is choosing to focus her motion for sanctions on the conduct of Mateo Cortez and his counsel **after** this Court entered judgment against Mateo Cortez on September 15, 2016. The reason why Mrs. Barry is focusing on the conduct after September 15, 2016, is because prior to September 15, 2016, Mateo Cortez was responding to a Complaint filed in West Virginia that: (a) sought to determine who were the rightful beneficiaries under the Trust, and (b) specifically named Mateo Cortez as one of the individuals laying claim to the Trust. Point being, it is not surprising Mateo Cortez, under those circumstances, would respond to this Complaint and lob arguments (however tenuous) in response to the Trustee's Complaint. However, once this Court entered its well-reasoned decision on September 15, 2016, denying Mateo Cortez's claims, Mateo Cortez and his counsel

21

were unequivocally placed on notice that their claims had zero merit, and that any further improper behavior to frustrate the lawful administration of the Trust would not go unpunished.

From September 15, 2016, forward, Mateo Cortez and his counsel engaged in improper conduct intended solely to delay the proper administration of the Trust; to waste the time and resources of Connie Barry, the Trustee and others; and to deplete the Trust Assets. From September 15, 2016, forward, despite repeated warnings, Mateo Cortez and his counsel engaged in willful, vexatious, and malicious litigation, entitling Mrs. Barry to an award of attorney fees. *See* Syl. Pt. 3, *Sally-Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986). Accordingly, for the reasons set forth above, Defendant Connie Lou Keith Barry requests that the Court grant the following relief:

a. That the Court enter the attached proposed *Order Setting Show Cause Hearing on Issue of Sanctions*, setting this matter for a hearing to show cause as to why sanctions, in the form of paying, at a minimum, all of Mrs. Barry's reasonable attorneys' fees and costs incurred in this lawsuit from September 15, 2016, forward, should not issue against: (1) Mateo Cortez, in his personal capacity and his capacity as the personal representative of the Estate of Deborah Cortez; (2) attorneys James W. Marshall, III, H.F. Salsbery, Michael W. Taylor, William J. Brotherton (*pro hac vice*), and Shawn M. Brotherton (*pro hac vice*); or (3) both, jointly and severally;

b. That at the conclusion of said hearing, the Court enter an order granting Connie Lou Keith Barry's motion for sanctions and permit Mrs. Barry to submit additional papers in support of her reasonable attorneys' fees and costs; and

c. For such further relief as the Court deems proper.

22

_A. C. Boon_

Aaron C. Boone (9479)
Bowles Rice LLP
Fifth Floor, United Square
501 Avery Street, Post Office Box 49
Parkersburg, West Virginia 26102
(304) 420-5501
Facsimile (304) 420-5587

and

David A. DeJarnett (5190)
J. Tyler Mayhew (11469)
Bowles Rice LLP
105 West Burke Street
Martinsburg, West Virginia 25401
(304) 264-4232
Facsimile (304) 264-3822

Counsel for Defendant Connie Lou Keith
Barry

9109087.2

Cause No. **C-1-PB-12-00**~~0338~~

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| DEBORAH A. CORTEZ | § § | NO. __1__ |
| DECEASED | § § | TRAVIS COUNTY, TEXAS |

## SMALL ESTATE AFFIDAVIT

STATE OF TEXAS §

COUNTY OF TRAVIS §

MATEO CORTEZ ("Distributee") furnishes the following information to the Court:

1. "DEBORAH A. CORTEZ ("Decedent") died intestate on December 9, 2011 in Austin, Travis County, Texas, at the age of 54 years.

2. "Decedent's domicile was in TRAVIS County, Texas, where the principal part of Decedent's property at the time of her death was situated.

3. "There is no petition for the appointment of a personal representative pending, nor has one been granted, for the Decedent's Estate.

4. "Decedent died more than thirty (30) days prior to the filing of this Small Estate Affidavit.

5. "The total value of all of the known assets of the Decedent, as of the date of her death, not including the homestead nor exempt property, does not exceed $50,000.00, and those nonexempt assets exceed the known liabilities of the Estate, exclusive of liabilities secured by homestead and exempt property.

6. "The only real property of the Estate of the Decedent is a homestead which is community property and located at 2602 Douglas Street, Austin, Texas 78744. The Estate's interest in said homestead is valued at approximately $60,000.00, which is more particularly described as follows:

   Lot 7, Block B, Burleson Road Heights, a subdivision in Travis County, Texas, according to the map or plat thereof recorded in Volume 6, Page 52, Plate Records of Travis County, Texas.

7. "Decedent's marital history was as follows: Married; surviving spouse; Mateo Cortez

8. "Decedent did not have or adopt any children and did not take any children into decedent's home or raise any children, except: None.

9. "Decedent's mother was: Phyllis Dale Whited, whose date of death was 02/05/2011.

10. "Decedent's father was: William Dorsey Short, whose date of death was 01/03/2001.

11. "Decedent had the following siblings: None.

12. "Decedent did not apply for and receive Medicaid benefits on or after March 1, 2005

13. "The names, addresses, relevant family history facts showing relationship of each Distributee to the Decedent, and the share of the Estate to which each Distributee is entitled are as follows:

**EXHIBIT A**

"Name: MATEO CORTEZ

Address: 2602 Douglas Street, Austin Texas 78741

Relationship: husband

Status: Adult

Share of Estate: 100% of community property real and personal of the homestead located at 2602 Douglas St. Austin, Texas 78741 including the known assets of Decedent's Estate as follows:

Description: State Paying Agency: Texas Department of Insurance

Last payroll check and accrued vacation leave

Type: Community

Value: 100% of $683.39 wages and $89.43 accrued vacation leave totaling $772.82

Encumbrances: None

## LIABILITIES

"No claims are due and owing by the Estate of DEBORAH A. CORTEZ, Deceased.

"Distributee states that the facts contained in this Affidavit are true and prays that this Affidavit be filed in the Small Estate Records; that the same be approved by the Court; and the Clerk issue certified copies thereof in order to allow the Distributee to present the same to persons owing money to the Estate of DEBORAH A. CORTEZ, Deceased, or acting as registrar, fiduciary, or transfer agent of anyone having evidences of interest, indebtedness, property, or other right belonging to said Estate."

_Mateo Cortez_
MATEO CORTEZ, Distributee

SWORN TO and SUBSCRIBED BEFORE ME by MATEO CORTEZ, this __21__ day of __February__ 2012, to certify which witness my hand and seal of office, in the capacity therein stated.

(Seal)

_Susie A. Barrera_
Notary Public in and for
Travis County, State of Texas
My Commission Expires: _7/24/15_

SUSIE A. BARRERA
My Commission Expires
July 24, 2015

STATE OF TEXAS §
§
COUNTY OF TRAVIS §

"I have no interest in the Estate of DEBORAH A. CORTEZ, Deceased, and am not related to Decedent under the laws of descent and distribution of the State of Texas. The facts contained in this Affidavit are true."

_____
Sergio Madrigal, Affiant

SWORN TO and SUBSCRIBED BEFORE ME by Sergio Madrigal, this 16 day of February _____, 2012, to certify which witness my hand and seal of office, in the capacity therein stated.

(Seal)

CYNTHIA J. MENDEZ
MY COMMISSION EXPIRES
February 19, 2012

_____
Notary Public in and for
Travis County, State of Texas
My Commission Expires: 2/19/2012

STATE OF TEXAS §
§
COUNTY OF TRAVIS §

"I have no interest in the Estate of DEBORAH A. CORTEZ, Deceased, and am not related to Decedent under the laws of descent and distribution of the State of Texas. The facts contained in this Affidavit are true."

_____
John Alvarez, Affiant

SWORN TO and SUBSCRIBED BEFORE ME by John Alvarez, this 21 day of February, 2012, to certify which witness my hand and seal of office, in the capacity therein stated.

(Seal)

SUSIE A. BARRERA
My Commission Expires
July 24, 2015

_____
Notary Public in and for
Travis County, State of Texas
My Commission Expires: 7/24/15

_____
RUBEN I. BARRERA
Attorney for MATEO CORTEZ
State Bar No.: 01808450]
606 W. Oltorf
Austin, Texas 78704
Telephone: (512) 445-2054
Facsimile: (512) 445-4985


NO. C-1-PB-12000338

| | | |
|---|---|---|
| ESTATE OF | § | IN THE PROBATE COURT |
| DEBORAH A. CORTEZ, | § | NUMBER ONE |
| DECEASED | § | TRAVIS COUNTY, TEXAS |

FILED FOR RECORD
2012 APR -3 PM 2: 56
DANA DEBEAUVOIR
COUNTY CLERK
TRAVIS COUNTY TEXAS

UNOFFICIAL

## ORDER APPROVING SMALL ESTATE AFFIDAVIT

On this day, the Court considered the Affidavit of Mateo Cortez, Distributee of the above estate and the Court finds that the Affidavit complies with the terms and provisions of the Texas Probate Code, that this Court has jurisdiction and venue, that this estate qualifies under the provisions of the Probate Code as a Small Estate and that the Distributee, Mateo Cortez is entitled to all the personal property of the decedent, to the extent the assets exceed known liabilities, exclusive of homestead and exempt property. Nothing herein transfers title to real estate, except to the realty that is homestead, nor affects the disposition of property under a will or other testamentary instrument, nor does the Court make any determination as to the separate or community nature of any property.

It is ORDERED BY THE court that the Affidavit is hereby APPROVED AS SET OUT ABOVE. It shall forthwith be recorded in the records of the County Clerk, and the Clerk of this Court shall issue certified copies thereof to all persons entitled thereto.

SIGNED this _3ᵈ_ day of April, 2012.

GUY HERMAN, JUDGE PRESIDING

000158053

Filed: 10/3/2014 11:18:11 AM
Dana DeBeauvoir
Travis County Clerk
C-1-PB-14-001564
Debbie Mendez

CAUSE NO. C-1-PB-14-001564

| LINDA MURRAY, SUCCESSOR | § | IN THE PROBATE COURT |
| TRUSTEE AND ON BEHALF OF | § | |
| THE WILLIAM D. SHORT AND | § | |
| PHYLLIS D. SHORT REVOCABLE | § | |
| LIVING TRUST INCLUDING THE | § | |
| CREDIT SHELTER TRUST | § | |
| CREATED THEREIN | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | NUMBER #1 |
| | § | |
| MATEO CORTEZ, ROBERT F. | § | |
| SCHLAGER AND WELLS FARGO | § | |
| BANK NATIONAL ASSOCIATION, | § | |
| | § | |
| | § | |
| Defendants | § | TRAVIS COUNTY, TEXAS |

## MATEO CORTEZ'S ORIGINAL ANSWER

To the Honorable Judge of Said Court:

NOW COMES MATEO CORTEZ, and would file this *Original Answer* and would show as follows:

1. Cortez asserts the affirmative defense of the statute of limitations.

2. Cortez asserts the affirmative defense of laches.

3. Cortez asserts the defense that there was not a conspiracy to violate the fiduciary duties regarding the trust with any other person.

4. Cortez asserts the affirmative defense that any expenditures from the trust were consistent with the stated intentions of the settlors in the creation of the trust.

Cortez Original Answer – Page 1 of 3



I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAY 18 2016
Dana DeBeauvoir, County Clerk
By Deputy: A. BLAIR HICKS

EXHIBIT
B

5. Cortez asserts that he has not been put on notice as required in the *Rules of Civil Procedure* of the amount of damages that are sought against him in the *Original Petition*.

6. Cortez denies each and every, all and singular the allegations of *Plaintiff's Original Petition* and demands strict proof thereof.

Wherefore, Defendant MATEO CORTEZ prays that after notice and a hearing that the case be dismissed as to him personally and that all costs of court be taxed against the Plaintiff.

Respectfully submitted,

John Clark Long IV
Texas State Bar No. 12520500
Suite 300, 3400 Carlisle
Dallas, Texas 75204
214-276-6018 (phone)
214-276-6006 (fax)
john@johnlonglawyer.com
ATTORNEY FOR MATEO CORTEZ

Cortez Original Answer - Page 2 of 3

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office MAY 18 2016

Dana DeBeauvoir, County Clerk
By Deputy
A. BLAIR HICKS

## CERTIFICATE OF SERVICE

I certify that on October 3, 2014, a true and correct copy of this *Original Answer* was served via email and/or Facsimile on Counsel of Record or parties of record as follows:

**Facsimile 512.472.5444**
Mark Cohen
805 West 10th Street   Suite 100
Austin, Texas 78701
mark@cohenlegalservices.com

JOHN CLARK LONG IV

Cortez Original Answer - Page 3 of 3

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office MAY 1 8 2016
Dana DeBeauvoir, County Clerk
By Deputy:
A. BLAIR HICKS

Filed: 3/16/2015 9:42:30 AM
Dana DeBeauvoir
Travis County Clerk
C-1-PB-14-001564
Monica Limon

CAUSE NO. C-1-PB-14-001564

| | | |
|---|---|---|
| LINDA MURRAY, SUCCESSOR TRUSTEE AND ON BEHALF OF THE WILLIAM D. SHORT AND PHYLLIS D. SHORT REVOCABLE LIBING TRUST INCLUDING THE CREDIT SHELTER TRUST CREATED THEREIN Plaintiff | § § § § § § § § | IN THE PROBATE COURT |
| vs. | § § § | NUMBER #1 |
| MATEO CORTEZ, ROBERT F. SCHLAGER AND WELLS FARGO BANK NATIONAL ASSOCIATION, | § § § § § § § § | |
| Defendants | § § | TRAVIS COUNTY, TEXAS |

## MATEO CORTEZ'S FIRST AMENDED ANSWER

To the Honorable Judge of Said Court:

NOW COMES MATEO CORTEZ, and would file this First Amended Answer and would assert the following:

1. Mateo Cortez specially denies that he had any specific knowledge of the terms of the trusts made the subject of this suit during the life of Deborah Cortez.

2. Mateo Cortez specially denies that he had any knowledge that his wife, Deborah Cortez, and any other party, including Wells Fargo Bank, acted to violate any terms of the trusts made the subject of this suit.

Cortez First Amended Answer - Page 1 of 4

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAY 1 8 2016

Dana DeBeauvoir, County Clerk
By Deputy: A. BLAIR HICKS

**EXHIBIT C**

3. Mateo Cortez specially denies that he acted in concert with Deborah Cortez, Wells Fargo Bank, Robert Schlager or any other person in any capacity to defraud, conspire or commit theft of the assets of the trusts the subject of this lawsuit.

4. Mateo Cortez denies that he had the intent to misappropriate, convert or exercise theft over any funds of the trusts made the subject of this lawsuit.

5. Mateo Cortez asserts that any claim or cause of action that the Plaintiff alleges as to Deborah Cortez is properly in the probate proceeding of Deborah Cortez in Travis County, Texas.

6. Mateo Cortez would assert that the causes of action raised by Linda Murray are barred by limitations. The claims for conversion and conspiracy are barred by the two year statute of limitations.

7. Mateo Cortez would assert that the all claims or causes of action related to the Credit Shelter Trust are barred by waiver and/or ratification. Specifically, both Linda Murray and Deborah Cortez signed an application with Wells Fargo related to the trust account for credit shelter trust on or about May 23, 2003. *Thus, both co-trustees knew or could have known about any and all activity in this account from that date (May 23, 2003).* Any failure to act as a co-trustee as to the credit shelter trust and the disbursements of the credit shelter trust was an intentional act on the part of Linda Murray.

8. Mateo Cortez pleads as an offset and credit the terms of the Revocable Living Trust and its terms that would offset any monies distributed to Deborah Cortez or Mateo Cortez:

   a.   $50,000 was to be distributed to Deborah Cortez after the death of her mother (Phyllis Short died in February 2011) Article 7 (A) (2);

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAY 1 8 2016

Dana DeBeauvoir, County Clerk

By Deputy:

A. BLAIR HICKS

b. All quarterly income from the trust would be payable to Deborah Cortez Article 7 (B) 1; and

c. The intent of the settlors was to provide for Deborah during her lifetime Article 8 (B) 3.

9. Mateo Cortez denies each and every, all and singular the allegations of the Plaintiff's Petition and demands strict proof thereof by a preponderance of the evidence.

Respectfully submitted,

_____/s/_____

John Clark Long IV
Texas State Bar No. 12520500
Suite 300, 3400 Carlisle
Dallas, Texas 75204
214-276-6018 (phone)
214-276-6006 (fax)
john@johnlonglawyer.com
ATTORNEY FOR MATEO CORTEZ

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office MAY 1 8 2016

Dana DeBeauvoir, County Clerk
By Deputy: A. BLAIR HICKS

## CERTIFICATE OF SERVICE

I certify that on March 16, 2015 a true and correct copy of this *First Amended Answer* was served via email and/or Facsimile on Counsel of Record or parties of record as follows:

**Facsimile 512 472 5444**
Mark Cohen
805 West 10th Street  Suite 100
Austin, Texas 78701
mark@cohenlegalservices.com

**Facsimile 210 731 6401**
S. Mark Murray
Ford Murray
10001 Reunion Place  Suite 640
San Antonio Texas 78216

/s/
JOHN CLARK LONG IV

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on MAY 18 2016

Dana DeBeauvoir, County Clerk
By Deputy:

A. BLAIR HICKS

CAUSE NO. C-1-PB-14-001564

| | | |
|---|---|---|
| LINDA MURRAY, SUCCESSOR TRUSTEE AND ON BEHALF OF THE WILLIAM D. SHORT AND PHYLISS D. SHORT REVOCABLE LIVING TRUST INCLUDING THE CREDIT SHELTER TRUST CREATED THEREIN, PLAINTIFF, | § § § § § § § § § § | IN THE PROBATE COURT |
| V. | § § | |
| MATEO CORTEZ, ROBERT F. SCHLAGER AND WELLS FARGO BANK, NATIONAL ASSOCIATION, DEFENDANTS. | § § § § § § | |
| * * * * * | § § | NUMBER ONE |
| MATEO CORTEZ, AS REPRESENTATIVE OF THE ESTATE OF DEBORAH CORTEZ, INTERVENOR | § § § § § | |
| V. | § § | |
| LINDA MURRAY, SUCCESSOR TRUSTEE AND ON BEHALF OF THE WILLIAM D. SHORT AND PHYLLIS D. SHORT REVOCABLE LIVING TRUST INCLUDING THE CREDIT SHELTER TRUST CREATED THEREIN | § § § § § § § | TRAVIS COUNTY, TEXAS |

## RULE 11 AGREEMENT

NOW COMES, Linda L. Murray, in her capacity as Successor Trustee and on behalf of the William D. Short and Phyllis D. Short Revocable Trust including the Credit Shelter Trust created in the trust document, ("Murray"), and Mateo Cortez("Cortez"), in the capacity as representative of the estate of Deborah Cortez, deceased and enter into this Agreement pursuant to Rule 11, Texas Rules of civil Procedure ("Rule 11) as follows:

EXHIBIT
D



Case # C-1-PB-14-001564

000482711

There is pending an Application for Injunctive Relief filed by Cortez. In lieu of a contested hearing, the parties agree that none of the assets of the William D. Short and Phyllis D. Short Revocable Trust including the Credit Shelter Trust will be distributed to a beneficiary except as may be permitted by a final order by a court of competent jurisdiction.

This Agreement is enforceable pursuant to Rule 11 as provided therein.

Approved:

Mark Cohen/SBN: 04508400
Rose Cohen/SBN: 24031961
805 West 10th Street, Suite 100
Austin, Texas 78701
(512) 474-4424        Telephone
(512) 472-5444        Facsimile
mark@cohenlegalservices.com
rose@cohenlegalservices.com

Attorneys for Murray

William J. Brotherton
State Bar No. 00789989
william@brothertonlaw.com

Shawn M. Brotherton
State Bar No. 24064956
shawn@brothertonlaw.com

Steven J. Manderfeld
State Bar No. 24057565
steve@brothertonlaw.com

John C.Long, N
State Bar No. 12520500
john@brothertonlaw.com
**Attorneys for Cortez**

Sean W. Hester
State Bar No. 00784266
sean@brothertonlaw.com

Main Office:
2340 FM 407, Suite 200
Highland Village, TX 75077
(972) 317-8700     Telephone
(972) 317-0189     Facsimile

Mark Cohen

# BROTHERTON LAW FIRM

## ATTORNEYS AND COUNSELORS AT LAW

2340 FM 407, SUITE 200
HIGHLAND VILLAGE, TEXAS 75077
TELEPHONE: 972-317-8700
FACSIMILE: 972-317-0189

WILLIAM J. BROTHERTON
LICENSED IN TEXAS AND NORTH DAKOTA

william@brothertonlaw.com

June 15, 2017

<u>**Via E-Mail: rsfluharty@fntlawoffices.com**</u>

Robert S. Fluharty, Jr.
Fluharty & Townsend
417 Grand Park Drive, Suite 101
Parkersburg, WV 26105

RE: In the Circuit Court of Wirt County, West Virginia; Civil Action No. 15-C-28; *Linda Murray, in Her Capacity as Successor Trustee of the William D. Short and Phyllis D. Short Revocable Living Trust v. Mateo Cortez et al.*

Dear Mr. Fluharty:

I called your office yesterday to confer regarding whether or not you and your clients wished to consider scheduling our motion to intervene and motion to dismiss for the 27th and reschedule the motion for summary judgment after the court has ruled on our motions. That would appear to be the best process for judicial economy.

If this is something you wish to discuss, please do not hesitate to call. Otherwise, we will schedule our motions to be heard at the same time.

Very truly yours,

William J. Brotherton

WJB/dj

cc: All Parties (per attached Certificate of Service)
Client

EXHIBIT
E

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing correspondence has been served on this 15th day of June, 2017, by U.S. First Class Mail to the below interested parties:

Robert S. Fluharty, Jr.
417 Grand Park Drive
Suite 101
Parkersburg, WV 26105
Attorney For: Linda Murray

J. Nicholas Barth
Barth & Thompson
PO Box 129
Charleston, WV 25321-0129
Attorney For: Linda Murray

Aaron C. Boone
Bowles Rice McDavid Graff & Love LLP
PO Box 49
Parkersburg, WV 26102-0049
Attorney For: Connie Lee Keith Barry

David A. DeJarnett
Bowles Rice McDavid Graff & Love LLP
PO Drawer 1419
Martinsburg, WV 25402-1419
Attorney For: Connie Lee Keith Barry

Leslie L. Maze
PO Box 279
Elizabeth, WV 26143
Attorney For: Donald Leaman Whited; Michael Ray Whited; Sherry Lynn Whited Salsbury; Sheila Pettry, Tywanna Pettry, and Amanda Pettry, Heirs of Teresa Annette Whited Pettrey; Terry Lee Whited

Joseph T. Santer
Santer & Santer
PO Box 306
Parkersburg, WV 26102
Guardian ad Litem For: Unknown beneficiaries

Betty Jo Marks
1834 S. Pleasant Hill Road
Belleville, WV 26133

Charlene Rae Flesher-Johnston
PO Box 793
Elizabeth, WV 26143

Charles Bruce Roberts
487 Wilson Fork
Elizabeth, WV 26143

Charlotte Rae Flesher-Ash
8653 White Swan Dr., #104
Tampa, FL 33614

James Berl Marks
1093 S. Pleasant Hill Road
Belleville, WV 26133

Linda Lou Murray
197 Oakbrook Drive
Mineral Wells, WV 26150

Lisa Ann Rader Smith
96 Franklin Street
Elizabeth, WV 26143

Magen Elizabeth Whited
Elizabeth, WV 26143

Patricia Ann Marks Chapman
2670 Pettyville Road
Parkersburg, WV 26101
Randall Wayne Davis
1663 Brooksford Road
Kernersville, NC 27284

Sandra Kay Flesher Brown
99 Woodridge Drive
Mineral Wells, WV 26150

Thomas Wayne Marks
749 S. Long Run Road
Belleville, WV 26133

Virginia Ann Roberts Villers
28649 Allesandria Circle
Bonita Springs, FL 31435

_____
William J. Brotherton

REPORTER'S RECORD
VOLUME 2 OF 3 VOLUMES
TRIAL COURT CAUSE NO. C-1-PB-16-002348

MATEO CORTEZ, AS REPRESENTATIVE*    IN THE PROBATE COURT
OF THE ESTATE OF DEBORAH CORTEZ*

                                 *

VS.                               *    NO. 1 OF

                               *

SANDRA FLESHER BROWN, CHARLOTTE*
FLESHER ASH, CHARLENE FLESHER  *
JOHNSTON, CONNIE LOU KEITH     *
BARRY, RANDALL WAYNE DAVIS,    *
VIRGINIA VILLERS, CHARLES      *
ROBERTS, LISA A. SMITH,        *
PATRICIA CHAPMAN, BETTY J.     *
MARKS WEBB, JAMES BERL MARKS,  *
LINDA MURRAY, THOMAS WAYNE     *
MARKS AND DONALD LEMAN WHITED  *    TRAVIS COUNTY, TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MOTION TO MODIFY JUDGMENT TO INCLUDE SANCTIONS AWARD**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On the 30th day of January, 2017, the following Motion to Modify Judgment to Include Sanctions Award came on to be heard outside the presence of a jury, in the above-entitled and numbered cause before the Honorable Guy Herman, Judge Presiding, held in Austin, Travis County, Texas.

Proceedings reported by Computerized Stenotype Machine; Reporter's Record produced by Computer-Assisted Transcription.

MELISSA VOIGT
Official Court Reporter
C.S.R. Certification No. 4886
Probate Court No. 1, Travis County
1000 Guadalupe, Rm. 217
Austin, Texas 78701
(512) 854-9258

MELISSA VOIGT, CSR
(512) 854-9258

EXHIBIT
F

**A P P E A R A N C E S**

ATTORNEYS FOR THIRD PARTY DEFENDANTS:

> HOPPER MIKESKA, PLLC
> BY:  MR. BRIAN T. THOMPSON
> State Bar No. 00794947
> 400 West 15th Street, Suite 408
> Austin, Texas  78701
> Phone:  (512) 615-6195

ATTORNEY FOR WILLIAM J. BROTHERTON, SEAN W. HESTER, AND THE BROTHERTON LAW FIRM:

> THE RUBACK LAW FIRM
> BY:  MR. CHAD M. RUBACK
> State Bar No. 900001244
> 8117 Preston Road, Suite 300
> Dallas, Texas  75225
> Phone: (214) 522-4243

## VOLUME 1

### MOTION TO MODIFY JUDGMENT TO INCLUDE SANCTIONS AWARD

January 30, 2017

| | PAGE | VOL. |
|---|---|---|
| Presentation on Behalf of the Movant . . . . . | 18 | 2 |

| MOVANTS' WITNESSES | Direct | Cross | Voir Dire | Vol. |
|---|---|---|---|---|
| William Brotherton | | | | |
| By Mr. Thompson | 18 | | | 2 |
| By Mr. Ruback | | 48 | | 2 |
| Sean Hester | | | | |
| By Mr. Thompson | 52 | | | 2 |
| By Mr. Ruback | | 62 | | 2 |
| Linda Murray | | | | |
| By Mr. Boone | 64 | | | 2 |
| By Mr. Ruback | | 96 | | 2 |
| Brian Thompson | | | | |
| By Mr. Thompson | 101 | | | 2 |
| By Mr. Ruback | | 103 | | 2 |
| Aaron Boone | | | | |
| By Mr. Boone | 106 | | | 2 |
| By Mr. Ruback | | 109 | | 2 |

| | PAGE | VOL. |
|---|---|---|
| Recess. . . . . . . . . . . . . . . . . . . . . | 111 | 2 |
| Reporter's Certificate. . . . . . . . . . . . . | 112 | 2 |

## ALPHABETICAL INDEX OF WITNESSES

| | Direct | Cross | Voir Dire | Vol. |
|---|---|---|---|---|
| Aaron Boone | | | | |
| By Mr. Boone | 106 | | | 2 |
| By Mr. Ruback | | 109 | | 2 |
| William Brotherton | | | | |
| By Mr. Thompson | 18 | | | 2 |
| By Mr. Ruback | | 48 | | 2 |
| Sean Hester | | | | |
| By Mr. Thompson | 52 | | | 2 |
| By Mr. Ruback | | 62 | | 2 |
| Linda Murray | | | | |
| By Mr. Boone | 64 | | | 2 |
| By Mr. Ruback | | 96 | | 2 |
| Brian Thompson | | | | |
| By Mr. Thompson | 101 | | | 2 |
| By Mr. Ruback | | 103 | | 2 |

## EXHIBITS OFFERED BY THE MOVANT

| EXHIBIT | DESCRIPTION | OFFERED | ADMITTED | VOL. |
|---|---|---|---|---|
| 1 | Second Amendment And Restatement Of the William D. Short and Phyllis D. Short Revocable Living Trust | 23 | 24 | 2 |
| 2 | Order Granting Motion for Partial Summary Judgment | 44 | 44 | 2 |
| 3 | The Heirs at Law Of William Dorsey Short & Phyllis Dale (Whited) Short | 91 | 91 | 2 |
| 4 | Photograph | 100 | 100 | 2 |
| 5 | Hopper Mikeska Attorney Fees | 102 | 102 | 2 |
| 6 | Bowles Rice Attorneys Fees | 108 | 109 | 2 |
| 7 | Bowles Rice Attorneys Fees | 108 | 109 | 2 |
| 8 | Bowles Rice Attorneys Fees | 108 | 109 | 2 |

## P R O C E E D I N G S

### January 30, 2017

THE COURT: I'm going to call Cause No. C-1-PB-16-002348, styled Mateo Cortez as Representative of the Estate of Deborah Cortez, plaintiff versus Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lou Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks and Donald Leman Whited as defendants. And we're here on Third Party Defendants' Motion to Modify Judgment to Include Sanctions. And -- anything else before the Court today?

MR. THOMPSON: I don't believe so, Your Honor. Brian Thompson on behalf of the movants. The one thing that I would point out is that we filed a supplement to that motion.

THE COURT: I did see that.

MR. THOMPSON: Okay.

THE COURT: I'm aware of that. So this is your motion?

MR. THOMPSON: That is, Your Honor.

THE COURT: Go ahead and take the lead on it, sir.

MR. THOMPSON: Okay. Again, Your Honor, Brian Thompson on behalf of the third party defendants who are the second group of folks which you just read into the record. As

you've said we're here today on a motion for sanctions. This is not a motion for sanctions against any of the parties involved, this is a motion for sanctions against two of the attorneys representing Mateo Cortez.

I think the Court's pretty familiar with the background of this case so I won't go into it at length, but as you know this is a trust dispute regarding the proper interpretation of a trust document. The matter is currently pending in two different jurisdictions. There is this case and as well there is a case up in West Virginia.

I'm joined here today with my co-counsel Aaron Boone who is West Virginia counsel for some similarly situated individuals up in West Virginia. He will be participating in the hearing, he's been admitted pro hac vice by the Court already.

Your Honor, there were two main claims by Mateo Cortez in this matter that effect my clients. There is the one argument that Deborah Cortez was her parents' sole heir at law and therefore under the terms of the trust she inherited everything upon the death of her mother Phyllis Short. That argument was what I think took up most of the Court's attention and of course I think the lawyers' attention as well in the motion for reconsideration which I think the Court has in front of it by submission.

After reviewing that allegation, after reviewing

some of the law on that we still feel like we are definitely right and entitled to summary judgment on that claim. But I will tell you, I do think that that is a colorable claim and so we are not going to be asking for sanctions today with regard to that claim. I am narrowing the scope of our sanctions motion today.

Where I will concentrate today on is what I call the postponement provision argument. And this is the argument that under a particular section of the trust that I'm going to go through at length today, that -- this provision applied to beneficiaries who were under the age of 35 at the time they became entitled to distribution under the trust. And this Court's familiar with those type of provisions. It's usually put in trusts because there is an assumption I guess on some settlor's part that people under the age of 21, 35, 18, whatever it is, should not get their distribution outright, they may be too immature to be able to handle that kind of money. And that of course was the intent behind this provision.

We believe that there is no colorable argument under Texas or Florida law, which are basically the same law here, on this issue. It is very clear and I think all the parties agree that Ms. Cortez was well over the age of 35 not only when she became entitled to distribution under the trust, but even when this trust was actually executed.

Your Honor, we're proceeding today under Texas Rule of Civil Procedure 13 as well as Civil Practice and Remedies Code, Chapter 10. As you know the triggering event for a sanction under both of those sections is the attorney's signing of a pleading that contains a sanctionable claim. And under CPRC Chapter 10 each and every claim must meet the burden under that rule, and that burden is that each claim is warranted by existing law or by a non-frivolous argument for the extension and modification or reversal of existing law.

I'm going to again narrow the scope of this a little bit and concentrate my efforts on Texas Civil Practice and Remedies Code, Chapter 10. I think most courts who have interpreted Rule 13 and Chapter 10 say that they are certainly compatible, but I think you have a better chance in this type of situation under Chapter 10 so that's where I'm going to concentrate my efforts. And we assert that the attorneys William Brotherton and Sean Hester should be sanctioned for violation of Chapter 10.

We're going to offer their testimony today, Your Honor. We're also going to offer the testimony of Linda Murray who is one of the folks that -- whose name you read into the record earlier. She's both the trustee of the trust at issue as well as a defendant in this part of the case in her individual capacity as a beneficiary. We're offering her testimony because unlike a lot of cases in civil litigation,

Judge, this case involves real people, and she's kind of the face of the real people that this case has effected. And the Texas Supreme Court has said that those type of stories are relevant when you're trying to decide what sanctions to grant.

In the Low v. Henry case, and that's 221 S.W.3d, 609, it's a 2007 case out of the Supreme Court of Texas, the Court cited the American Bar Association's report on standards and guidelines for practice under Rule 11 of the Federal Rules of Civil Procedure. And that is similar to our Rule 13. And in Footnote 5 of the Court's opinion the Court mentioned in 5F that one of the things the Court can rely on in deciding whether to issue sanctions and how much sanctions to issue is, quote, "The nature and extent of prejudice apart from out of pocket expenses offered by the offended person as a result of the misconduct."

And so, Your Honor, we're going to offer Ms. Murray's testimony today under the auspices of that footnote from the Texas Supreme Court because she's going to tell the Court exactly how this conduct from Mateo Cortez' attorneys has effected her personally.

And then finally we're going to wrap up with my testimony and Mr. Boone's testimony on our attorneys fees. Mr. Boone of course was -- has segregated his fees from this Texas part of the case from -- from what he did in West Virginia and we're only seeking the fees he's incurred

here in Texas.

Before we get to the evidence, Your Honor, I want to mention a procedural issue that was raised in the response to our motion for sanctions which I think was filed late last week. The respondents allege that my clients have somehow waived their right to seek sanctions because they didn't seek sanctions before the judgment was entered in this matter. They cite several cases in Footnote 10 of their response.

What they do not tell the Court is that every single one of those cases cited in Footnote 10 is a discovery sanctions case. This is not a discovery sanctions case. This is a case involving the substance of their pleadings under Chapter 10, under Rule 13. And as this Court well knows the Court is free to modify its judgment post judgment to add an award of sanctions.

We cited the Texas Supreme Court case on that in our motion and that's the Lane Bank Equipment Company versus Smith Southern Equipment, Inc. case. That's 10, S.W. 3d, 308. And that case --

THE COURT: And you brought your cases with you?

MR. THOMPSON: I did. I have one copy of this one, Your Honor. Would you like me to approach with that?

THE COURT: I would.

MR. THOMPSON: Okay.

THE COURT: Do you need to use it as you're making

your presentation?

MR. THOMPSON: I don't. I have another copy of it. May I approach?

THE COURT: Yes, sir.

MR. THOMPSON: Your Honor, we cited this case in a footnote in our motion stating that the Court -- that once a -- that once a post -- a post judgment motion for sanctions is filed that extends the Court's plenary power past 30 days to decide that motion to essentially -- like a motion for new trial procedurally. And this is a 2007 case from the Supreme Court that says that. The Court did not make any issue about waiver or anything like that. And so, Your Honor, this absolutely stands for the -- the purpose of what we're talking about here which is a post judgment motion to modify the judgment to include sanctions.

It also makes commonsense that you can bring such a motion, maybe not for discovery sanctions because discovery sanctions should be resolved pretrial. For example, if you don't show up to your deposition the Court should order the person to show up to their deposition. That's how you remedy a discovery sanction. But this is based on the entirety of the case, the entirety of Mr. Cortez' case and the underlying substantive claims. And the only way you're going to know the full extent of the damages caused by that type of sanction is after trial. Otherwise you're never going to know the damage

that it caused.

And again -- so that's what the Lane Bank case says. The Lane Bank case says that, you know, post judgment motion for sanctions is in the -- is in the nature of a motion to modify and that extends the Court's plenary power. If waiver was an issue in that case it would have made much sense for the Court to hold that.

In addition, Your Honor, this Court regularly issues sanctions post judgment. This Court, I believe the one that still stands is this Court's biggest sanctions award ever is the Pool versus Diana case that I was involved in which was upheld on appeal by the Third Court of Appeals. Petition was denied at the Texas Supreme Court. And in that case we moved for summary judgment and obtained it against Joe Pool and his clients. And -- and then the Court a few weeks later issued a post judgment motion for sanctions award. Nothing about waiver in that case either from the appellate decision. And that was a much larger award, I believe about $107,000. And in fact, if you remember the defendants in that case were actually sanctioned on their appeal as well.

So I don't see anything in the -- in the appellate case law that says that you waive on substantive sanctions claims if you don't bring them before trial. And again, it just wouldn't make good sense for that to be the rule because you don't know what the damages are going to be until trial is

completed.

And so, Your Honor, that being said, that's kind of the roadmap of where we're going. That's the procedural issue. I don't know if you want them to respond to the procedural issue now or if you want to just --

THE COURT: I'll let them respond now.

MR. THOMPSON: Okay.

THE COURT: What is your response, Counselor?

MR. RUBACK: Good afternoon, Your Honor. My name is Chad Ruback, I represent William Brotherton, Sean Hester and the Brotherton Law Firm. I'm not representing Mr. Cortez. As this Court correctly noted and counsel has confirmed, Mr. Cortez doesn't have a fight in the -- doesn't have a dog in the fight today, no one is seeking anything from -- he's not seeking anything from anybody.

My response procedurally is first off, the Supreme Court's language, the Supreme Court's pronouncements in a case that was about discovery indeed, didn't limit the Supreme Court's holding to discovery. The Supreme Court stated, and I quote, "Waiver bars a trial court from awarding post trial sanctions based on pretrial conduct of which a party was aware before trial," end quote.

Yes, admittedly it was a discovery case. If the Supreme Court wanted to limit its holding to discovery matters, to discovery disputes it certainly could have done

so. There was no limiting language in the Supreme Court's holding.

THE COURT: Do you have a copy of that case for the Court?

MR. RUBACK: I do not, Your Honor. I believe that that's a case that both sides had cited.

THE COURT: Right. Okay.

MR. RUBACK: I do not have a copy of it.

THE COURT: We'll pull it up.

MR. RUBACK: Furthermore, Your Honor, as counsel has argued, their motion for sanctions is regarding arguments made from the beginning of the case, the totality of the arguments made. My clients didn't modify their arguments substantively. They might have refined them somewhat, but my clients have made the same argument from day one in this case.

Admittedly this Court did not agree with my clients' arguments, admittedly this Court granted summary judgment as -- as to the arguments my clients made apparently finding those arguments ultimately not persuasive. But just because this Court has held that my clients' arguments weren't persuasive, has held that my clients' arguments are wrong does not indicate that my client did not have the right to make those arguments. Specifically based on counsel's argument that this is not just one argument we're talking about today, this was, you know, the whole continuum of arguments made

throughout the case.

If counsel believed that my client was making bad faith arguments from the initial filing in the case, from each hearing that this Court has heard in the case, why didn't counsel bring that to my client's attention? Why didn't counsel bring that to the Court's attention? Laches would bar the arguments they're making today.

What they are saying today is my clients made arguments that were sanctionable long, long ago, but, well, we're going to wait months and months and months to allow my clients to continue to make these arguments that are allegedly sanctionable until after there is a final judgment in the case, after the case is over.

So even if this Court does not believe that it is barred by the Supreme Court's Myer case, which waiver bars a trial court from awarding post trial sanctions based on pretrial conduct of which a party was aware before trial, even if the Court does not find that case persuasive laches would apply here.

There were no brand new arguments made in the case. My clients have made the same arguments before this Court every time they've been before this Court, every pleading they filed in this case. Admittedly refined a little bit, but these are the same arguments.

If this Court, who by anyone's estimation is

absolutely, positively an expert on trust law, on probate law, if this Court believed that my client was making sanctionable arguments as to what the law is from the start, presumably this Court would have notified my clients, well, guys, you're getting pretty close to sanctionable conduct here. This Court did not do so.

To the contrary in fact, even if this Court has ruled against my clients' arguments on their substance, this Court has on the record multiple times thanked my clients for making good arguments. This Court didn't warn my clients they were on the verge of sanctionable conduct nor did opposing counsel ever warn my clients, ever let the Court know that opposing counsel believed my clients were on the verge of sanctionable conduct.

So if my clients have made the same arguments in multiple filings, in multiple hearings before this Court and opposing counsel appears to have waited, let my clients make the same argument again and again and again, laid behind the log until after there is a final judgment in the case laches would bar sanctions in this situation, Your Honor.

THE COURT: Okay. You want to get back now to your --

MR. THOMPSON: Well, I want to point out first of all that laches has never been pled. So this is the first time I've ever heard that argument about that.

THE COURT: So noted.

MR. THOMPSON: And I have a copy of the Myer case if you'd like to see it.

THE COURT: Okay. Good.

MR. THOMPSON: And I've highlighted where the Court says, you know, we -- in Remmington Arms which is another case I have I can give you, Judge -- in Remmington Arms we explain the circumstances in which by failing to obtain a pretrial ruling on a discovery dispute a party waives his or her claim for discovery abuse sanctions. This whole case is about discovery. Remmington Arms case that is cited there is all about discovery. Every single one of the cases cited in their footnote, Judge, are about discovery. And that's because they can't find a case regarding substantive claims, that type of sanctions that supports their waiver argument. It would make absolutely no sense if that was the law.

THE COURT: You may present you all's cases. You may continue on with your argument.

MR. THOMPSON: Your Honor, we'll call William Brotherton.

THE COURT: How many witnesses are we going to have here today?

MR. THOMPSON: I believe five.

THE COURT: Five? All five witnesses please stand

and raise your right hands.

(Witnesses sworn by the Court.)

THE COURT: You may proceed with your first witness.

Mr. Brotherton, have a seat up here as close to the microphone as possible.

**PRESENTATION ON BEHALF OF THE MOVANT**

**WILLIAM BROTHERTON,**

was called as a witness by the Movant having been first duly sworn, testified as follows:

**DIRECT EXAMINATION**

BY MR. THOMPSON:

Q. Mr. Brotherton, could you state your name, please?

A. William James Brotherton.

Q. And what do you do for a living, Mr. Brotherton?

A. I'm an attorney.

Q. How long have you been practicing law?

A. Since 1994.

Q. And am I right that you are currently the lead attorney for Mateo Cortez in this matter?

A. That's correct.

Q. You weren't always though, correct?

A.    I think John Long was starting off, yes.

Q.    How many times have you represented clients in disputes involving the interpretation of trust language?

A.    Probably seven, eight times.

Q.    Okay.  Have you ever been sanctioned?

A.    No.

Q.    Okay.  In the course of your practice have you become familiar with Texas case law and rules regarding the sanctioning of attorneys?

A.    I haven't had much practice with it.  I rarely seek sanctions against any other attorneys.

Q.    Are you familiar with Rule 13 of the Texas Rules of Civil Procedure?

A.    I am.

Q.    Are you familiar with Chapter 10 of the Civil Practices and Remedies Code?

A.    I am.

Q.    And do you agree with me that under both of those authorities the triggering event for sanctioning lawyers is the signing of a pleading that is sanctionable?

A.    I believe that's correct.

Q.    Do you understand that under Civil Practices and Remedies Code, Chapter 10 that when you sign a pleading you're certifying to the Court that each claim in that pleading was -- and I quote -- "Warranted by existing law or by a

non-frivolous argument for the extension, modification or reversal of existing law or the establishment of new law," end quote?

A. If you've read that correctly, I have no reason to deny that.

Q. Okay. Would you like to see it?

A. No, that's fine.

Q. Okay. So you don't have any reason to doubt that I read it accurately?

A. If you're essentially reading it out as -- and representing to the Court that that's what it is then I have no reason to doubt that.

Q. Okay. And in looking at the pleadings in this matter I didn't see that your client had made any argument for the extension, modification or reversal of existing law or the establishment of new law. Is that fair?

A. You know, I -- I couldn't say yes or no.

Q. Okay. It seems to me that most of the claims that you brought -- or all of the claims that you brought on behalf of your client were based on Texas law as it exists now. You weren't saying that law should change, were you?

A. Again -- and I've got to say over the last six months I've spent most of my time in North Dakota so I haven't been involved in this case in a little while. So you may want to talk with Mr. Hester about some of those technical issues.

Q. Okay. Well, you understand that you've signed every pleading except for one with regard to the claims made against my clients?

A. Correct.

Q. Whether you were in North Dakota or not?

A. Correct.

Q. And Mr. Hester signed one of them; is that right?

A. Correct.

Q. Okay. And so I'm asking you, can you think of an example where you were asking this Court to change the law or to modify the law or any of those things in any of your pleadings?

A. I -- again, I wouldn't be able to say yes or no. I don't believe so but I can't say definitively.

Q. Okay. Now, I'm going to hand you --

MR. THOMPSON: May I approach the witness, Your Honor?

THE COURT: You may.

Q. (By Mr. Thompson) I'm going to hand you a series of documents. We don't have to mark them as an exhibit because they're pleadings. But starting with the first document, you see the title of that is Original Petition In Intervention?

A. Yes.

Q. Okay. Are you familiar with this document?

A.    I am.

Q.    And if you turn to the next to last page which is Page 5, is that your signature?

A.    Yes, it is.

Q.    Okay.  And if you look at Page 3 of this original petition, petition in intervention, just below the middle of the page there is a No. 2.  And you state -- and this is of course under a heading that says "declaratory judgment." You're seeking a declaration that pursuant to the trust Article 8, Section D2, upon the death of Phyllis Short, Deborah Cortez as beneficiary under the trust was entitled to the balance of her trust share including both principal and any accrued and undistributed income because she was over the age of 35 years at the time.  Do you see that statement?

A.    Yes.

Q.    Can you explain to the Court in your words what you were alleging in that statement on behalf of your client?

A.    Well, the trust essentially stated -- and I can give it to you in -- in the context of what I understand it to say, and as you've stated, there is a question of the interpretation as I think you testified, but the -- what we believed was a colorable argument was that Ms. Cortez was entitled to the contents of the trust once she reached 35 years of age once her parents died.

Q.    Okay.  And just to be sure, there is no question

that Ms. Cortez was over the age of 35 at the time Phyllis Short died, correct?

A. I believe that's correct, yes.

Q. And it was Phyllis Short's death that then gave Deborah Cortez the ability to seek distributions under the trust? I know we have a difference of opinion about what those distributions were, but that was the triggering event, correct?

A. That's my understanding, yes.

MR. THOMPSON: Okay. May I approach, Your Honor?

THE COURT: You may, sir.

Q. (By Mr. Thompson) Mr. Brotherton, I'm going to give you as what I've marked as Exhibit No. 1. There you go. Are you familiar with the document I marked Exhibit 1?

A. I have seen it, yes.

Q. And what is that document?

A. It's one of the versions of the revokable living trust, the Short -- William Short and Phyllis Short.

Q. Okay. And I think that -- is it fair to say that this was the most recent version of that document?

A. I believe that's correct.

MR. THOMPSON: Your Honor, we -- we offer Exhibit 1.

(Movant's Exhibit No. 1 was offered into evidence.)

THE COURT: Any objection?

MR. RUBACK: No objection, Your Honor.

THE COURT: No. 1 will be admitted.

(Movant's Exhibit No. 1

was admitted into evidence.)

Q. (By Mr. Thompson) and, Mr. Brotherton, I may refer to this shorthand as "the trust" throughout today. Is that -- you'll understand --

A. That's fine.

Q. Okay. If you turn to Page 5 of Exhibit 1, if you look at Section D which I believe is Article 8, Section D, postponement of possession. Do you see that?

A. I do.

Q. Okay. Is that the provision and everything under it that you think supports the claim that we've been discussing?

A. I believe that's correct.

Q. And if I recall that, I think you guys have called it in the past the postponement provision claim? Is that fair? You'll understand what I'm talking about when I say that?

A. I think so, yes.

Q. Okay. So do you see that this statement, postponement of possession, it says, "If any beneficiary is under the age of 35 years at the time he or she becomes

entitled to distribution, his or her share shall be maintained in a continuing trust which shall be administered as follows." Do you see that statement?

A.    I do.

Q.    And again, there is no question in this case that Deborah Cortez was not a beneficiary under the age of 35 years at the time she became entitled to distribution from the trust, correct?

A.    Rephrase your question?

Q.    You see that this statement here says -- the qualifying language is that if any beneficiary is under the age of 35 years at the time he or she becomes entitled to possession, then X, Y and Z.  Do you see that?

A.    Entitled to distribution?

Q.    Yes.

A.    "His or her share shall be maintained in a continuous -- in a continuing trust which shall be administered as follows."  Is that what you're referring to?

Q.    Do you see that statement?

A.    I do.

Q.    Okay.  And there is no dispute in this matter that Deborah Cortez was over the age of 35 at the time she became entitled to distribution, correct?

A.    I don't know if I can agree with that statement. I'm not sure what you're asking me to agree with.

Q.     Okay.  Well, when was -- what was the triggering -- I thought we'd been through this, but what was the triggering event that entitled Deborah Cortez to a distribution under this trust?  Was it not her mother's death?

A.     Correct.

Q.     Okay.  And is there any dispute that at the time Phyllis Short died, Deborah Cortez' mother died, that Deborah was over the age of 35?

A.     As I understand it, yes.

Q.     Okay.  In fact, she was over the age of 35 when this document was executed, correct?

A.     Correct.  Well, I believe so.

Q.     Well, sir, I can actually point out in your pleadings where you stated this?

A.     Okay.

Q.     So do you disagree with me or no?

A.     No.

Q.     Okay.  So if this provision, the qualifying language of this provision is that you have to be under the age of 35 in order for all of these things to apply to you, how could you possibly think that this section applies to Deborah Cortez and entitles her to the entirety of the trust?

A.     Well, there is -- there is a lot of language in here.  I think we've used several arguments in this.  We've consulted with a trust expert on this.  And so based on -- on

the language in this, it's our contention that Deborah Cortez was entitled to the trust proceeds.

Q. What trust expert did you consult with on this?

A. Dick Kelsey.

Q. Okay. And Mr. Kelsey told you that your interpretation of this trust, this provision of this trust was correct?

A. That is correct.

Q. Okay. So you said there is some particular language in here that supports your argument. Tell me what that language is.

A. Well, there is -- there is certainly the provisions in regards to if any assets of the trust remained undistributed upon Deborah's death, or if she fails to survive us, the remainder of the trust estate shall be distributed as follows. And clearly Deborah Cortez was the beneficiary of the Shorts and was an heir at law.

Q. Okay. Well, you understand that that -- that's kind of one of the claims that you made, but in the alternative you also made this claim about this 35 year-old provision, correct?

A. Well, I think I -- like I say, I have been working out of state quite a bit and I think it would be helpful if I had a copy of the -- of the claims that we've made because you're asking me to recollect a very complex document. So I

don't want to sit here and misstate --

Q.  Okay.

A.  -- what was in our pleadings.

Q.  Okay.  Well, sir, you have all of your pleadings in front of you.  What I've given you is -- although we've just been over the original petition in intervention and -- and in that section we went through this No. 2, which says "Pursuant to the trust, Article 8, Section D2, upon Phyllis Short's death Deborah Cortez inherited the balance because she was over the age of 35."  I thought we agreed that that's basically the claim that we're talking about?

A.  Okay.

Q.  Okay.  So let's set aside the heir at law issue.  As I told the Judge earlier I actually have been convinced now that that is a colorable claim.  I'm not asking for sanctions against you today because of that.  But I do want to concentrate on this Article 8, Section D2 provision.  And I thought you had said that in addition to the language that I have read in -- into the record, that there is additional language in here that you believe supports your position and I would like to know what that language is.

A.  Well, I need a few minutes to go through and look through -- look through the petition.

Q.  Okay.  And while you -- while you do that -- before you do that, and I'll give you all the time in the

world, will you agree with me that this claim -- maybe in different words, but the gist of this claim has been in every petition that you've filed since that original petition?

A.    I couldn't say yes or no.

Q.    Okay.  Well, while you're looking through the trust document, look through those amended petitions that I have for you up there and then you can answer that question as well.

MR. THOMPSON:  Your Honor?

THE COURT:  Yes.

MR. THOMPSON:  May I be excused just to get some water very quickly while he's --

THE COURT:  You may be.  We'll take a five minute recess.

MR. THOMPSON:  Thank you, Judge.

(Brief recess.)

THE COURT:  Are you ready now?

MR. RUBACK:  Yes.

THE COURT:  Our witness will please come back up.

MR. THOMPSON:  Judge, you had asked for case law. Can I approach with one more case?

THE COURT:  Yes.  And if you'll give me your packet there that he was using.  Is there another copy of that?

MR. THOMPSON:  Absolutely.  Give me one second.

Well, I say that. Are you --

THE COURT: He took up his binder with the pleadings.

MR. THOMPSON: Would you like his copy now?

THE COURT: Sure.

MR. THOMPSON: I think we'll be talking about the same thing.

THE COURT: Right.

MR. THOMPSON: Just so you know, what that is is the original petition and then there were four amended. So five in all.

THE COURT: Right. I'm aware.

MR. THOMPSON: Okay. May I proceed, Your Honor?

THE COURT: Yes, sir.

Q. (By Mr. Thompson) Mr. Brotherton, before the break I had given you a stack of pleadings that are the Original Petition in Intervention and then the first, second, third and fourth amended version of that document. Did you have a chance to review those?

A. Primarily the Motion to Reconsider.

Q. Okay. My question before the break was whether you would agree with me that this postponement provision claim had been made in those five pleadings that I just named. Will you agree with me to that now? Or do we need to go through each and every one of these?

A.   Probably need to go through each and every one. Because here is the thing -- just to explain this, you know, I've got six attorneys counting myself plus various other attorneys that we use if -- if we need to -- to get special legal counsel.  And so in this case -- this is obviously a pretty complex case, and I'm not going to sit here and try and be able to go through every page, line-by-line of every copy of the pleadings and be able to talk just absolutely clear on everything, especially in light of the fact that I'd been involved in some other substantial cases out of state.  So certainly I'll try to answer your question, but as far as going through every pleading and talking about what specifically in each pleading, we'll probably need to go through each one.

Q.   Okay.  Well, will you agree with me that you signed all five of those pleadings as the attorney of record in this case for Mr. Cortez?

A.   Well, again, I'd say that as the lead counsel I have a number of people working for me and so yes --

MR. THOMPSON:  Objection, Your Honor, nonresponsive.

THE COURT:  Sustain the objection.

Q.   (By Mr. Thompson)  Sir, did you sign --

A.   I said yes.

Q.   -- attorney of record -- I'm sorry?

A.     I said yes.

Q.     I didn't hear you say yes to that.

A.     I did.

Q.     So I think we've established that it's in the original petition.  Can we agree to that?

A.     I believe so.

Q.     The Original Petition in Intervention?

A.     I believe so.

Q.     Do you have the First Amended Petition in Intervention in front of you?

A.     You know what, this -- this only starts on the fourth.

MR. THOMPSON:  Your Honor, I can -- if you don't mind me standing beside him I can --

THE COURT:  You can do that.

Q.     (By Mr. Thompson)  Okay.  So I'm going to approach with the First Amended Petition in Intervention.  The first question I'm going to ask you is -- there is the title, First Amended Petition in Intervention and Third Party Petition filed on December 30th, 2015.  My first question for you, sir, is -- Melissa, can you hear me okay?  On Page 8 is that your signature?

A.     It is.

Q.     And there you're signing on behalf of several lawyers but you're signing as the lawyer signing this

petition; is that right?

A.     Right.

Q.     Okay.  If you look on Page 6, Section 2, there is a statement I believe that is verbatim, identical to the statement in the Original Petition in Intervention.  Can you read that No. 2 into the record, please, sir?

A.     "That pursuant to the trust, Article 3, Section D2, upon the death of Phyllis D. Short, Deborah Cortez as a beneficiary under the trust was entitled to the balance of her trust share including both principal and any accrued, undistributed income because she was over the age of 35 years at the time."

Q.     Okay.  So we agree --

THE COURT:  Now -- now, let me stop a second.  Would you look again?  It's not Article 3, but is it not Article 8?

THE WITNESS:  I -- I can't quite read it.  Let me check.

THE COURT:  You don't have your glasses on?

THE WITNESS:  Well, it's blocked.  All right.  Now I can see it.  Article 8.  Roman numeral eight.  Correct.  Thank you, Judge.

Q.     (By Mr. Thompson)  So now would you agree with me that we call the postponement provision claim is indeed in the First Amended Petition?

A. Correct.

Q. Okay. So now I'm going to approach with the Second Amended Petition. Same drill. On Page 12 is that again your signature signing as Mr. Cortez' attorney of record?

A. Correct. Correct.

Q. And if you will look at Page 8, this No. 2 paragraph here, I believe again is the same statement that you just read into the record. Do you agree with me?

A. That is correct.

Q. Okay. So again, this postponement provision claim appears in the Second Amended Petition in Intervention?

A. Correct.

Q. I'm going to approach with the Third Amended Petition. And again, is that your signature on Page 26 --

A. It is.

Q. -- as Mr. Cortez' attorney?

A. Right.

Q. Okay. This one may take me a second. It's a little bigger. Again, I think in the Paragraph 2 on Page 18 -- I'm sorry. My apology. If you read that -- you don't have to read it into the record, but will you agree with me that that's the same claim?

A. It is the same.

Q. Okay. So again, just to make sure that that

postponement provision claim also appears in the Third Amended Petition?

A. Correct.

Q. Okay. When did this North Dakota case start being your main focus at work that took you away from this case?

A. Late April.

Q. Late April of 2016?

A. '16.

Q. Okay. I'm going to approach with the Fourth Amended Petition in Intervention, Page 25. Again, you're signing on behalf of your client Mateo Cortez, correct?

A. Correct.

Q. And again, if you look at this Paragraph 2, is that that same postponement --

THE COURT: What page?

MR. THOMPSON: I'm sorry. Page 17, Your Honor.

Q. (By Mr. Thompson) Is that that same postponement --

A. Appears to be the same.

Q. And this doesn't have a file stamp on it, but I want to point out the certificate of service on this document. November 2nd, 2016. Do you see that?

A. Correct.

Q. And this is your signature here?

A. Yes.

Q.    And although it doesn't have a file stamp, can we assume that this was filed on or about November 2nd, 2016?

A.    I believe that's fair.

Q.    Is it your practice to file things at the same time or around the same time as the certificate of service reflects?

A.    Correct.

Q.    Okay.  And so November of 2016 was well after you had become involved in this North Dakota case, correct?

A.    Correct.

Q.    And you're still signing pleadings as the attorney of record on behalf of your client Mateo Cortez?

A.    Well, I'm not up there full-time, but it's certainly -- I've -- like any attorney you're involved in other cases.  And again, I've got a staff that did the research and was preparing the documents and I reviewed them. But certainly -- the reason I mentioned North Dakota is because I haven't been able to live and breathe this case probably as much as I would like.

Q.    Okay.  I should have done this earlier but I'm just going to approach with --

MR. THOMPSON:  If you don't mind, Your Honor, may I approach?

THE COURT:  You may.

MR. THOMPSON:  I'll give you a copy as well.

MELISSA VOIGT, CSR
(512) 854-9258

Q.    (By Mr. Thompson)    This is a copy of Chapter 10 of the Civil Practices and Remedies Code which as I mentioned, this is the authority we're relying on to seek sanctions.  In Section 10.001 it states that the signing of a pleading constitutes a certificate by the signatory, that due to the signatory's best knowledge, information and belief formed after reasonable inquiry, and then No. 2, each claim in the pleading is warranted by existing law, dot, dot, dot.  I think I've been through this provision at nauseam.  Do you see that?

A.    I do.

Q.    Okay.  In signing these pleadings that we've just been through, did you understand that you were certifying to this Court that each claim in that pleading was warranted by existing law or by non-frivolous argument to the extension, modification or reversal of existing law?

A.    Absolutely.  And they were colorable claims and I still believe that.

Q.    Okay.  Regardless of your involvement in the North Dakota case you still believe that?

A.    Correct.

Q.    Okay.  What reasonable inquiry did you do to inform yourself of whether this postponement provision claim met the standards of the Civil Practices and Remedies Code, Chapter 10?

A.    We did quite a bit of research, LexisNexis, talked

with attorneys in the firm, we conferenced on it, and then we went and met with one of the premiere trust attorneys in the state.

Q.   And, I'm sorry, you said his name but can you say it one more time?

A.   Dick Kelsey.

Q.   I'm sorry?

A.   Dick Kelsey.

Q.   Dick Kelsey.

Q.   Is it K-e-l-s-e-y?

A.   Correct.  He's in Denton.  I think he's board certified in four or five areas.

Q.   Okay.  And I think you alluded to this, but am I correct that it's -- it's your belief that the specific language of Article 8, Section D is what entitles Deborah Cortez to recover under this postponement claim; is that right?

A.   That's my understanding, yes.

Q.   Okay.  And I've been through some language, but I think before the break you had said there was some additional language in this section that you thought entitled her to distribution.  And I want to ask you again, can you show me in Exhibit 1 --

A.   Well --

Q.   -- the language that you're relying on?

A.    -- the fact is she was the only child, she was the only beneficiary, she was the only heir at law.

Q.    Okay.

A.    The trust specifically references that the trust was -- was written solely for the benefit of Deborah Cortez for health, safety, welfare.

Q.    Where does it say that last -- I want you to point out in Exhibit 1 where this trust says it was written solely for the benefit of Deborah Cortez.

A.    I'm probably paraphrasing a little bit.

Q.    Okay.  Well, show me the provision that you believe you're paraphrasing?

A.    Well, take a second to look through the trust.

Q.    Well, sir, I thought that's what we had taken a break to do earlier?

A.    Well, you asked me to look at the pleadings.

Q.    And you don't do that either, sir.

A.    Well, I did.

Q.    So show me where in this trust document it says that this trust is written exclusively for the benefit of Deborah Cortez, or whatever you think you've paraphrased.

A.    Well, you could start with Article 2, family, children, "We have one child of our marriage, Deborah A. Cortez, an adult."  In 10, "Our primary concern during Deborah's life is for her health, support, education, welfare

and best interest, and the trustee need not consider the interest of any other beneficiaries in making distributions to her or on her behalf for those purposes under this paragraph."

Q. Okay. Let me ask you about that. It says that our primary concern during Deborah's life is for these things. Doesn't that suggest that they had a different concern after Deborah died?

A. Are you saying it's ambiguous?

Q. No, sir. I'm saying when this says "our primary concern is this during Deborah's life," doesn't that suggest that there may be another primary concern after Deborah dies?

A. Not necessarily.

Q. Anything else that you can find that supports your statement that this trust was written solely for the benefit of Deborah Cortez?

A. Yeah, the 10 part is the biggest part.

Q. The part about Deborah's life?

A. Right.

Q. And again, back to my original question, is there any other language in that D portion, the postponement of possession portion, that you believe supports this postponement provision claim?

A. You're talking about in the trust?

Q. Well, sir, the claim cites in every single one of the pleadings that we looked at, the claim cites Article 8,

Section D to support this claim. And I'm asking you, can you point out what language you believe in Article 8, Section D supports this claim? And that's on Page 5 of the trust.

A. Well, I mean, whatever we put in our pleadings is -- is -- addresses that. I'm not going to sit here and try and explain it all to you at this point because certainly we've outlined in our pleadings, we've consulted with necessary experts and we believe every claim we've made is colorable.

Q. Was Mr. Kelsey going to testify in this case if it had reached trial as an expert?

A. I hadn't made that decision yet.

Q. He certainly was never designated as an expert, was he?

A. Correct.

MR. THOMPSON: I'm going to approach if you don't mind, Your Honor, with Exhibit 2?

THE COURT: You may approach.

Q. (By Mr. Thompson) Now, Mr. Brotherton, you've made this same claim in a matter pending in a West Virginia court, correct?

A. Well -- and that's not a simple yes or no question. As you know this whole lawsuit here was brought about by Ms. Murray filing suit against Mr. Cortez. We again, doing our due diligence on this case and investigating and

doing everything we needed to do to determine that we had claims that could be colorable on this, we filed our petition in intervention. During the course of the litigation in this case, after Judge Herman directed that we bring in all the third party defendants and the churches that were addressed in the trust, suit was filed by Ms. Murray in West Virginia. So everything that was done in West Virginia was of course similar to what we were doing here in addressing the same claims.

MR. THOMPSON: I'm going to object to that as nonresponsive, Judge.

THE COURT: Sustained.

Q. (By Mr. Thompson) Sir, did you allege in the West Virginia case that under Article 8, Section D2 of the trust, because Deborah was over the age of 35 when Phyllis Short died then she inherited all the trust assets and Cortez as her sole heir then inherited all the trust assets?

A. That's -- that's part of our claims, yes.

Q. In West Virginia?

A. Correct.

Q. Okay. So that's virtually identical to the postponement claim we've been talking about here today?

A. Correct.

Q. Is that a yes?

A. That's the way I understand it, yes.

Q. Okay. And the Judge in the West Virginia case issued a summary judgment against that claim, correct?

A. I believe so, yes.

Q. Okay. And do you recall the date of that being September 15th, 2016?

A. I -- I'm not sure.

Q. Okay. Exhibit 2 that I put in front of you is actually a copy of that summary judgment, do you agree? Do you agree with me that that's a copy of the summary judgment?

A. If you are representing that it is I have no reason to doubt you.

MR. THOMPSON: Your Honor, I have a copy for you if you'd like me to approach?

Q. (By Mr. Thompson) Well, if you look at the last page of this document, Page 9, do you see that was entered on September the 15th, 2016 and purports to be signed by Robert A. Waters, Judge?

A. Correct.

Q. And is that the judge in the West Virginia case?

A. Correct.

MR. THOMPSON: Your Honor, we'd ask for admission of Exhibit 2. And counsel may not know, but the Court does have on file a certified copy of this with all the nuts and bolts that goes into that from an earlier hearing. So we'd ask that Exhibit 2 be admitted.

(Movant's Exhibit No. 2

was offered into evidence.)

THE COURT: Any objection?

MR. RUBACK: No objection, Your Honor.

THE COURT: No. 2 is admitted.

(Movant's Exhibit No. 2

was admitted into evidence.)

Q. (By Mr. Thompson) All right. If you turn to Page 8 of Exhibit 2, Paragraph 29. Do you see that Judge Waters recites Mateo Cortez' claim saying that Mateo Cortez argues that he is the sole beneficiary of the trust and entitled to the distribution of all trust assets because Article 8, Section D2 of the trust states that when such beneficiary reaches the age of 35 -- and then it goes through that postponement provision. Do you see that?

A. I do.

Q. Okay. And do you see in the middle of that paragraph, starting with the plain language of Section D? Do you see that?

A. I do.

Q. Can you read that sentence into the record, please?

A. "The plain language of Section D of the trust, however, only applies if any beneficiary is under the age of 35 years at the time he or she becomes entitled to

distribution."

Q.    And can you read the next sentence, please?

A.    "Deborah was not entitled to distribution until Ms. Short died, at which time Deborah was 54 years old and thus none of the provisions of Section D applied to her interest in the trust."

Q.    And the next sentence?

A.    "Rather the plain language of the trust shows that Section B governed Deborah's interests."

Q.    And one last time, the next sentence?

A.    "Indeed, at the time the trust was executed Deborah was 42 years old.  This further demonstrates that Section D was not intended to apply to the trust created for Deborah, but instead to the alternate distribution to the heirs at law, Mr. and Mrs. Short under Section C of the trust."

Q.    Okay.  Were you aware of Judge Waters' order and his findings in this Exhibit 2 on or about September 15th, 2016 when it was entered?

A.    I was there at the hearing.  I think I subsequently saw the order.  West Virginia has a little different rules on how they produce an order.

Q.    Okay.  Well, but is it fair to say that you became aware of the findings in this document somewhere around September 15th, 2016?

A. I don't know if it was September 15th, but sometime probably after that.

Q. Okay. And you disagree with Judge Waters' findings here, I assume?

A. That would be a fair assumption.

Q. Okay. I take it again you don't disagree with the facts in here that Deborah was 54 at the time Ms. Short died and she was 42 at the time the trust was executed? I think we got your agreement on that earlier?

A. If -- if those were the correct dates then I'll -- I'll assume that also.

Q. You don't have any reason to doubt that?

A. I -- if you're representing that's the case then I have no reason to doubt it.

Q. Okay. Why did you continue to pursue these same claims in this Court after they had already been rejected by Judge Waters in West Virginia?

A. I think you're asking me to give my legal theories on that.

Q. Okay.

A. You know --

Q. Do you have one?

A. -- the fact is that the West Virginia case was filed after this case was filed by Ms. Farley in our petition in intervention and --

Q.    Let me just stop you there because I think I can cut to the chase.  What substantive disputes do you have with regard to what Judge Waters found?  I'm not talking about procedure, but you said you disagreed with what he found in this paragraph and I'd like to know what that disagreement is?

A.    Well, certainly, again, it's our position and I think you've conceded at least one of the points is that Deborah Cortez is entitled to the trust proceeds.

Q.    Well, I have certainly not conceded that and if that's what you think I said then I retract that.  I think what I said is that I withdrew our sanctions motion on that point because I think it is a colorable argument.  I certainly do not endorse your theory on that.  I think we were still entitled to summary judgment, absolutely.  But if there has been some confusion on that I want to set the record straight.  And all I did was withdraw our sanctions motion on that point.  I still think you were absolutely, totally wrong.

A.    Well, certainly we have a difference of opinion because --

Q.    Sure.  And you and Judge Waters have a difference of opinion, correct?

A.    Right.

Q.    And I want to know, again, what the basis is for you disagreeing with Judge Waters' order here?

A.    Because Deborah Cortez is entitled to the trust.

Q.   Okay.

A.   And I've already outlined the reasons why.

Q.   Well, sir, you haven't.  In fact, you told me you can't outline it.  You said it's in the pleadings.  And, sir, you are the one here that we're seeking sanctions against.  And I've been through the pleadings and what they say.  Now I need to hear what you say about it, sir.  And so my question one last time is can you show me any language in Article 8, Section D of Exhibit 1 that supports your theory?

A.   I think I've already said that.

MR. THOMPSON:  Okay.  I'll pass the witness, Your Honor.


### CROSS-EXAMINATION

BY MR. RUBACK:

Q.   Mr. Brotherton, counsel asked you if you're familiar with Rule 13.  He read to you some parts of Rule 13.  He didn't read all of Rule 13.  Does Rule 13 in fact state, quote, "Courts shall presume that pleadings, motions and other papers are filed in good faith," unquote?

A.   That's correct.

Q.   Counsel went over multiple filings in the case, the Original Petition in Intervention, the first amended, the second amended, the third amended and the fourth amended, went over each of those and had you confirm that there was a,

quote, unquote, postponement claim made in each of those filings. Is that your recollection?

A. Correct.

Q. And when was the first time counsel advised you or anyone else advised you that counsel believed that that statement, that that claim was sanctionable?

A. I don't think I ever heard that --

Q. So --

A. -- until this motion to modify.

Q. So if I'm understanding correctly, you filed an original petition, first amended, second amended, third amended and fourth amended, and the very first time counsel advised you that he believed your conduct was sanctionable was not until after the final judgment in that case? Is this -- is that correct?

A. That's correct.

Q. Interesting. Counsel also read to you from Chapter 10 of the Civil Practices and Remedies Code, specifically Section 10.001. I'd like to read a portion of it that he hasn't to have you confirm that's correct. To the signatory's best knowledge, information, belief formed after reasonable inquiry and so on, when you filed all the documents at issue, did you make what you believed to be reasonable inquiry?

A. Absolutely.

Q. Prior to filing those documents?

A. Absolutely.

Q. By doing so did your reasonable inquiry include assigning associates to do research on these legal issues?

A. That's correct.

Q. Did your reasonable inquiry include consulting with a trust and estates expert before filing these documents?

A. That's correct.

Q. And did you to the, quote, unquote, best knowledge, information, belief of yourself truly believe you were acting in good faith at the time you filed these documents?

A. Absolutely.

Q. You had an honest belief you were acting in good faith at the time of the filing?

A. Yes.

Q. Did you intend to mislead this Court or counsel with any of the filings in this case?

A. Absolutely not.

Q. To the extent that hypothetically you were wrong on any claim you made, did you know at the time you made these claims in the filings you were wrong? If hypothetically -- I'm not saying you were wrong -- but if hypothetically you had been wrong, would you have known at the time you filed these claims?

A. No.

Q. Counsel also asked you to review the West Virginia Judge's order granting a motion for personal -- personal summary judgment against your client. Was that an interlocutory order or a final order?

A. Interlocutory.

Q. And is it your understanding of the law that an interlocutory order by a West Virginia judge is binding on this Texas Court?

A. It is not.

Q. So you wouldn't have found anything at all wrong making an argument inconsistent with a West Virginia Judge's interlocutory order at the time you made your filing in this case?

A. That's correct.

MR. RUBACK: I have no further questions, Your Honor.

MR. THOMPSON: Nothing further.

THE COURT: You may be seated.

Next witness.

MR. THOMPSON: Sean Hester.

Your Honor, I'm going to approach because I was just handed the exhibits, I need to hand them back.

MR. HESTER: May I borrow your glasses, William?

MR. BROTHERTON: Oh, you can.

MR. HESTER: You may not need them but I do.

MR. BROTHERTON: They are 1.25, the lowest -- lowest range.

MR. THOMPSON: There was a file stamped copy of the trust document but I'm not finding it.

THE COURT: It's probably with me. It is.

MR. THOMPSON: Okay. There you go.

MR. HESTER: Thank you.

**SEAN HESTER,**

was called as a witness by the Movant having been first duly sworn, testified as follows:

**DIRECT EXAMINATION**

BY MR. THOMPSON:

Q. Mr. Hester, would you state your name for the Court, please?

A. Sean Walker Hester.

Q. And what do you do for a living?

A. I'm an attorney.

Q. How long have you been practicing law?

A. Since 1993.

Q. And you're one of the attorneys for Mateo Cortez in this matter; is that right?

A. That's correct.

Q. Okay. I'm going to try to get through this a little more quickly so you don't have to wear those crooked glasses for the next hour. No offense, Mr. Brotherton.

Are you familiar -- at least after today are you familiar with Texas Rule of Civil Procedure 13 and Civil Practices and Remedies Code, Chapter 10?

A. Yes, I'm generally familiar with them.

Q. Okay. And I actually have Chapter 10 up there in front of you. It's not an exhibit but you may want to look at it. And you understand that the triggering event for potential sanctions under those rules is an attorney signing a pleading that is sanctionable?

A. That's what it says.

Q. Do you agree with me that you signed Intervenor's Amended Motion to Consider Order Granting Third Party Defendants' Traditional and No Evidence Motion for Summary Judgment?

A. I -- yes, I'm sure I did.

Q. Okay. I can give you a copy just to help us along.

MR. THOMPSON: May I approach, Judge?

THE COURT: You may.

THE WITNESS: The titles get so long, I'm -- but I'm sure I did. Okay.

Q. (By Mr. Thompson) And this is a recently filed

pleading. It looks like it was actually filed in two different cause numbers but I think it was most recently filed on the 23rd of January; is that right?

A. Yeah, it probably got filed in the other cause number since this case was severed.

Q. Sure.

A. I think there may have been some confusion.

Q. I think we're all kind of confused about it.

A. I -- yeah, it is a little confusing.

Q. I won't belabor it, but are you familiar with what I discussed with Mr. Brotherton is the postponement provision claim?

A. I am.

Q. And that's the claim of course that because Deborah Cortez was over the age of 35 at the time Phyllis Short died, that she's entitled to all the trust assets, correct?

A. That's correct.

Q. Do you address that claim and ask the Court to reconsider its summary judgment on that claim in this amended motion to reconsider?

A. Yes.

Q. Okay. And just to be sure, if you go to Page 22 of this document, that is your signature there on Page 22; is that right?

A. I'll get there but, yes, I'm sure it is.

Q. Sure.

A. Yes, it is.

Q. Okay. You understand that that claim was made pursuant to the postponement provision in the trust which is I believe marked as Exhibit 1 up there. And that's on Page 5, that's Article 8, Section D?

A. I do.

Q. And you understand when I say postponement provision that's what I'm speaking of?

A. I do.

Q. Okay. Can you tell me the language in Article 8, Section D that you believe supports the postponement provision claim?

A. I can. Let me get to it.

Q. Uh-huh.

A. The -- well, first of all -- let's see. Okay. So first of all it refers to any beneficiary. And clearly in my mind Deborah Cortez was the only named beneficiary in this -- in this case. So when I'm reading "postponement of possession" it says "if any beneficiary," in my mind that has to apply to Deborah Cortez.

Q. Okay. Let's talk about that.

A. Because she's -- because she's the only -- I mean, until she died she's the only beneficiary.

Q. Okay. You're talking about right there at the front end it says if any beneficiary is under the age of 35 years, dot, dot, dot?

A. At the time he or she becomes entitled to distribution, that's correct.

Q. Okay. That's the "any beneficiary" language you're referring to?

A. Correct.

Q. Okay. Do you not agree with me that this provision did not apply to Deborah Cortez because as has been admitted by your co-counsel she was over the age of 35 at the time she became entitled to distribution?

A. I don't agree.

Q. Okay. And why not?

A. Because to me this postponement of possession would apply if she was under 35. I think clearly if Deborah was under the age of 35 she would have had postponement of possession. So the way it applies to me is if she's over 35 then she would have been entitled to full distribution of the assets because there would not be a postponement of possession.

Q. Okay.

A. And that's what I've always argued.

Q. And does that stem from under Section 2, termination, the statement that "When such beneficiary reaches

the age of 35 years the balance of his or her trust share, including both principal and any accrued or undistributed income shall be distributed to that beneficiary?"  Is that where that thinking comes from?

A.     I'm sorry, tell me which provision you just read.

Q.     If you go down to termination, No. 2?

A.     Okay.

Q.     And then on the third line?  I believe this is the provision that you believe supports your theory?

A.     Right.

Q.     "When such beneficiary reaches the age of 35 years his or her trust share shall be distributed to the beneficiary."  Do you see that?

A.     Yes.

Q.     Okay.  Is that the provision that you think supports your theory?

A.     Well, I think -- I wouldn't read it as -- separately, but I think read as a whole in my opinion it -- it does support the -- the theory.

Q.     Okay.  Do you not agree with me that when the trust says "when such beneficiary reaches the age of 35" it's talking about the beneficiaries that were under the age of 35 at the time they were entitled to their distribution?

A.     I would assume it was talking about any beneficiary because that's what's named.

Q. Well, why would the document say "such beneficiary" if it was talking about any beneficiary? Doesn't "such" qualify a beneficiary?

A. To me it says "if any beneficiary," and then you read that and it says "when such beneficiary."

Q. But, sir, it doesn't say "if any beneficiary." It says "if any beneficiary is under the age of 35 years," correct?

A. Right. Right.

Q. And under your theory we would totally throw that phrasing out the window because it doesn't matter if they're under or over age 35?

A. It does matter because --

Q. Okay. Why does it matter?

A. Because if Deborah was under 35 she would have been subject to the postponement.

Q. Yes, she would. But she's not subject to it because she was over the age of 35, correct?

A. Which means there is no postponement. That's what we've always argued.

Q. Okay. And this is what Dick Kelsey told you was the correct interpretation of the trust?

A. Absolutely.

Q. Okay.

A. I mean, I'm -- I'm not -- I understand that people

have said we're wrong, but I still completely believe that that's what the plain language says.

Q. Again, like Mr. Brotherton you were part of the team that raised this same argument in West Virginia, correct? Were you involved in the West Virginia litigation?

A. No.

Q. You haven't done any research or --

A. I did some research. We had West Virginia counsel.

Q. Okay.

A. I believe Mr. Brotherton may have been up there, but --

Q. Have you been to West Virginia for this case?

A. No.

Q. Has Mr. Brotherton?

A. I think he said he had.

Q. Okay.

A. I'm sure -- he did. He said he had.

Q. So are you familiar with the order that's marked Exhibit 2?

A. Yes. I'm familiar it exists.

Q. And again, to cut to the chase on Exhibit 2, Page 8, Paragraph 29, are you familiar with the fact that Judge Waters rejected this claim in the West Virginia matter?

A. Yes, I am, but there is a -- there is a caveat to

that. But, yes, to answer your question.

Q. I understand there is some dispute about the capacity issues related to the West Virginia case. I understand that you only represent Mateo Cortez in his individual capacity in West Virginia. But on the substance, the substance of the postponement provision claim that we've referred to today, that's what Judge Waters is talking about in Paragraph 29, correct?

A. Okay.

Q. Do you agree with me? And take your time to review it.

A. I mean, the first sentence says, "The Court rejects Mateo Cortez' argument that he is the sole beneficiary of the trust." I really don't believe we've ever argued that. I think we've always argued that the estate of Deborah Cortez was the sole beneficiary of the trust.

Q. Okay. Well, even if that is so the Judge goes on to talk about his claim, Mateo Cortez in whatever capacity, is that -- because Article 8, Section D2 of the trust states that -- and then it reads in the 35 year provision. Do you see that?

A. Again, it says, "Mateo Cortez argues that he is the sole beneficiary of the trust." I just -- if that was argued in West Virginia that's not something we argued in Texas. And I understand where the -- where some of the

confusion came with -- with the summary judgment as to whether or not we were saying Mateo Cortez was a beneficiary or the estate of Deborah Cortez, but I --

Q. Well, it came from the fact that you waited a year and a half to get your ducks in a row about the personal representative issue, correct?

A. Well, it -- it's my understanding that we've never made a claim that Mateo Cortez was the beneficiary of the trust.

Q. Okay. So Judge Waters just got that one wrong in Exhibit 2?

A. I said that's my understanding.

Q. Okay. Regardless of the capacity issue --

A. I wasn't involved in the West Virginia so I don't know what -- what Judge Waters had in front of him, I don't know what he ruled.

Q. Okay. But whatever he had in front of him he certainly says later on that the plain language of Section D of the trust only applies if any beneficiary is under the age of 35 at the time he or she becomes entitled to distribution and that Deborah could not have been entitled to distribution under that section because she was 45 years old when Ms. Short died?

A. 42. Or --

Q. I'm sorry. 54 years old.

A.    54.  Okay.  Sorry.

Q.    Is that right?

A.    Yeah.

Q.    Okay.  And you don't dispute that she was that age at the time that Ms. Short died?

A.    Correct.

MR. THOMPSON:  Pass the witness.

## CROSS-EXAMINATION

BY MR. RUBACK:

Q.    Mr. Hester, is every pleading you filed -- I'm sorry.  Mr. Hester, is the one pleading you signed in this case, the only pleading you signed in this case, is it based on your honest interpretation of the law and of the trust documents?

A.    Yes, sir.

Q.    Did you ever intend to mislead the Court with anything in the one filing you signed?

A.    No.

Q.    Did you rely upon research performed by yourself and by associates at your law firm in filing that document that you filed?

A.    Absolutely.

Q.    Did you rely upon the trust expert in Denton County in making the representations you made to the Court in

the one filing that you filed?

A.   Yes.

Q.   We've talked quite a bit about an interlocutory order signed by a West Virginia judge in a related matter.  Do you believe that an interlocutory order signed by a West Virginia judge should be binding on this Texas Court?

A.   No.

MR. RUBACK:  I have nothing further, Your Honor.

THE COURT:  Anything further?

MR. THOMPSON:  No more questions.

THE COURT:  You may be seated.

Your next witness?

MR. BOONE:  Your Honor, we're going to call --

THE WITNESS:  Do you want me to leave the --

MR. THOMPSON:  Sure.  Certainly the exhibits.

THE COURT:  I'd like to see Exhibit 2 or the trust agreement that -- if you got it.

THE WITNESS:  Yes, Your Honor.

MR. THOMPSON:  We're going to call Linda Murray.  Mr. Boone is going to do the direct if that's all right.

THE COURT:  Okay.  That's fine.

MR. BOONE:  Linda Murray.

THE COURT:  Ms. Murray, if you'll have a seat up here as close to the microphone as possible.

You may proceed.

MR. BOONE: Thank you, Judge.

**LINDA MURRAY,**

was called as a witness by the Movant having been first duly sworn, testified as follows:

**DIRECT EXAMINATION**

BY MR. BOONE:

Q. Ms. Murray, would you state your name for the record, please?

A. Yes, Linda Murray.

Q. And, Ms. Murray, where do you live?

A. Mineral Wells, West Virginia.

Q. I see. And you flew her for this hearing; is that correct?

A. Yes.

Q. And traveling with you is your husband?

A. Yes.

Q. What's his name?

A. Danny.

Q. Now, Ms. Murray, are you retired?

A. Yes.

Q. From what profession have you retired?

A. Banking.

Q. Banking?

A. Uh-huh.

Q. How many years did you serve in the banking industry?

A. 39 years.

Q. Okay. With what bank for the most --

A. For the most part was Branch Banking & Trust.

Q. BB&T?

A. Yes.

Q. I understand you've also served as your church treasurer for a number of years, correct?

A. Yes, 18 years.

Q. So you like numbers, do you?

A. Yes.

Q. Who are William and Phyllis Short?

A. They were my aunt and uncle.

Q. So you were their niece, correct?

A. Yes.

Q. And did --

MR. BOONE: Judge, I'm going to approach the witness.

THE COURT: You may.

Q. (By Mr. Boone) Did William and -- first off, did William have a nickname?

A. Dorsey.

Q. Dorsey. All right.

A. Yes.

Q. So forgive me if I refer to him as Dorsey or William. But did they have a child?

A. Yes, they had Deborah.

Q. Okay. And was Deborah adopted?

A. Yes.

Q. In what state did they adopt her?

A. West Virginia.

Q. Now, you are trustee for the William and Phyllis Short Trust, correct?

A. Yes, I am.

Q. All right. Now, if it's okay I'll refer to that document by the phrase "the trust" today. Is that fair?

A. Yes.

Q. All right. And -- but at times you wear two hats, correct?

A. Yes.

Q. And why is that?

A. Because I'm the trustee of that -- of the trust and --

Q. You're also an heir at law, a potential heir?

A. Yes.

Q. You're also a potential heir, correct?

A. Yes, I am.

Q. Okay. Got you. Now, could you tell the Judge

when Phyllis and Dorsey first started talking to you about possibly serving as a trustee?

A. Yes. They came to me -- well, we were in California. My husband was in the service. He was drafted during the Vietnam War. And they came from Parkersburg, West Virginia to Fort Ord, California to visit us. And while they were out there they talked to me then that they were thing about doing -- that -- the trust.

Q. Was it often that you had visitors out to California?

A. No.

Q. Was it a special time for you?

A. Yes, it was very special and we were very, very happy to see them.

Q. Got you. Now, to your knowledge did they have a trust at that -- do you know if they had a trust at that time?

A. No, I don't think they did but it's not -- I don't know that knowledge. They didn't share that with me if they did.

Q. Sure. And did they mention to you the amount, the size of the trust in the 1970s?

A. No.

Q. All right. Now, let's fast forward to let's say the 1980s. Did they have a special occasion where they talked to you further about the trust?

A.   Yes.  They come out to my house and visited me.

Q.   Okay.

A.   And they gave me a video to watch to see how a trust works and also asked me if I would be willing to serve as a co-trustee with Debbie if something happened to her and William.

Q.   Okay.

A.   And if she was the last to go it was supposed to be me that served on the trust as a co-trustee.

Q.   Now, were they aware that you were in the banking industry?

A.   Yes.  Yes, they come -- they were a customer of mine a lot.

Q.   Proud of you for that?

A.   Pardon me?

Q.   Were they proud of you for that?

A.   Oh, yes.  They always told me how proud they were for what I did with my education and working with the bank. And I enjoyed it.  I loved banking.

Q.   Ma'am, I want to fast forward to January 5th, 2000.  That's when William passed away, correct?

A.   Yes.

Q.   Now, was there a memorial service for Dorsey in West Virginia?

A.   Yes.

Q. Okay. Now, what if anything or any meetings happened around the time of this memorial service --

A. Uh-huh.

Q. -- as it relates to the trust?

A. Yes. I spoke with -- with Phyllis and Debbie at that time at their hotel and we talked about the trust and she wanted me to serve as the co-trustee.

Q. In addition to asking you to serve as the co-trustee did Phyllis, Aunt Phyllis talk about the goal, the purpose of the trust?

A. That she wanted it -- that once -- if Debbie -- she wanted Debbie to be able to live comfortably.

Q. Okay.

A. And after Debbie's death then it was to be divided between the Whites -- the Whited and the Short families.

Q. All right. So after William passed away did at some point you become a co-trustee?

A. Yes, I did.

Q. All right. Now, you were co-trustee with who else?

A. With Deborah.

Q. All right. Now, who is Bob Schlager (phonetic)?

A. Robert Schlager was the manager of the trust.

Q. He's a financial manager?

A. Financial, yes.

Q.   Okay.   And what if anything would he do or send you as co-trustee?

A.   He would send me documents at different times. Sometimes Phyllis would call and tell me they were sending them and sometimes he called.   I'd sign them and send them back.

Q.   But you were relying for the most part on what he was sending you?

A.   Absolutely.   I -- they trusted him, I trust them and I trusted him.

Q.   You're in West Virginia at the time?

A.   Yes, I am.

Q.   And Mr. Schlager was in Georgia?

A.   Yes.

Q.   Deborah was in Texas?

A.   Yes.

Q.   Okay.

A.   Mr. Schlager was in Florida.

Q.   Florida.   Forgive me.   Phyllis, was she also in Florida too?

A.   She was in Florida when they prepared the trust and everything but then they moved to Texas because they were getting older.

Q.   Okay.   All right.   So it's my understanding that in the span of 10, 11 months, all in one year both your

Aunt Phyllis and Deborah died. That was in 2011, correct?

A. Yes.

Q. All right. Now, Deborah was married to a gentleman, correct?

A. Yes.

Q. What was his name?

A. Mateo Cortez.

Q. Mateo Cortez?

A. Yes.

Q. What if anything did Mateo say to you on or around his wife's death as it relates to funds or monies?

A. He called me the morning that Debbie had passed away and he said -- and he -- and I thought it was so strange and I said it to my husband. He said, "We were getting $15,000 a month and now that money is going to be yours."

Q. So Deborah and Mateo were getting $15,000 a month?

A. Yes.

Q. Okay. And what was your reaction -- what did you think he meant by "you're getting it now?"

A. I said, "No, I will not be getting that money, it belongs to the trust."

Q. But he was acknowledging that funds that were once going to his -- him were now going to the trust?

A. To -- yes.

Q. All right. At the time that Deborah died did you

know how much money was in the trust?

A. I had no idea.

Q. How did you get your first copy of the trust document?

A. Finally after asking and asking and asking I received a copy on February the 17th of 2012 that Mateo sent to me and said he found it in the condo.

Q. So Mateo gave you your first copy of the trust?

A. Yes.

Q. Now, at that point did you know all of the accounts and annuities and life insurance policies and everything involved with the trust?

A. No, I had no idea.

Q. All right. Could you just kind of share with us how you got your arms around everything involved here?

THE COURT: Counselor, may I ask some questions?

MR. BOONE: Yes.

THE COURT: Counselors? Because you've got me confused. William Short died when?

THE WITNESS: He died January the 5th of 2002.

THE COURT: Okay. And then I think I heard you say that you met with Phyllis, Debbie?

THE WITNESS: Yes.

THE COURT: Debbie Cortez?

THE WITNESS: Yes.

THE COURT: And yourself met, and there was a discussion about you and Debbie being the co-trustees?

THE WITNESS: Yes.

THE COURT: And then you subsequently testified -- or then you said that during some period of time you would get documents from Mr. Schlager?

THE WITNESS: Yes, I would.

THE COURT: And as co-trustee you were signing them, correct?

THE WITNESS: Yes.

THE COURT: Now, at that time, from the date of mister -- or shortly after Mr. Short's death until Phyllis died, were you and Debbie the co-trustees of the trust?

THE WITNESS: Yes, we were.

THE COURT: Was there some documentation saying that?

THE WITNESS: Yes. There was a transfer form -- I'm not exactly correct of what it was, but it was transferring the ownership and Aunt Phyl transferred it to me and Debbie on March -- March 31st of 2003.

THE COURT: Okay. So you -- when Debbie died you had this phone call saying that we've been getting $15,000. Were you directing the $15,000 or how did that money -- how were they getting -- or Debbie getting $15,000?

THE WITNESS: She was -- the $15,000 was coming

out of the trust to Debbie that Robert Schlager set up to go to her.

MR. THOMPSON: She was entitled to income under --

THE WITNESS: Yeah, she was entitled to that income.

MR. THOMPSON: During her life, after Phyllis' death.

THE WITNESS: Also --

THE COURT: No, but I'm talking about before Phyllis' death?

MR. THOMPSON: I don't know the answer to that then.

THE WITNESS: No, she never got that kind of money before Phyllis' death. Not 15,000 a month.

THE COURT: Okay. Because, I mean, you said -- let me go back and look at this. You said that he called you --

THE WITNESS: On December the 9th of 2011.

THE COURT: Right after --

THE WITNESS: Debbie died.

THE COURT: Debbie died. And he said, "We've been getting $15,000."

THE WITNESS: Uh-huh. Each month.

THE COURT: And I'm just trying to say who was directing that? Because I don't read the trust to say that.

THE WITNESS: Because Debbie acted on her -- by herself after Phyllis died.

THE COURT: No, before Phyllis -- okay. So -- is it your -- okay. And you believe that -- you were a co-trustee?

THE WITNESS: Yes.

THE COURT: But you weren't authorizing any payments?

THE WITNESS: No.

THE COURT: That between the date of Phyllis' death and the date of Debbie's death, which was a period of 11 months --

THE WITNESS: Uh-huh.

THE COURT: -- at least according to Mateo he was receiving $15,000 a month for those 10 or 11 months?

THE WITNESS: No, they didn't get it that -- that quickly. Let me think.

THE COURT: But were you directing that payment as co-trustee?

THE WITNESS: No.

THE COURT: Who do you think was directing that?

THE WITNESS: Debbie set it up with the investors through Bob Schlager.

THE COURT: Okay. So she as a co-trustee contacted Mr. Schlager?

THE WITNESS: And she set up these accounts with the money that was in the trust. She operated on her behalf. I never did anything except sign some blank documents which I knew nothing about. I called Bob to say -- I called Bob Schlager and asked him what -- I said, "Why am I signing these blank documents?" And there was a stack like this. (Indicating.) And he said, "Do I have to get a plane and come clear up the -- West Virginia to go over each and every one of these documents?" And I told him, I said, "I've worked in banking all my life and I was always told never to let anyone sign a document in blank." But he was very, very rude and --

THE COURT: Okay. So you -- well, you may have signed a blank document --

THE WITNESS: Yes, I --

THE COURT: -- but you're telling me you didn't authorize any $15,000 a month payment?

THE WITNESS: Well, no, I did not but I signed the document.

THE COURT: Right. You signed these blank documents but you didn't really know --

THE WITNESS: What was being done.

THE COURT: -- these payments were being done until Mateo called you. And then he says you're going to be receiving these payments forward?

THE WITNESS: That is correct.

THE COURT: Okay.

Q. (By Mr. Boone) Now, what conclusions did you -- let's go back to that $15,000 payment that Mateo said would be coming to you as the trustee?

A. Uh-huh.

Q. What conclusions did you draw as to what Mateo felt or thought about his entitlement to the trust at that point?

A. Well, he thought that the money was going to come to me because he thought I was the trust (sic) at that time and I was going to get all those -- that money. We gave Debbie -- because I was supposed to give Debbie 50,000, which I didn't know, I didn't have a copy of the trust so I had no idea. And -- and Debbie did an automatic draft from one of the investments to her own checking account for the $50,000 for the first year, and then would have been supposed to give her $25,000 for the second year. But she didn't live to get the second. But I did not know that --

THE COURT: Well, let me stop you. You got a copy of this trust agreement when?

THE WITNESS: February the 17th of 2016 from Mateo Cortez because I couldn't get anything from Bob Schlager.

THE COURT: Okay. Do you have that instrument down there?

THE WITNESS: With me now?

MR. BOONE: It would be Exhibit 2.

THE WITNESS: Yes, I do.

THE COURT: Okay. Look at the provision about what happens when Phyllis dies.

MR. BOONE: Is that Article 7, disposition after death of second spouse?

THE COURT: Yes.

Q.　　(By Mr. Boone)　That's on Page 4 of 14, Ms. Murray.

A.　　Okay. Disposition after the death of second spouse. Debbie was -- well, we were -- the trustee -- I mean, the two co-trustees were supposed to -- "On the death of the second spouse the trust shall be administered as follows; payment of expenses and taxes. The trustee shall make provision out of the second spouse's separate share for the payments of the type described in Paragraph B of Article 5 if any required in connection with the estate of the second spouse."

"Special testamentary power of appointment. The trustee shall distribute such portion of the assets of the credit sheltered trust of the first spouse to die to such charitable institutions and to such persons who are descendants or the spouses of descendants of the first spouse to die as the second spouse may appoint by his or her will provided such will makes specific reference to this power of

appointment and is duly admitted to probate. In default of the exercise of such power of appointment the remainder of the trust estate shall be administered as described in Article 8 below."

THE COURT: Okay. Continue. Well, one question. Do you know whether or not those charities got whatever they were entitled to?

THE WITNESS: Yes.

THE COURT: Okay. Now let's go down to the next section.

THE WITNESS: Cash distribution -- cash distributions. I can't talk.

THE COURT: Distribution.

THE WITNESS: Excuse me. Okay. "Cash distribution to Deborah. If our daughter Deborah A. Cortez is living and legally competent the trustee shall distribute to her the sum of $50,000 as soon as practicable after the death of the second one of us to die. If Deborah is not there -- if Deborah is not then living or is not legally competent then this gift shall lapse and the remainder of the trust estate shall be administered as provided below."

"Continuing trust for Deborah. If our daughter Deborah A. Cortez is living on the date of the death of the second one of us to die, then the remainder trust estate shall be administered as follows: Number one, income commencing as

of that date and during Deborah's life, the trustee shall distribute to her or on her behalf if she becomes incapacitated all of the net income of the trust at least quarterly or at more frequent intervals at Deborah's request. The term 'income' shall not include capital gains whether short term or long term from the sale of assets of the trust."

THE COURT: Okay. Let me look at that for a minute. I'm going to ask you a question. So you were the co-trustee upon Phyllis' death?

THE WITNESS: Yes.

THE COURT: Were you involved in making the $50,000 distribution?

THE WITNESS: No, I was not.

THE COURT: You didn't have a copy of this trust, did you?

THE WITNESS: No.

THE COURT: Then after that $50,000 distribution there was to be a second payment which would have been one year from the date of death of the second of us -- of one -- the second one of us to die. So if Phyllis -- what's the date of Phyllis' death?

THE WITNESS: Phyllis' death was January the 5th of 2011.

THE COURT: Okay. So as soon as practicable $50,000 was payable?

THE WITNESS: Right.

THE COURT: Then -- then there would be some income during the period quarterly or more frequently at Deborah's request. Were you involved in any of that?

THE WITNESS: No, I was not.

THE COURT: Then there is to be another payment, principal, of 25,000 one year after Deborah's death?

THE WITNESS: Right.

THE COURT: And that obviously never came to fruition so that would have never been made. But there would have been some income during that time. Now, when you say you signed these documents in blank, was that after Phyllis' death?

THE WITNESS: That was after Phyllis' death.

THE COURT: And -- but you -- there wasn't numbers like here is the 50,000, here is income?

THE WITNESS: They were completely blank.

THE COURT: Okay. Thank you.

THE WITNESS: Okay.

THE COURT: But you didn't act as the trustee -- even though you may have been the trustee you didn't have the agreement to know what you were to do?

THE WITNESS: No, I had no idea about anything.

THE COURT: Okay. You may proceed.

MR. BOONE: Thank you.

MELISSA VOIGT, CSR
(512) 854-9258

Q. (By Mr. Boone) Ms. Murray, did you take greater control over the trust once you became the sole trustee?

A. Yes, I did.

Q. Tell the Judge about that.

A. I had to -- once I was receiving statements and stuff in the mail I contacted these companies -- well, first of all, we contacted a bank local. And with their help and everything else going on I was able to get all of the money transferred. But when I talked to Bob Schlager to ask him to send me a copy of the trust, which I did not get, he said that he had some papers that he wanted me to fill out. This was shortly after Debbie died.

Q. Okay. And what did you --

A. I mean, not Debbie, Phyllis.

Q. What did you say in response to Bob's request to sign some more papers?

A. Pardon me? I'm sorry.

Q. What did you say to Bob when he asked you to sign those papers?

A. I told him that I did not like signing papers blank. But he told me he was trying to get it set up as soon as possible for Debbie to be able to start getting some money to live on.

Q. Okay. I'm talking now about after Deborah passed away?

A.    Okay.

Q.    Okay?  What if any changes did you make to how you handled your responsibilities as trustee after you became the sole trustee?  How did you go about gathering all the information to determine what was out there?

A.    We -- we had -- the first trip to Texas down here, we went through the condo.  And then it was 22 boxes shipped to my house.

Q.    Okay.

A.    And I went through all of those boxes to find the investments and anything -- we found bank statements and copies of checks and stuff.  There was so much -- and other material, quite a bit of other material in it also.  But the main portion we found a lot of investments in those boxes to be able to --

Q.    So those 22 boxes represented William and Phyllis' records over the years?

A.    All over the years.  Right.  Because they had everything in there, letters, their whole life was in there.

Q.    Did you get records from Wells Fargo?

A.    Well, we got records from Wells Fargo but we had to argue and fight to be able to get those.  It took us forever and ever to get them.

Q.    Now, at some point after gathering all this information, these records and documents, did you have

concerns that there were funds missing that should have been part of the trust?

A. Yes, I did, because when I talked to Bob Schlager on the phone he told me there was approximately four million dollars in the account.

Q. Okay. And --

A. And so when I started through all of that stuff it didn't come up to no four million dollars.

Q. Okay. Now, at some point with the assistance of counsel did you file a -- excuse me. Did you feel as though anyone in particular might be responsible for those missing funds?

A. Yes, I felt like they were -- I hate to talk about them, but I felt like Debbie and Matt were taking those funds out of the account.

Q. Now, did you file any civil actions in Texas?

A. Yes.

Q. All right. Linda, I don't want to get into the merits of that lawsuit, the misappropriation lawsuit today. But I do want to draw your attention to one deposition. Do you remember taking a deposition in that case?

A. Yes, I do.

Q. Okay. Just describe to the Judge how that deposition generally went?

A. I thought it was going really good until they come

to the point, they asked me how much money was in the trust. And I didn't feel like it was any of their business because the money didn't belong to them. But I told them, it was 5.2 million.

THE COURT: Well, you need to stop. I don't know who the "they" is and the "them" is.

THE WITNESS: Okay.

Q. (By Mr. Boone) Who was -- who was taking the deposition?

A. Brotherton.

Q. The Brotherton Law Firm? Someone from the Brotherton Law Firm?

A. Yes, it was.

Q. And Mateo Cortez was there?

A. Yes.

Q. All right.

A. He was with them.

Q. Okay. So when they asked you how much was in the trust did you know the answer?

A. Yes, I did.

Q. And did you tell them the answer?

A. Yes, I did.

Q. What was your answer?

A. 5.2 million dollars.

Q. What if any reaction did you observe at that time?

A.    You could see eyes rolling.

Q.    How so?

A.    Just so you could -- you could just see that they knew there was a lot of money.  And then shortly after we had a break.

Q.    Shortly after that question there was a break?

A.    Yes.

Q.    And what do you mean by "a break?"

A.    A 15 minute break.

Q.    Counsel left and --

A.    Counsel left, we -- yes.

Q.    And do you recall if there were many questions after the break concluded?

A.    No, there wasn't.

Q.    And that deposition occurred on June 19th, 2015, correct?

A.    That is correct.

Q.    Now, did Mateo through his counsel make any claims after that deposition that were new and different?  Did they file any papers or pleadings or anything after that deposition?

A.    Oh, yes.  They filed -- they filed saying that that money belonged to Mateo Cortez and all -- and it was all of it.  He -- Matt said all of the money belonged to him.

Q.    And how did you -- how did you feel when Mateo

argued that he was entitled to all of the trust?

A. I knew it wasn't supposed to be that way because I knew what Phyllis had told me at the hotel that day. And I know when me and -- when -- when Dorsey and Phyllis met with me --

Q. Right?

A. -- they had told me what their wishes were and they told me that if -- if Phyllis died first it would go to -- I'm sorry. You have to excuse me. I have --

Q. That's okay. You're doing just fine. The question before you I think was how did you feel after Mateo argued that he was entitled to the trust?

A. I was really -- I was just sick. Because I knew that it did not belong to him.

Q. Now, once you realized that there was now a dispute as to who was entitled to the -- the trust assets, did you file any action in West Virginia?

A. No.

Q. File any legal action in West Virginia?

A. No, I did not.

Q. Are you sure you didn't file a lawsuit in West Virginia?

A. About the -- about Matt wanting all of the money or --

Q. Yeah. Okay. So --

A. I'm confused. I'm sorry.

Q. That's okay.

MR. BOONE: Judge, may I approach the witness?

THE COURT: You may.

Q. (By Mr. Boone) Linda, I'm going to show you a document that's been filed --

A. Oh, yeah.

Q. Okay. Do you recognize this document?

A. Yes, I do.

Q. All right. Is your recollection refreshed as to what this document is?

A. This was our first filing for the -- for the -- how the trust was supposed to be set up. I mean, how the trust was set up and how it was -- all the heirs and everything. And it took us hours to get all of this information together of all the heirs and everything to be able to file this document.

Q. I got you. So why did you file -- so this document is asking the Court to determine who is entitled to what under the trust?

A. To the -- the heirs.

Q. The heirs. Okay. And why did you file in West Virginia?

A. Because the trust said that it's supposed to be into the state where most of the people -- the majority of the

people lived.

Q. All right.

A. Of the heirs.

THE COURT: I'm going to ask another question. So you said there was 5.2 million dollars. Is that lawsuit here in the State of Texas when you're taking this deposition?

THE WITNESS: The deposition was here in the State of Texas.

THE COURT: I mean, there is a lawsuit here other than this lawsuit?

THE WITNESS: No.

MR. BOONE: Judge, well, this account has been severed from the misappropriation lawsuit which was the genesis of this action. There was a complaint filed by the trustee against Bob Schlager, Mateo Cortez essentially seeking some assets that --

THE COURT: That's another lawsuit?

MR. THOMPSON: You want me to address this?

MR. BOONE: Yeah, why don't you --

MR. THOMPSON: Your Honor, it was all the same lawsuit.

THE COURT: Right.

MR. THOMPSON: So Ms. Murray as trustee filed first against Mr. Cortez and some others about misappropriation. Then Mr. Cortez counterclaimed and then

brought our clients in as third party defendants on the issues we're talking about here today.

THE COURT: Okay.

MR. THOMPSON: The Court granted summary judgment on those claims and we have severed those out.

THE COURT: Right.

MR. THOMPSON: And so when you say "in this matter" --

THE COURT: Well, okay.

MR. THOMPSON: -- it's kind of halfway.

THE COURT: Okay. My question to you then is this misappropriation claim you have, how much is that for?

THE WITNESS: $80,000.

THE COURT: 80,000. Okay. Thank you.

THE WITNESS: Okay. You're welcome.

MR. BOONE: Okay. May I approach?

THE COURT: Yes.

Q. (By Mr. Boone) I'm going to hand to you what I've marked as Exhibit 3. Linda, do you recognize this?

A. Oh, yes.

Q. What is this?

A. This is the heirs at law for the William Dorsey Short and Phyllis Dale Whited Short. And it is all of the members -- it is them listed plus all of their children and all of the heirs as they go in order.

Q. All right. So this information was pulled from the complaint that you filed in West Virginia, correct?

A. Yes.

MR. BOONE: All right. Judge, move for admission of Exhibit 3.

(Movant's Exhibit No. 3

was offered into evidence.)

THE COURT: Any objection?

MR. RUBACK: No objection, Your Honor.

THE COURT: No. 3 is admitted.

(Movant's Exhibit No. 3

was admitted into evidence.)

Q. (By Mr. Boone) Now, Linda, the -- when you filed as trustee the lawsuit in West Virginia, how did your family react?

A. My family was not very happy with me.

Q. Why weren't they very happy with you, Linda?

A. They thought I was asking for too much money for commission. They didn't think I should have any commission. They thought I should just do it, and I was double dipping taking heirship money and then taking commission also.

Q. Are you talking about the hours you noted in your complaint?

A. Yes. Yes.

Q. Let's talk about your immediate family. Who is

Thomas Wayne Marks?

A. He is my youngest brother.

Q. Okay. And how were you -- how is your relationship with Thomas?

A. Thomas now is good.

Q. Okay. What about your sister?

A. My sister Betty is good. My sister Patty --

Q. Tell the Judge what happened with Patty?

A. She was upset when she got the letter about the trust and everything from my attorney Robert Fluharty (phonetic). And when she got that she asked -- she called me wondering why I didn't ask her to help me with all of this because they've all -- all of them has noticed my health going down.

Q. Okay. I want to talk about your health in a second.

A. Okay.

Q. But I want to ask one more question about another family member and that's your brother --

A. Jim.

Q. Jim. How has your relationship with Jim been effected because of this lawsuit?

A. It's better than it was but once this -- the lawsuit happened -- we talked at least every other day or every two days. He never talked to me at all, he didn't want

nothing to do with me because he said I was double dipping and when this is all over and done with he said I might receive a dollar.

Q. And when you say "this lawsuit" you're talking about the lawsuit to resolve this issue as to who is entitled to the trust proceeds, Mr. Mateo Cortez or the others, correct?

A. Yes.

Q. All right. Ma'am, after you filed the lawsuit in West Virginia did Mr. Mateo's efforts in Texas stop?

A. No. No.

Q. No, he did not. Did you have to hire a lawyer to help out in Texas?

A. Yes, we did.

Q. And when I say "we" we're talking about the heirs at law?

A. Yes.

Q. And to your understanding were the heirs at law served with a copy of the complaint in West Virginia?

A. Yes, they were.

Q. All right. So you've got a lot of family listed on that sheet, correct?

A. Yes. Yes.

Q. How did you manage -- or how did the heirs at law manage to congress and decide how to respond to the

allegations? Did they have to meet on a regular basis?

A. Yes. We had to -- well, we don't meet but we do conference calls and stuff on a regular basis.

Q. And there have been meetings in person, correct?

A. Right.

Q. All right. Who is the lawyer in Texas that's been hired to defend the heirs at law?

A. Brian Thompson.

Q. All right. And Connie Barry also had me continue to help as well?

A. Yes. Uh-huh.

Q. Now, at some point did Judge Waters in West Virginia agree that Mateo was not entitled to take into the trust?

A. Yes, he did.

Q. And how did you feel after Judge Waters ruled that way?

A. I thought, oh, maybe it's going to be over soon and I can have some time for myself.

Q. Okay. But was it over?

A. No.

Q. All right. Did Mateo drop his case in Texas?

A. No.

Q. So I want to talk with you as to why you're asking for sanctions, okay? How has this effected your health?

A.   Well, I just -- I can't get around anymore at all. It's just been so much strain on me.  My doctors have all been concerned about me.  I have had -- two of them at least have said they have never ever seen me in this kind of shape.

Q.   Before this claim by Mateo Cortez did you exercise on a somewhat regular basis?

A.   Oh, yeah, I walked five miles every morning and I -- outside and -- and I walked two miles every evening on a treadmill.

MR. BOONE:  Judge, may I approach?

THE COURT:  You may.

Q.   (By Mr. Boone)  Linda, could you take a look at this photograph, please?

A.   Yes.

Q.   Who is in this photograph?

A.   My husband and myself.

Q.   And, Ms. Murray, approximately when was this photograph taken?

A.   It was taken in May, four years -- going to be four years.

Q.   Okay.  Since Mateo Cortez asserting its claim, have you gained quite a bit of weight?

A.   Yes.

Q.   Have you had to increase medications for antianxiety?

A. And depression.

Q. Okay.

A. It has put me into such a depression I -- they've increased so much medicine on me a lot of times I -- I just get so confused. And it's hurt my memory because of it all. And I do the best I can because I promised Uncle Dorsey and Aunt Phyl that I would do this. And the doctors even told me that I needed to get away from it. But I can't because I promised them. They come to see me in California when he was in the service. They were so good to me. They had us out. And I was so close to Aunt Phyl and Dorsey and Debbie. We spent a lot of weekends together at their house. And I promised them I'd do it and I'm going to do it.

MR. BOONE: Okay. Thank you, Ms. Murray.

I pass the witness.

THE COURT: Any questions?

MR. RUBACK: Yes, Your Honor.

### CROSS-EXAMINATION

BY MR. RUBACK:

Q. Ms. Murray, we've gotten a little far afield as to whether or not my clients Mr. Brotherton and Mr. Hester have violated Texas Civil Practice and Remedies --

MR. THOMPSON: Your Honor, I'm going to object to the sidebar and the -- construing her testimony.

THE COURT: That's proceed onward, please. I want to get this done by the end of the afternoon.

MR. RUBACK: Thank you.

Q. (By Mr. Ruback) Ma'am, do you have any personal knowledge of Mr. Brotherton's or Mr. Hester's intent at the time they made the legal arguments they made?

MR. THOMPSON: Objection, relevance. This intent thing is not a factor under the CPRC 10, Judge.

THE COURT: Overrule the objection.

Q. (By Mr. Ruback) Do you have any knowledge of their intent at the time they filed their pleadings?

A. Did I have any knowledge of what? I don't understand the question.

Q. Of -- do you have any knowledge of whether or not they had good intent or bad intent in making certain legal arguments they made in this case?

A. I just thought they were way off. I'm sorry. I just --

Q. Absolutely. But -- but did you know what they were thinking at the time?

MR. THOMPSON: Objection, asked and answered.

THE COURT: Let's move along.

MR. RUBACK: Thank you, Your Honor.

Q. (By Mr. Ruback) Do you know whether my clients performed any research before filing the documents they filed?

A.    I do not know what they did.

Q.    Do you know if they consulted with any trust experts before filing the filings that they did?

A.    No, I did not.

Q.    Okay.  You said that at your deposition it was taken by the Brotherton Law Firm.  Wasn't your deposition in fact taken by prior counsel with a gentleman named John Long?

A.    He was with the -- he was with the -- he is with him.

Q.    Was he with them at the time he took your deposition or was he a sole practitioner?

A.    I have no idea.

Q.    So you don't know whether your deposition, the one at issue that you talked at length about was taken by the Brotherton Law Firm or not?

A.    No, I don't remember when he went with the Brotherton Law Firm.  I just know he was with the Brotherton Law Firm.  When I got the copy of the -- of the deposition myself I seen that it was signed by John Long.

Q.    Okay.  So it was taken by John Long, not by Mr. Hester or Mr. Brotherton?

A.    I -- to be honest I couldn't tell you what the man looked like.

Q.    I understand completely, ma'am.  So you don't know for sure who took your deposition, whether it was the

Brotherton Law Firm or not?

A. No.

MR. RUBACK: That is all, pass the witness, Your Honor.

THE COURT: Anything further?

MR. BOONE: Judge, just a point of order. I would ask the Court to take judicial notice that's appropriate, that among the names signed and featured under the signature of Mr. Brotherton on the -- the Original Petition in Intervention is Mr. John C. Long, IV, the gentleman --

THE COURT: So noted.

MR. BOONE: Right. But William Brotherton, of course, signed this document.

MR. RUBACK: Just out of curiosity, I'm brand new to the case, do we have anything showing who took the deposition, whether it was associated with -- at the time they took the deposition?

MR. BOONE: Yeah. I can get you a copy of the transcript at some point, but as you'll see in the transcript, the copies that I have, the select documents, you'll see by Mr. Long. "I'm not asking $2,000, okay."

MR. RUBACK: So it was definitely Mr. Long --

MR. BOONE: Mr. Long --

MR. RUBACK: And we don't know whether he was associated with the Brotherton firm at that time because we

don't have those pages with us today?

MR. BOONE: I don't know.

MR. RUBACK: No problem. Thank you, sir.

THE COURT: You may be seated.

MR. BOONE: Thank you, Ms. Murray. You can come down.

THE COURT: Do you have another witness?

MR. BOONE: Judge, if I could move for the admission of the Exhibit 4, please?

(Movant's Exhibit No. 4 was offered into evidence.)

MR. RUBACK: No objection, Your Honor.

THE COURT: No. 4 is admitted.

(Movant's Exhibit No. 4 was admitted into evidence.)

THE COURT: Mr. Thompson, your next witness?

MR. THOMPSON: It's going to be me, Your Honor.

THE COURT: Okay. You questioning yourself?

MR. THOMPSON: I'm just going to read it into the record if that's okay.

THE COURT: Okay. Uh-huh.

MR. THOMPSON: Do you mind if I do it from here?

THE COURT: I don't mind.

**BRIAN THOMPSON,**

was called as a witness by the Movant having been first duly sworn, testified as follows:

**DIRECT EXAMINATION**

BY MR. THOMPSON:

Judge, my name is Brian Thompson as the Court is aware by now I'm sure. I'm the attorney of record for the third party defendants in this matter who are the movants in this motion. I was licensed by the Supreme Court of Texas to practice law in the State of Texas in November of 2005 after completing my studies at the University of Texas School of Law. Since that time I've practiced civil litigation in Travis County first with the law firm of McGinnis Lochridge & Kilgore where I was a partner, now at the law firm of Hopper Mikeska which as this Court well knows is a law firm specializing in estate planning, administration, probate and trust litigation.

In my practice I've become familiar with customary rates for attorneys who practice in this area in Travis County and I believe that my rate charged in this matter falls within the range of reasonable fees. My billable rate in this matter was set at $300 an hour except for all time after January 1st of this year has been charged at a rate of $325 per hour.

Your Honor, I would offer into evidence as

Exhibit 5 a copy of my bills in this matter.

(Movant's Exhibit No. 5

was offered into evidence.)

THE COURT: Any objection?

MR. RUBACK: No objection, Your Honor.

THE COURT: No. 5 will be admitted.

(Movant's Exhibit No. 5

was admitted into evidence.)

MR. THOMPSON: Okay.

THE COURT: You may continue.

MR. THOMPSON: Thank you, Judge.

As is set out in Exhibit 5 there is descriptions for all of the legal services that I have done in this case on behalf of my clients which I believe were reasonable and necessary in defending against the claims made by Mateo Cortez in this matter that implicated my clients. In particular these fees were necessary in defending against Mateo Cortez' claim regarding the postponement provision. And because this claim was inextricably intertwined with the other claim made by Cortez against my clients I have not been able to segregate the -- the fees between the two claims. All of the time that I spent on one was spent on the other.

In addition, Mr. Boone is going to testify with regard to his fees. I have reviewed those fees as well. He will talk about those more in depth. His rate is lower than

mine so I think it's also within the scope of reasonable fees in Travis County in this area. In addition I'll point out that based on my review of Mr. Boone's fees he has segregated out all of the time that he has spent with regard to the Texas piece of the litigation versus the West Virginia piece.

Your Honor, my fees in this matter through Thursday of last week, which is January the 26th, were $49,800. I believe I've spent an additional ten hours in preparing for this hearing which would be an additional $3,250 for a total of $53,000 -- $53,050.

I will point out, because I do think it's important, that I incurred $18,650.04 before September the 15th, 2016 which was the date of Judge Waters' order out of West Virginia. Thereafter I have incurred $34,399.96. So if the Court puts some impetus on that West Virginia order that would be the amount we ask for. But we're actually asking for the full $53,050 at this time.

THE COURT: Any questions?

MR. RUBACK: Yes.

**CROSS-EXAMINATION**

BY MR. RUBACK:

Q. Mr. Thompson, we keep hearing about Judge Waters' order, the interlocutory in West Virginia. Do you believe that that order should be binding, that interlocutory order

from West Virginia should be binding in this Court?

MR. THOMPSON: I'm going to object to the relevance of that question as to my fees.

THE COURT: I'm going to overrule the objection.

MR. THOMPSON: No, in fact I actually stated that in a pleading in this matter. I stated that it is not binding on this Court. But I do think it is important to have shown your clients' notice that that claim had already been decided by another court in what I believe to be a very well reasoned opinion that cited not only the Texas and West Virginia law but also Florida law. Under three different states' laws Judge Waters found that that claim had no merit and dismissed it.

Q. (By Mr. Ruback) You mentioned the word "notice" in your last sentence, sir. When did you first provide my clients' notice that you believed their conduct was sanctionable? Was it right after their first alleged sanctionable conduct, their second, third, fourth, fifth or not until after the final judgment in this case?

A. I believe that I've called this claim throughout my pleadings "absurd." That's a word that I've used frequently in this case regarding your clients' allegations. However, the first time I think that I stated that these were sanctionable under CPRC 10 and Rule 13 was upon the filing of my motion to modify judgment to include sanctions award which

was filed on January the 16th, 2017.

Q. Okay. So am my correct in understanding you didn't bring the sanctionable nature of this conduct, alleged sanctionable nature of this conduct to their attention after any of these pleadings until there was a final judgment in this case?

A. I would -- I'm going to parse your statement. I mean, a final judgment, I think it -- I will agree with you that it was not until after the summary judgment in this case. Whether that judgment was final or not I think somewhat relies on the outcome of this proceeding so --

Q. Okay. Fair enough. What you're saying is -- if I'm understanding you is you did not bring alleged sanctionable conduct to the attention of this Court or to my clients after any of these many documents were filed prior to the summary judgment having been signed by this Court?

A. I will agree with that statement.

MR. RUBACK: Thank you, sir.

No more questions, Your Honor.

THE COURT: Anything further?

Next witness?

MR. THOMPSON: Call Aaron Boone, Your Honor.

THE COURT: You can testify from there.

MR. BOONE: I'll do it.

THE COURT: Okay.

**AARON BOONE,**

was called as a witness by the Movant having been first duly sworn, testified as follows:

**DIRECT EXAMINATION**

BY MR. BOONE:

Afternoon, Judge.  First off, thank you for the courtesy of allowing me to appear before this Court.  My name is Aaron Boone.  I'm with the law firm of Bowls Rice, LLP. Our main office is in Charleston, West Virginia.  My office is in Parkersburg, West Virginia.  I graduated William Mary undergrad law school at West Virginia University.  Been practicing since 2004.

I was contacted by a partner in my office who is an estate attorney, and he had been contacted by an estate lawyer in Florida for Connie Barry.  Connie Barry is one of the heirs at law that has been -- that had been identified in the complaint filed by the trustee in West Virginia.

My office was hired to defend Connie Barry's interests in West Virginia.  In doing so it became apparent that we needed to reach out to counsel in west -- in Texas, Austin, Texas in order to address the claims that Mateo Cortez had raised, including claims that he should have jurisdiction over the heirs at law, etcetera.

So my time has been spent not only defending the

efforts in West Virginia, the efforts of Mateo to convince the West Virginia Court that he's entitled, but it's also been to assist counsel here in Texas with defending the needs of the heirs at law.

Connie Barry is my only client but her interests are aligned with the other heirs at law, therefore the work I've done has been I think beneficial to all of them. I'm the one that facilitated the meetings, the agreements and just kind of helped keep the wheels greased, you could say.

In preparation of today's motion for sanctions I have gone through all of my bills. I have -- I have pulled out any entry that was clearly related to West Virginia. Okay? To the extent there was an entry that was me talking about the West Virginia status and the Texas status I would just half that time, okay?

And so what I have for the Court's review are two statements. The first -- the first statement is for activity beginning at the inception of my assistance which was on or about December 23rd, 2015, close to the time when that West Virginia action was filed, through January 27th of 2017. Those fees totaled $45,706.99. As counsel mentioned my rate is 275. I believe that is reasonable for my services knowing West Virginia but also to the extent they've been helpful here in this Court as well.

I have also prepared a statement for essentially

the time that we spent working this case in Texas, even after Judge Waters entered very detailed findings of fact explaining why Mateo should not be entitled to take under the trust. Certainly at that point there was a very well reasoned decision explaining why Mateo really should stop his claims. And so I prepared a statement showing my fees from that moment to January 27th, 2017 and that amount is $33,915.74.

I had estimated my time since Friday through today including the travel. And that estimate, Judge, is $8,494.34. I'll mark that as Exhibit 8.

May I approach, Judge?

THE COURT: You may, sir.

MR. BOONE: Judge, Mr. Thompson did a tally for you so I'll do the same. If this Court is inclined to award -- award all the time from inception including the estimated time for this motion for sanctions, that comes up to $54,201.33. Should the Court look instead to the time spent after the motion for summary judgment was vindicated in West Virginia that amount is $42,410.08.

Judge, at this time unless there is a question about those exhibits I'd move for those admissions.

(Movant's Exhibit Nos. 6, 7 and 8 were offered into evidence.)

THE COURT: Any objection to 6, 7 and 8?

MR. RUBACK: No objections, Your Honor.

THE COURT: 6, 7 and 8 are admitted.

(Movant's Exhibit Nos. 6, 7 and 8 were admitted into evidence.)

THE COURT: And the last number you read out was 42,000 or 43,000 -- that is a combination of 7 and 8?

MR. BOONE: Yes, sir.

THE COURT: Thank you.

Anything further?

MR. BOONE: No, thank you, Judge.

THE COURT: Your witness.

## CROSS-EXAMINATION

BY MR. RUBACK:

Q. Mr. Boone, when did you first advise my clients that you believed their conduct was sanctionable?

A. I think when we had a hearing -- I think it was back in February or March there was a room full of heirs at law in West Virginia, and there was Judge Waters, there was myself, there was several other attorneys. And I -- I believe the discussion about the claims raised by Mateo Cortez, the discussion how they were without any merit at all should have given notice to the Brotherton Law Firm that these claims should not have been continued.

Q. So you did tell them you believed their claims had no merit, but did you tell them you believed that they were

sanctionable or violated Rule 13 or violated Chapter 10?

A. No, sir.

Q. And did you make clear to them that your arguments in the West Virginia courtroom applied equally to all their filings in this Texas case?

A. I'm sorry. Repeat that?

Q. You indicated that in a West Virginia courtroom you told them that their arguments that they'd been making when you were in the West Virginia courtroom were meritless. Did you make very clear to them you felt the same way about the arguments they were making in their filings in this Texas Court?

A. Not specifically.

MR. RUBACK: Thank you. No further questions, sir.

THE COURT: Do you rest?

MR. BOONE: We rest.

MR. THOMPSON: We rest, Your Honor.

THE COURT: Anything further, Counselor?

MR. RUBACK: No, Your Honor.

THE COURT: Do you rest?

MR. RUBACK: No, Your Honor.

THE COURT: Okay. The Court is going to take this matter under advisement but I am denying the motion for rehearing my previous ruling. And that is being signed today.

I'll take this matter and I'm going look at these cases and I want to consider the matter and I'll have an answer in short order. Okay? Thank you all very much.

(Hearing concluded.)

THE STATE OF TEXAS          )

COUNTY OF TRAVIS            )

        I, MELISSA VOIGT, Official Court Reporter in and for the Probate Court No. 1 of Travis County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

        I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

        I further certify that the total cost for the preparation of this Reporter's Record is $_____ and was paid by _____.

        WITNESS MY OFFICIAL HAND this the _____ day of _____, 2017.

MELISSA VOIGT, CSR #4886
Official Court Reporter
Probate Court No. 1
Travis County, Texas
1000 Guadalupe, Room 217
Austin, Texas  78701
(512) 854-9258
C.S.R. Certification No. 4886
Expires:  12/18

MELISSA VOIGT, CSR
(512) 854-9258

No. C-1-PB-16-002348

| | |
|---|---|
| MATEO CORTEZ, AS REPRESENTATIVE§<br>OF THE ESTATE OF DEBORAH CORTEZ§<br>    *Plaintiff*             §<br>                         §<br>V.                     §<br>                         §<br>SANDRA FLESHER BROWN,    §<br>CHARLOTTE FLESHER ASH,    §<br>CHARLENE FLESHER JOHSTON, §<br>CONNIE BARRY, RANDALL WAYNE §<br>DAVIS, VIRGINIA VILLERS, CHARLES §<br>ROBERTS, LISA A. SMITH, PATRICIA §<br>CHAPMAN, BETTY J. MARKS WEBB, §<br>JAMES BERL MARKS, LINDA MURRAY, §<br>THOMAS WAYNE MARKS, DONALD §<br>LEMAN WHITED, MICHAEL RAY §<br>WHITED, TERRY LEE WHITED and §<br>SHERRY LYNN WHITED SALSBURY §<br>    *Defendants*           § | IN THE PROBATE COURT NO. 1<br><br><br><br>OF<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>TRAVIS COUNTY, TEXAS |

## ORDER ON THIRD PARTY DEFENDANTS' MOTION TO MODIFY JUDGMENT TO INCLUDE SANCTIONS AWARD

On this day, the Court considered the Motion To Modify Judgment to Include Sanctions Award and the Supplement to the Motion To Modify Judgment to Include Sanctions Award (collectively the "Motion"), each filed by Third Party Defendants Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lou Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks, Donald Leman Whited, Michael Ray Whited, Terry Lee Whited and Sherry Lynn Whited Salsbury (collectively "Third Party Defendants"). Having considered the Motion, the response thereto, the admissible evidence, the other papers on file in this matter, and the arguments of counsel, the Court hereby GRANTS the Motion in part and makes the following findings and orders:

The Court finds that attorney William J. Brotherton violated Texas Civil Practices and Remedies Code Chapter 10 in signing the Original Petition in Intervention, the First Amended

1

EXHIBIT

G

Petition in Intervention and Third Party Petition, Second Amended Petition in Intervention and Third Party Petition, the Third Amended Petition in Intervention and Third Party Petition, and the Fourth Petition in Intervention filed in this matter. In particular, the Court finds that Mr. Brotherton violated Texas Civil Practices and Remedies Code § 10.001 by signing these pleadings because each of them contained the claim that Deborah Cortez was entitled to all assets from The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust") upon the death of Phyllis Short because Deborah was over the age of 35 when Ms. Short died. The Court finds that the plain language of the Trust foreclosed such a claim and that this claim was not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

The Court further finds that attorney William J. Brotherton should have known that as of September 16, 2016, his legal position regarding postponement of the trust was untenable. By maintaining that legal position in his Fourth Petition in Intervention, he caused the Third Party Defendants to incur additional attorneys' fees in responding to attorney William J. Brotherton's claim regarding postponement of the trust.

The Court hereby sanctions William J. Brotherton and the Brotherton Law Firm, jointly and severally, in the amount of $31,150.76 for fees incurred for work done by Brian Thompson and his associates at Hopper Mikeska, PLLC and $33,980.00 for fees incurred by Aaron Boone and his associate attorney at Bowles Rice, LLP, for a total of $65,130.76. The Court orders that this amount be paid to the Third Party Defendants within 30 days of the entry of this order. The Court finds that there is a direct relationship between the sanctions being imposed and Mr. Brotherton's sanctionable conduct, in that the aforesaid amount represents reasonable and necessary attorneys' fees expended by attorneys for the Third Part Defendants to defend against

2

the frivolous claims advanced by William J. Brotherton and the Brotherton Law Firm; that the sanctions are not excessive; and that these sanctions will appropriately deter other attorneys from signing pleadings containing claims that violate Texas Civil Practices and Remedies Code Chapter 10.

The Court hereby modifies its judgment entered on December 19, 2016, to include this award of sanctions.

Signed this 10th day of February, 2017.

HONORABLE JUDGE GUY HERMAN

| | |
|---|---|
| MATEO CORTEZ, AS REPRESENTATIVE§<br>OF THE ESTATE OF DEBORAH CORTEZ§<br>   *Plaintiff*             §<br>                  §<br>**V.**                  §<br>                  §<br>SANDRA FLESHER BROWN,  §<br>CHARLOTTE FLESHER ASH,  §<br>CHARLENE FLESHER JOHSTON, §<br>CONNIE BARRY, RANDALL WAYNE §<br>DAVIS, VIRGINIA VILLERS, CHARLES§<br>ROBERTS, LISA A. SMITH, PATRICIA§<br>CHAPMAN, BETTY J. MARKS WEBB, §<br>JAMES BERL MARKS, LINDA MURRAY, §<br>THOMAS WAYNE MARKS, DONALD §<br>LEMAN WHITED, MICHAEL RAY  §<br>WHITED, TERRY LEE WHITED and §<br>SHERRY LYNN WHITED SALSBURY §<br>   *Defendants*          § | IN THE PROBATE COURT NO. 1<br><br><br>OF<br><br><br><br><br><br><br><br><br><br><br><br><br><br>TRAVIS COUNTY, TEXAS |

## AMENDED FINAL JUDGMENT

On December 19, 2016, the Court considered the Traditional and No Evidence Motion for Summary Judgment (the "Motion for Summary Judgment") filed by Third Party Defendants, Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lee Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks, Donald Leman Whited, Michael Ray Whited, Terry Lee Whited and Sherry Lynn Whited Salsbury, all in their individual capacities (collectively "Third Party Defendants"), in Cause Number C-1-PB-14-001564. After considering the Motion for Summary Judgment, the response, all admissible summary judgment evidence, the arguments of counsel, and the other papers on file with the Court, the Court GRANTED the Motion for Summary Judgment in its entirety and ORDERED, that Mateo Cortez's claims against Third Party Defendants be dismissed in their entirety. In particular, the Court dismissed any and all claims that Mateo Cortez, in his individual

1

capacity or in his capacity as personal representative of the Estate of Deborah Cortez, had to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust"), other than his claim for undistributed income from the Trust during the life of Deborah Cortez.

Also on December 19, 2016, the Court considered Third Party Defendants' Motion to Sever. After considering the Motion to Sever, the response, the arguments of counsel, and the other papers on file with the Court, the Court GRANTED the Motion to Sever in its entirety and ORDERED that Mateo Corez's claims against Third Party Defendants in this lawsuit be severed in their entirety and assigned the new cause number C-1-PB-16-002348.

On January 16, 2017, Third Party Defendants filed their Motion to Modify Judgment to Include Sanctions Award (the "Motion to Modify"), which extended the plenary power of the Court to modify its judgment. The Motion to Modify was heard by the Court at a hearing on January 30, 2017. After considering the Motion to Modify, the response, the admissible evidence presented at the hearing, the response, the arguments of counsel, and the other papers on file with the Court, granted the Motion to Modify in part and granted sanctions. The Court sanctions attorney William J. Brotherton and the Brotherton Law Firm, jointly and severally, in the amount of $65,130.76, and ORDERS that this amount be paid to the Third Party Defendants within 30 days of the entry of this final judgment.

This amended judgment finally disposes of all claims and parties and is final and appealable.

Signed this 10th day of February, 2017.

HONORABLE JUDGE PRESIDING

2



600 Quarrier Street
Charleston, West Virginia 25301

101 South Queen Street
Martinsburg, West Virginia 25401

7000 Hampton Center
Morgantown, West Virginia 26505

**BowlesRice**LLP
ATTORNEYS AT LAW

501 Avery Street
Parkersburg, West Virginia 26101

Post Office Box 49
Parkersburg, West Virginia 26102
(304) 485-8500

www.bowlesrice.com

Southpointe Town Center
1800 Main Street, Suite 200
Canonsburg, Pennsylvania 15317

1217 Chapline Street
Wheeling, West Virginia 26003

480 West Jubal Early Drive, Suite 130
Winchester, Virginia 22601

February 23, 2017

Aaron C. Boone
Telephone — (304) 420-5501
Facsimile — (304) 420-5587

E-Mail Address:
aboone@bowlesrice.com

William J. Brotherton, Esquire
Brotherton Law Firm
2340 FM 407, Suite 200
Highland Village, Texas 75077

**VIA EMAIL & U. S. MAIL**

**william@brothertonlaw.com**

Re: Linda Murray v Linda Lou Murray, et al.
Civil Action No. 2:16-cv-09951
US District Court, Southern District of West Virginia

Linda Murray v. Mateo Cortez, et al.
No. C-1-PB-14-001564
Probate Court of Travis County, Texas

Mateo Cortez v. Sandra Flesher Brown, et al.
No. C-1-PB-16-002348
Probate Court of Travis County, Texas

Dear Counsel:

On February 10, 2017, Judge Guy Herman ordered you and your firm to pay $65,130.76 in legal fees, finding that the claims you filed against my client were frivolous and/or unwarranted. This decision comes on the heels of Judge Herman's January 30, 2017, refusal to reconsider his December 19, 2016, order granting judgment as a matter of law against your client, and follows Judge Robert A. Waters's September 9, 2015, order concluding that neither Mateo Cortez nor the Estate of Deborah Cortez is entitled to share in the trust:

> Because Deborah was over the age of 35 when Mrs. Short died, Cortez believes that the Trust should have immediately terminated and the entirety of the Trust assets distributed to Deborah, which Cortez would have then inherited from Deborah upon her death. ... The Court cannot, and does not, accept Mateo Cortez's reading of the Trust, which would nullify the provisions of Article VIII, Sections A-C.

**EXHIBIT
H**



(Order, 09-09-2015, Circuit Court of Wood County). In sum, courts in both Texas and West Virginia have now entered orders finding that neither the Estate of Deborah Cortez nor your client, Mateo Cortez, qualify as an heir-at-law entitled to take in the trust assets ("Trust Assets").

Nevertheless, despite these losses, your client continues to pursue civil litigation before the United States District Court for the Southern District of West Virginia, in Charleston, West Virginia, and an appeal before the Third Court of Appeals, in Austin, Texas. Undoubtedly, further litigation will cost my client, and the other heirs-at-law, significant legal fees. **The purpose of this letter to demand that Mateo Cortez and/or the Estate of Deborah Cortez immediately withdraw any and all claims to the Trust Assets.**

As you may recall, at the January 30, 2017, hearing, your counsel argued, unsuccessfully, that sanctions should not be awarded against you, in part, because I never explicitly warned you that I would file a motion for sanctions if you continued to pursue such claims. Although I (and apparently Judge Herman) disagree that a warning is necessary, I wish to now make clear that if you and/or your client, Mateo Cortez (either personally or as representative of the Estate of Deborah Cortez) do not immediately withdraw any and all claims to the Trust Assets, then I will take appropriate action to: (a) seek additional sanctions against your firm and (b) **seek sanctions against Mr. Mateo Cortez personally.**[1]

I recognize that Mateo Cortez and the Trust have pending claims against one another, including claims relating to proceeds from an asbestos settlement ("Asbestos Claims"). Nevertheless, there is no reason for Mr. Cortez, while resolving the Asbestos Claims, to continue to pursue the meritless claim that he and/or the Estate of Deborah Cortez is entitled to the Trust Assets. Accordingly, I demand that you immediately enter appropriate orders dismissing such claims in the United States District Court for the Southern District of West Virginia and in the Third Court of Appeals, in Austin, Texas. If you would like for me to prepare proposed dismissal orders, then I would be happy to do so.

Finally, as you know, Judge Herman ordered you to pay the total sum of $65,130.76 within thirty (30) days of his February 10, 2017, order. Kindly submit $31,150.76 to Hopper

---

[1] Please remember that my client's Motion for Attorney Fees and Costs is pending before the United States District Court of the Southern District of West Virginia. (Document No. 7). Additionally, please note that Rule 45 of the Texas Rules of Appellate Procedure states:

> **Rule 45: Damages for Frivolous Appeals in Civil Cases:** If the court of appeals determines that an appeal is frivolous, it may--on motion of any party or on its own initiative, after notice and a reasonable opportunity for response--award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals

Tex. R. App. P. 45



Mikeska, PLLC, and $33,980.000 to the Law Firm of Bowles Rice LLP, and Attorney Brian Thompson and I will ensure that these funds are used to appropriately reimburse the heirs at law for legal fees expended. Enclosed, please find a W-9 for the Law Firm of Hopper & Mikeska, PLLC, and a W-9 for the Law Firm of Bowles Rice, LLP.

I trust you will immediately review this letter, in its entirety, with your client, Mateo Cortez.

Sincerely,

Aaron C. Boone

ACB/ljp
Enclosures
cc:  Sean W. Hester, Esquire              sean@brothertonlaw.com
     James W. Marshall, III, Esquire      jmarshall@baileywyant.com
     H. F. Salsbery, Esquire              tsalsbery@baileywyant.com
     Andrew R. Herrick, Esquire           aherrick@baileywyant.com
     Chad M. Ruback, Esquire              chad@appeal.pro
     Robert S. Fluharty, Jr., Esquire     rsfluharty@fntlawoffices.com
     J. Nicholas Barth, Esquire           nbarth@barth-thompson.com
     Leslie L. Maze, Esquire              lesliemaze@gmail.com
     Joseph T. Santer, Esquire            jts-atty@suddenlink.net

# Request for Taxpayer
## Identification Number and Certification

Give Form to the
requester. Do not
send to the IRS.

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Hopper Mikeska, PLLC

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only one of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC    ☐ C Corporation    ☐ S Corporation    ☐ Partnership    ☐ Trust/estate

☒ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶   P

Note. For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

400 West 15th Street, Suite 408

**6** City, state, and ZIP code

Austin, TX 78701

Requester's name and address (optional)

**7** List account number(s) here (optional)

*Print or type*
*See Specific Instructions on page 2.*

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

Note. If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number

☐☐☐ - ☐☐ - ☐☐☐☐

or

Employer identification number

4 5 - 4 4 6 8 9 7 3

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**    Signature of U.S. person ▶ *Aliana H. Mikeska*    Date ▶ 6-29-2015

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

### Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

- Form 1099-INT (interest earned or paid)
- Form 1099-DIV (dividends, including those from stocks or mutual funds)
- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)
- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

# Request for Taxpayer
## Identification Number and Certification

Give Form to the
requester. Do not
send to the IRS.

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Bowles Rice, LLP

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only one of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC  ☐ C Corporation  ☐ S Corporation  ☑ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

Note. For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

(Applies to accounts maintained outside the U.S.)

**5** Address (number, street, and apt. or suite no.)

P.O. Box 1386

**6** City, state, and ZIP code

Charleston, West Virginia  25325-1386

Requester's name and address (optional)

**7** List account number(s) here (optional)

*Print or type*
*See Specific Instructions on page 2.*

## Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

Note. If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

| Social security number |
| --- |
| ☐☐☐ - ☐☐ - ☐☐☐☐ |

**or**

| Employer identification number |
| --- |
| 5 5 - 0 3 9 4 1 8 6 |

## Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

| Sign Here | Signature of U.S. person ▶ *Kathy House* | Date ▶ 1/3/2017 |
| --- | --- | --- |

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

### Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding?* on page 2.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

# BROTHERTON LAW FIRM

### ATTORNEYS AND COUNSELORS AT LAW

2340 FM 407, SUITE 200
HIGHLAND VILLAGE, TEXAS 75077
TELEPHONE: 972-317-8700
FACSIMILE: 972-317-0189

WILLIAM J. BROTHERTON                                                william@brothertonlaw.com

March 1, 2017

**Via E-mail to aboone@bowlesrice.com**

Aaron C. Boone
Bowles Rice L.L.P.
United Square, Fifth Floor
501 Avery Street
Parkersburg, WV 26101

RE:   Cause No. C-1-PB-14-001564; *Linda Murray, Successor Trustee and on Behalf of the William D. Short and Phyllis D. Short Revocable Living Trust including the Credit Shelter Trust Created Therein v. Mateo Cortez and Wells Fargo Bank, NA.*

Civil Action No. 2:16-cv-09951; *Linda Murray v. Linda Lou Murray, et al.*

Cause No. C-1-PB-16-002348; *Cortez v. Brown et al.*

Dear Mr. Boone:

We are in receipt of your letter dated February 23, 2017, in which your clients make the demand that our client withdraws all of his claims to the Trust or your client will file additional sanctions. We now respond to such demand.

First, the orders that your clients reference are not final orders. We completely disagree with both orders as both orders are riddled with errors and inaccuracies. We stand firm that the plain and clear language of the Trust entitled Deborah Cortez to receive all funds of the Trust during her lifetime; therefore, a claim from the Estate was filed. Until recently, there seemed to be some confusion regarding your clients' understanding of our claims, which is reflected in both summary judgment motions and orders in the two Courts. We do not believe either of the summary judgments will stand on appeal.

Second, our client will not simply waive the right to an appeal on such erroneous rulings. We will be taking the appropriate steps to proceed with correcting the errors in the trial court; however, we are prepared to appeal if the trial court refuses to correct the errors. Since you, your clients, and Mr. Thompson have made this personal, you have left us with no choice but to appeal the excessive and baseless sanctions order. We clearly met our burden



EXHIBIT

I

regarding the sanctions, but it has been made clear by Mr. Thompson that he uses sanctions as a tactic in litigation and has been allowed to do so in the Travis County Courts. We believe that this tactic is a threat to all lawyers who practice in good faith in Texas and that it is a serious violation of public policy. It will absolutely be appealed.

Third, your letter seems to indicate that you want us to enter orders dismissing claims in the United States District Court for the Southern District of West Virginia as well. We have no claims in West Virginia. A review of the Court's record would clearly demonstrate that Linda Murray filed that suit – just as she initiated the Texas litigation. However, if you would like to do a joint dismissal in West Virginia and adhere to the Texas Courts' jurisdiction, we would be happy to consider such. Please feel free to draft the agreed dismissal for our review.

Lastly, as stated above, we will be proceeding forward. At such time that the orders become final, we will be superseding the judgment during the appeal.

Very truly yours,

**William J. Brotherton**

WJB/ab

cc:    Brian Thompson (via email: bthompson@hoppermikeska.com)
James W. Marshall, III (via email: jmarshal@baileywyant.com)
H.F. Salsbery (via email: tsalsbery@baileywyant.com)
Andrew R. Herrick (via email: aherrick@baileywyant.com)
Chad M. Ruback (via email: chad@appeal.pro)
Robert S. Fluharty (via email: rsfluharty@fntlawoffices.com)
J. Nicholas Barth (via email: nbarth@barth-thompson.com)
Leslie L. Maze (via email: lesliemaze@gmail.com)
Joseph T. Santer (via email: jts-atty@suddenlink.net)
Hamp Skelton (via email: hskelton@skeltonwoody.com)
Mark Cohen (via email: mark@cohenlegalservices.com)
Rose Cohen (via email: rose@cohenlegalservices.com)
Client

600 Quarrier Street
Charleston, West Virginia 25301

101 South Queen Street
Martinsburg, West Virginia 25401

7000 Hampton Center
Morgantown, West Virginia 26505



**BowlesRice**ₗₗₚ
ATTORNEYS AT LAW

501 Avery Street
Parkersburg, West Virginia 26101

Post Office Box 49
Parkersburg, West Virginia 26102
(304) 485-8500

www.bowlesrice.com

Southpointe Town Center
1800 Main Street, Suite 200
Canonsburg, Pennsylvania 15317

1217 Chapline Street
Wheeling, West Virginia 26003

480 West Jubal Early Drive, Suite 130
Winchester, Virginia 22601

June 26, 2017

Aaron C. Boone
Telephone — (304) 420-5501
Facsimile — (304) 420-5587

E-Mail Address:
aboone@bowlesrice.com

James W. Marshall, III
Michael W. Taylor
BAILEY & WYANT, PLLC
500 Virginia Street East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
jmarshall@baileywyant.com

**VIA E-MAIL AND FAX**

William J. Brotherton
Shawn M. Brotherton
BROTHERTON LAW FIRM
2340 FM 407, Suite 200
Highland Village, Texas 75077
william@brothertonlaw.com
shawn@brothertonlaw.com

     Re:  SANCTIONS NOTICE
           Linda Murray, as Successor Trustee of the William D. Short and Phyllis D.
           Short Revocable Living Trust Dated April 30, 1991 v. Linda Lou Murray *et al.*
           Civil Action No. 15-C-28, Circuit Court of Wirt County, West Virginia

Ladies & Gentlemen:

        The purpose of this letter is to put you and your client on notice that my client intends to seek sanctions pursuant to Rule 11 of the West Virginia Rules of Civil Procedure, or pursuant to the Court's inherent authority to sanction bad faith litigation conduct, unless your client immediately ceases and desists from continuing to pursue claims to the William D. Short and Phyllis D. Short Revocable Living Trust Dated April 30, 1991, either in his personal capacity or by proxy through "the Estate of Deborah Cortez."

        The terms of the Trust instrument are crystal clear, and have been ruled upon as a matter of law by both the Circuit Court of Wirt County, West Virginia and the Probate Court of Travis



**EXHIBIT**

**J**

 
County, Texas. The plain language of the Trust instrument makes no provision for your client. Your client has no claim to the Trust, either in his personal capacity or as representative of "the Estate of Deborah Cortez." Your client's claims to the contrary lack any basis in the Trust instrument or support under the law, and have already been sanctioned in Texas. Unless your client withdraws his frivolous pleadings, my client will seek the same sanctions in West Virginia.

The Circuit Court of Wirt County, West Virginia granted summary judgment against your client on September 15, 2016. The Probate Court of Travis County, Texas followed suit on December 19, 2016. Both courts rejected your client's claims, and pursuant to the parties' Rule 11 Agreement you are bound to abide by those rulings. Nonetheless, you continue to file frivolous pleadings in West Virginia, with the admitted purpose of obstructing the Court's resolution of the Trustee's motion for summary judgment. Moreover, it is clear that your client is intentionally driving up the cost of this litigation to retaliate against the Trustee and the Trust's rightful beneficiaries.

The course of action you are pursuing in West Virginia has already been found by the Texas court to be frivolous as a matter of law. Moreover, there is sufficient evidence to make a compelling case to the Court that your client's continued pursuit of this matter is being conducted in bad faith. If your client is unwilling to do the right thing and dismiss his frivolous claims to the Trust, then my client has authorized me to aggressively pursue sanctions against you for facilitating his wrongful conduct.

This matter is set for hearing tomorrow in the Circuit Court of Wirt County, West Virginia. I strongly urge your client to immediately cease his frivolous and futile pursuit of the Trust, and to dismiss his claims with prejudice at tomorrow's hearing.

Sincerely,

A. C. Boone

Aaron C. Boone

ACB/ljp
Enclosures

IN TH[...]

LINDA MURRAY, i[...]
as Successor Trustee o[...]
and Phyllis D. Short Re[...]
Dated April 30, 1991,

Plaintiff,

v.

LINDA LOU MURRAY, e[...]

Defendants.

The undersigned,
that on the 27th day of July 201[...]

**CONNIE LOU KEITH BARRY'**[...]

**SUPPORT OF DEFENDANT** [...]

**SANCTIONS** upon counsel of recor[...]

States Mail, postage prepaid, addressed[...]

Robert S. Fluharty, Jr., Esquire
Fluharty & Townsend
417 Grand Park Drive, Suite 101
Parkersburg, WV 26105

J. Nicholas Barth, Esquire
Barth & Thompson
202 Berkley Street
Charleston, WV 26321

Leslie L. Maze, Esquire
Post Office Box 279
Elizabeth, WV 26143

IN THE CIRCUIT COURT OF WIRT COUNTY, WEST VIRGINIA

LINDA MURRAY, in Her Capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short Revocable Living Trust
Dated April 30, 1991,

        Plaintiff,

v.

LINDA LOU MURRAY, et al.,

        Defendants.

CIVIL ACTION NO. 15-C-28
JUDGE WATERS

**CERTIFICATE OF SERVICE**

The undersigned, counsel for Defendant Connie Lou Keith Barry, hereby certifies that on the 27th day of July 2017, he served the foregoing and hereto annexed **DEFENDANT CONNIE LOU KEITH BARRY'S MOTION FOR SANCTIONS** and **MEMORANDUM IN SUPPORT OF DEFENDANT CONNIE LOU KEITH BARRY'S MOTION FOR SANCTIONS** upon counsel of record and pro se parties by depositing the same in the United States Mail, postage prepaid, addressed to:

Robert S. Fluharty, Jr., Esquire
Fluharty & Townsend
417 Grand Park Drive, Suite 101
Parkersburg, WV 26105

J. Nicholas Barth, Esquire
Barth & Thompson
202 Berkley Street
Charleston, WV 26321

Leslie L. Maze, Esquire
Post Office Box 279
Elizabeth, WV 26143

James W. Marshall, III, Esquire
H. F. Salsbery, Esquire
Michael W. Taylor, Esquire
Bailey & Wyant, PLLC
500 Virginia Street East, Suite 600
Post Office Box 3710
Charleston, WV 25337-3710

William J. Brotherton, Esquire
Shawn M. Brotherton, Esquire
Brotherton Law Firm
2340 FM 407, Suite 200
Highland Village, Texas 75077

Joseph T. Santer, Esquire
Santer and Santer
Post Office Box 306
Parkersburg, WV 26102

Linda Lou Murray
197 Oakbrook Drive
Mineral Wells, WV 26150

Sandra Kay Flesher Brown
99 Woodridge Drive
Mineral Wells, WV 26150

Charlene Rae Flesher Johnston
Post Office Box 793
Elizabeth, WV 26143

Charlotte Fae Flesher Ash
8653 White Swan Drive #104
Tampa, FL 33614

Virginia Ann Roberts Villers
28649 Alessandria Circle
Bonita Springs, FL 34135

Charles Bruce Roberts, Jr.
487 Wilson Fork
Elizabeth, WV 26143

Lisa Ann Rader Smith
Post Office Box 717
Elizabeth, WV 26143

Patricia Ann Marks Chapman
2670 Pettyville Road
Parkersburg, WV 26101

James Berl Marks
1093 S. Pleasant Hill Road
Belleville, WV 26133

Thomas Wayne Marks
749 S. Long Run Road
Belleville, WV 26133

Betty J. Webb
280 Bethel Road
Parkersburg, WV 26101

Randall Wayne Davis
1663 Brookford Road
Kernersville, NC 27284

Magen Elizabeth Whited
164 Joe Shore Drive
Ravenswood, WV 26164

A. C. Boone
Aaron C. Boone

9105878.1

# IN THE CIRCUIT COURT OF WIRT COUNTY, WEST VIRGINIA

LINDA MURRAY, in Her Capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short Revocable Living Trust
Dated April 30, 1991,

        Plaintiff,

v.

                                          CIVIL ACTION NO. 15-C-28
                                          JUDGE WATERS

LINDA LOU MURRAY, et al.,

        Defendants.

## ORDER SETTING SHOW CAUSE HEARING ON ISSUE OF SANCTIONS

ON A PREVIOUS DAY came Defendant Connie Lou Keith Barry ("Mrs. Barry"), by counsel, upon *Defendant Connie Lou Keith Berry's Motion for Sanctions* pursuant to this Court's equitable power to sanction bad faith, vexatious, wanton, or oppressive litigation conduct articulated in Syllabus Point 3, *Sally-Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986).

The Court has reviewed Mrs. Barry's Motion and FINDS that the Motion is in proper form and presents a genuine issue as to whether Mateo Cortez, individually and in his capacity as the Personal Representative of the Estate of Deborah Cortez (collectively, "Cortez"), or his counsel, should be sanctioned for prosecuting frivolous claims for improper, abusive, or harassing purposes.

Accordingly, the Court ORDERS Mateo Cortez; and his counsel, attorneys James W. Marshall, III, H.F. Salsbery, Michael W. Taylor, William J. Brotherton (*pro hac vice*), and

Shawn M. Brotherton (*pro hac vice*) to appear and show good cause as to why sanctions should not issue and to be heard on the issue of appropriate sanctions to be imposed.

The Court FURTHER ORDERS that this matter be set down for hearing on the ___ day of _____ 201__, at the hour of ____ ___.m. at the Wood County Judicial Building, #2 Government Square, Parkersburg, West Virginia to take testimony and hear argument upon the issues identified in Mrs. Barry's Motion, following which the Court shall rule by separate Order.

The Clerk is directed to enter this Order as of the date set forth below and send attested copies to counsel of record.

ENTER this ____ day of _____ 2017.

_____
Robert A. Waters, Judge

Prepared and submitted by:

*A. C. Boon*
_____
Aaron C. Boone (9479)
Counsel for Defendant Connie Lou Keith Barry

2

9105880.1

APPENDIX H

IN THE CIRCUIT COURT OF WIRT COUNTY, WEST VIRGINIA

LINDA MURRAY, in Her Capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short Revocable Living Trust
Dated April 30, 1991,

        Plaintiff,

v.                                        CIVIL ACTION NO. 15-C-28
                                              JUDGE WATERS

LINDA LOU MURRAY, et al.,

        Defendants.

## ORDER DENYING DEFENDANT MATEO CORTEZ'S
## MOTION TO ALTER OR AMEND

On June 27, 2017, this Court conducted a hearing on Mateo Coretz's *Motion to Alter or Amend* (the "Motion to Alter"). After considering the Motion to Alter, the response of Defendant Connie Barry, the response of the Trustee, the arguments of counsel, and the record, this Court hereby DENIES the Motion to Alter for the reasons stated on the record and more fully below.

### Procedural Posture

1. On April 11, 2016, Defendant Connie Lou Keith Barry ("Defendant Barry"), by her counsel, filed a *Motion for Partial Summary Judgment* ("Motion for Partial Summary Judgment").

2. On September 15, 2016, this Court entered its *Order Granting Motion for Partial Summary Judgment* ("Order"), concluding that Defendant Mateo Cortez ("Defendant Cortez" or "Mateo Cortez") is not a legal beneficiary of the "William D. Short and Phyllis D. Short Revocable Living Family Trust Dated April 30, 1991," as amended and restated by the "Second

FILED
Circuit Court
Date 8-19-17
CLERK C/-

Amendment and Restatement of The William D. Short and Phyllis D. Short Revocable Living Trust" dated January 5, 2000 (collectively, the "Trust"), and, as a matter of law, is not entitled to any portion of said Trust and is not entitled to share in the distribution of any of the Trust assets.

3. On September 29, 2016, Mateo Cortez filed his Motion to Alter, asking the court to reconsider its decision to enter judgment against Mateo Cortez.

4. On October 19, 2016, Defendant Barry filed her Notice of Hearing, setting the Motion to Alter for a hearing before this Court on November 3, 2016.

5. On October 21, 2016, Mateo Cortez filed his Notice of Removal, removing this case to the United States District Court for the Southern District of West Virginia ("Federal Court").

6. On April 10, 2017, the Federal Court entered its order remanding this case to the Circuit Court of Wirt County, West Virginia.

7. On April 27, 2017, Defendant Barry filed her Notice of Hearing, setting the Motion to Alter for a hearing before this Court on June 27, 2017.

8. On June 22, 2017, Trustee Linda Murray filed her Response in opposition to Mateo Cortez's Motion to Alter.

9. On June 27, 2017, this Court convened to consider arguments relating to the Motion to Alter.

2

## Findings of Fact & Conclusions of Law

10. "Under Rule 59(e), the reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Mey v. Pep Boys-Manny, Moe & Jack*, 228 W.Va. 48, 717 S.E.2d 235 (2011).

11. "[B]ecause of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied." *Woodrum v. Thomas Mem. Hosp. Found.*, 186 F.R.D. 350, 351 (S.D.W.Va. 1999) (quoting 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2810.1 (2d ed. 1995)).[1]

12. "[M]ere disagreement does not support a Rule 59(e) motion." *Doe v. Kanawha County Bd. of Educ.*, No. 05-C-355, 2008 WL 5520095 (W.Va. Cir. Ct. Mar. 3, 2008). "A Rule 59(e) motion is not intended to allow for reargument of the very issues that the court has previously decided ... nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *East Sussex Children Services v. Morris*, No. 3:12-CV-141, 2013 WL 704660, at *3 (N.D.W.Va. Feb. 27, 2013).

13. "A motion under Rule 59(e) of the *West Virginia Rules of Civil Procedure* should be granted where: (1) there is an intervening change in controlling law; (2) new evidence not previously available comes to light; (3) it becomes necessary to remedy a clear error of law or

---

[1] "Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases . . . in determining the meaning and scope of our rules." *Painter v. Peavy*, 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 758 n. 6 (1994) (citations omitted). *Cf. Mey v. Pep Boys-Manny, Moe & Jack*, 228 W.Va. 48, 57, 717 S.E.2d 235, 244 (2011) (citing federal cases as to the meaning and scope of Rule 59(e), and observing in footnote 10 that the only difference between the West Virginia and federal rule is the time period to file a motion).

(4) to prevent obvious injustice." *Syl. Point 2. Mey v. Pep Boys-Manny, Moe & Jack*, 228 W. Va. 48, 50, 717 S.E.2d 235, 237 (2011).

*First Prong under Rule 59(e)*
*Mateo Cortez Identifies No Intervening Change in Law*

14. As it relates to the first prong under Rule 59(e), "intervening change in controlling law", Defendant Cortez identifies no intervening change in controlling law in either his Motion to Alter filed on September 29, 2016, or his oral arguments presented on June 27, 2017. As such, this Court CONCLUDES that it cannot alter or modify the subject Order based upon any alleged intervening change in law.

*Second Prong under Rule 59(e)*
*Mateo Cortez Identifies No New Evidence*

15. As it relates to the second prong under Rule 59(e), "new evidence", Defendant Cortez identifies no new evidence in either his Motion to Alter or his oral arguments; as such, this Court CONCLUDES that it cannot alter or modify the subject Order based upon this provision under Rule 59(e).

*Third Prong under Rule 59(e)*
*Mateo Cortez Fails to Demonstrate this Court Committed Any Clear Error of Law*

16. As it relates to the third prong under Rule 59(e), "clear error of law", Mateo Cortez proffers several arguments to suggest that this Court committed clear error. First, Mateo Cortez argues that this Court improperly refused to dismiss and/or abstain from adjudicating the Complaint. Second, Mateo Cortez argues this Court incorrectly concluded that Mateo Cortez and/or the Estate of Deborah Cortez is not a beneficiary under the Trust.

4

17. As it relates to the first alleged "clear error", namely refusal to dismiss and/or abstain, this Court CONCLUDES that this argument fails for several reasons:

a. First, the issue of whether this Court must abstain and/or defer to Texas has been fully vetted by both this Court and the Supreme Court of Appeals of West Virginia. Nothing presented by Mateo Cortez has persuaded this Court to veer from its earlier determination (and/or from the Supreme Court of Appeals of West Virginia's ruling), that the Circuit Court of Wirt County is permitted to address the issues presented in the Complaint, including, but not limited to, the critical issue of who does and does not qualify as a beneficiary under the Trust.

b. Second, in further support of Mateo Cortez's argument that this Court has committed clear error in refusing to defer to Texas, Mateo Cortez argues that circumstances have changed, ameliorating in favor of Texas now serving as the sole arbiter.

i. Specifically, Mateo Cortez argues that, when this Court decided on March 16, 2016, to retain sole jurisdiction over this Complaint, this Court did so because Texas did not have jurisdiction over the numerous individuals identified in the Complaint. Mateo Cortez further argues that, subsequent to this Court's March 16, 2016, Order denying Mateo's Motion to Dismiss per Rule 12(b), and subsequent to this Court's September 15, 2016 Order granting Connie Barry's Motion for Partial Summary Judgment, the Probate Court of Travis County, Texas, acquired jurisdiction over the heirs-at-law; as such, Mateo Cortez reasons, this Court should rescind its

5

prior order granting summary judgment in favor of Connie Barry, dismiss and/or stay this action, and let the Probate Court of Travis County, Texas, handle this case.

ii.   However, this Court notes that, although the Probate Court of Travis County, Texas, did, for a period of time, obtain jurisdiction over many of the individuals identified in the Complaint, the Probate Court's plenary power in that action has now expired, meaning it no longer has jurisdiction over said individuals.

iii.   Regardless, the decision of this Court to retain jurisdiction was never solely predicated on whether the Probate County Court of Travis County, Texas, had jurisdiction over all the individuals identified the Complaint. Rather, this Court retained jurisdiction due to multiple factors that weighed in favor of retaining jurisdiction and that continue to weigh in favor of maintaining jurisdiction; those factors include, but are not limited to:

a)   West Virginia has jurisdiction over the real property interests contained in the Trust.

b)   While it might be less convenient for Defendant Cortez to proceed in West Virginia, it does not work a substantial injustice to him to require him to adjudicate the distribution of the Trust Assets where the majority of the potential beneficiaries reside

6

and where the Trust is actually administered, as required by the Trust instruments themselves.

c) The fact that the Trustee filed a tort action in Texas to stop misappropriation of the Trust Assets does *not* mean that the Trustee specifically availed herself of a Texas forum for any aspect of the Trust's administration.

d) Plaintiff Linda Murray is a resident of West Virginia, and administers the Trust from West Virginia. The situs of the Trust is located in West Virginia.

e) The fact that the Estates of William and Phyllis Short were probated in Texas, or that the Estate of Deborah Cortez is located in Texas, is entirely irrelevant because the Trust is not part of any of those Estates.

c. Finally, although not dispositive, another reason to support this Court's conclusion that no "clear error" has been made with respect to its decision to retain jurisdiction, this Court recognizes that its distinguished peer in Texas, the Hon. Guy Herman, Judge, chose not to preclude, interrupt, or even object to West Virginia handling this case. At a December 18, 2015, hearing in the Probate Court of Travis County, Texas, which occurred over a month after the Trustee initiated this action on November 20, 2015, the following verbal exchange occurred between Judge Herman and Counsel:

7

THE COURT: I'm not going to prohibit them from proceeding, I'm not going order (sic) them to dismiss in West Virginia. You all can go to West Virginia and argue.

MR. BROTHERTON: The problem is of course, Your Honor, is our guy has limited funds and –

THE COURT: But he's got good lawyers, so – who are looking at an opportunity if you're right of getting five million dollars.

MR. COHEN: Yeah.

THE COURT: I'm sure that you can ---

MR. COHEN: Should have signed a contingent fee.

THE COURT: --- make your way to West Virginia.

(Exhibit C to Defendant's Response, Transcript of hearing of December 17, 2015, the Honorable Guy Herman, Judge, Travis County Probate Court, Travis County, Texas, Trial Court Cause No. C-1-PB-14-001564.)

18.     As it relates to the second alleged "clear error", namely that this Court incorrectly concluded that neither Mateo Cortez nor the Estate of Deborah Cortez are beneficiaries of the Trust, this Court CONCLUDES that this argument fails for several reasons:

a.     At the outset, it is important to note that Mateo Cortez has proffered multiple theories (at different stages in this case) in support of his singular claim that he, as the sole heir to the Estate of his deceased-spouse Deborah Cortez, is the sole beneficiary of the assets of the Trust.

i.     First Theory: In his May 9, 2016, *Response to Connie Barry's Motion for Summary Judgment,* Mateo Cortez argues that the "Postponement of Possession," "Termination" paragraph under Article VIII, Section D, Subsection 2 supports his claim.

8

ii.     Second Theory:   In his September 29, 2016, *Motion to Amend or Alter*, he argues that the "Alternate Distribution" paragraph under Article VIII, Section C supports his claim.

iii.     Third Theory:   During the June 27, 2017, hearing, he indicated he intends to argue (before the Probate Court of Travis County, Texas) that the "Specific Distribution," "Cash Distribution to Deborah" paragraph under Article VIII, Section A, Subsection 2 supports his claim.

b.     Furthermore, it is important to note that no one disputes that the subject Trust is the legitimate, applicable, and controlling document expressing the settlors' intent with respect to the Trust Assets.  Additionally, there is no dispute that, at all times pertinent, the Trust has been known to Mateo Cortez and his counsel.  Finally, there is no dispute that the Trust is unambiguous:

> Defendant Barry is correct in that Mr. Cortez is not an heir at law and correct in that the Trust expresses the true intent of the parties and unambiguous language.  Defendant Barry is incorrect, however, in deducing what the meaning of the plain and unambiguous language is.

*(Defendant Mateo Cortez's Response to Defendant Connie Lou Keith Barry's Motion for Partial Summary Judgment, p. 7.)*

As such, this Court sees no reason why Mateo Cortez could not have proffered any and all theories to support his singular claim prior to entry of this Court's decision to grant partial summary judgment in favor of Connie Barry and against Mateo Cortez on September 15, 2016.

9

a. Notwithstanding, this Court CONCLUDES that no theory expressed by Mateo Cortez could support his singular claim that he, as the sole heir to the Estate of his deceased-spouse Deborah Cortez, is the sole beneficiary of the assets of the Trust:

i. As it relates to Mateo Cortez's first theory, this Court has already explained why the "Postponement of Possession," "Termination" provision of the Trust does not support Mateo Cortez's claim. (Order Granting Partial Summary Judgment, p. 8). In his Motion to Amend or Alter, Mateo Cortez proffers no argument as to why this Court's decision regarding the Postponement Provision qualifies as clear error.

ii. As it relates to Mateo Cortez's second theory, this Court adopts the rationale espoused in the response of Connie Barry, namely that the determination of who qualifies as an "heir-at-law", within the "Alternate Distribution" paragraph under Article VIII, Section C, inherently includes only those then-living at the time of the Deborah Cortez's death. Accordingly, neither Mateo Cortez, nor the Estate of Deborah Cortez qualify, as an heir-at-law within the "Alternate Distribution" paragraph under Article VIII, Section C. To conclude otherwise would render the Trust nonsensical and would run contrary to the clear intent of the settlors. Moreover, Mateo Cortez admitted in his response to the motion for summary judgment that he was not an heir at law of either settlor.

10

iii.  Additionally, although not dispositive, this Court recognizes that not only has it concluded that neither Mateo Cortez nor the Estate of Deborah Cortez are beneficiaries under the trust, but the Texas Court has also concluded that neither Cortez nor the Estate of Deborah Cortez are beneficiaries:

> It is therefore, ORDERED, that Mateo Cortez's claims against Third Party Defendants in this lawsuit are dismissed in their entirety. In particular, ***the Court hereby dismisses any and all claims that Mateo Cortez, in his individual capacity or in his capacity as personal representative of the Estate of Deborah Cortez***, has to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust"), other than his claim for undistributed income from the Trust during the life of Deborah Cortez.

(**Exhibit B**, *Order Granting Third Party Defendants' Traditional and No Evidence Motion for Summary Judgment*, Civil Action No. C-1-OB-14-1564 (Tex. Probate Ct. Dec. 19, 2016) (emphasis added).[2]

iv.  Finally, as it relates to Mateo Cortez's third theory, this Court finds that regardless of whatever new and/or novel theory Mateo Cortez would seek to proffer, this Court has already determined, and today reaffirms, its conclusion that the Trust is unambiguous and clearly expresses the intent of the settlors that, upon the death of Deborah Short, the Trustee should distribute 1/2 of the remaining Trust Assets to the then-living heirs of William D. Short and 1/2 to then-living heirs of Phyllis D. Short.

---

[2] The Texas court subsequently amended its judgment to include monetary sanctions against Mateo Cortez's attorneys, finding that the arguments which Mateo Cortez advanced in Texas were frivolous and were not warranted by existing law; the extension, modification, or reversal of existing law; or the establishment of new law. The Texas court sanctioned Mateo Cortez's attorneys in the amount of $65,130.76 for driving up Defendant Barry's legal fees in Texas with frivolous claims.

11

*Fourth Prong under Rule 59(e)*
*Mateo Cortez fails to demonstrate that*
*"Manifest Injustice" would occur if this Court denies his Motion to Amend or Alter*

19.    Lastly, in his motion, Mateo Cortez suggests that manifest injustice would occur in denying his Motion to Amend, in part, because the Estate of Deborah Cortez is not a party to the lawsuit. Mateo Cortez failed to present this argument prior to judgment and therefore waived it. *See* W.Va. R. Civ. P. 12(h) (defenses other than lack of subject matter jurisdiction are waived unless raised prior to judgment). The Court also notes its prior rulings that the Estate of Deborah Cortez has no interest in the Trust or the Trust assets, and therefore is neither necessary nor indispensable to this action.

20.    Moreover, this Court finds that the applicant was adequately represented by Mateo Cortez, who is the administrator and sole heir of the Estate of Deborah Cortez.

a.    As to adequacy of representation by existing parties, "generally courts compare the interests asserted by the proposed intervenor with the interests of the existing party. If the proposed intervenor's interest is not represented by the existing party, or the existing party's interests are adverse to those of the proposed intervenor, intervention should be granted. ... [However], if the interests are identical, intervention should be denied unless there is a compelling showing as to why the existing representation is inadequate." *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 403, 540 S.E.2d 917, 927 (1999) (internal citations omitted).

b.    Mateo Cortez, in both his personal capacity and in his capacity as the Personal Representative of the Estate of Deborah Cortez, have identical interests in this action: both seek an order directing that all the assets of the Trust

12

be distributed to Mateo Cortez, either through direct distribution to Mateo Cortez personally or indirectly through distribution to the Estate of Deborah Cortez, which then flows through to Mateo Cortez personally as its sole heir. This identity of interest is clear from the undisputed fact that Mateo Cortez controls every decision made on behalf of the Estate of Deborah Cortez, and is the only heir and beneficiary of the estate.

c.     Additionally, Mateo Cortez's attorneys represent him in both his individual capacity and in his capacity as the Personal Representative of the Estate of Deborah Cortez, which would violate the West Virginia Rules of Professional Conduct if their interests were adverse in any way. *See* W.Va. R. Prof. Conduct § 1.7 (simultaneous representation of adverse parties in litigation is a non-waivable conflict of interest).

21.     Accordingly, this Court CONCLUDES that manifest injustice would NOT occur by denying the Motion to Amend because (as Mateo Cortez argues), the Estate of Deborah Cortez is not a party to this action.

## Ruling

For the reasons set forth above, and as stated more fully upon the record, this Court DENIES the motion to amend or alter filed by Mateo Cortez.

The Court notes that Defendant Connie Lou Keith Barry has filed a motion for sanctions against Mateo Cortez, in either his personal capacity or in his capacity as the Personal Representative of the Estate of Deborah Cortez, and his attorneys. The Court's ruling in this Order does not address, moot, or otherwise resolve that motion.

13

This Court ORDERS the Clerk to forward certified copies of this Order to all counsel of record and pro se parties.

ENTER _September 19, 2017_

_Robert A. Waters, Judge_

PREPARED BY:

_A.C. Boone_

Aaron C. Boone (9479)
Counsel for Defendant Connie Lou Keith Barry

I hereby certify that the foregoing is a true and correct copy of the original entry on file in my office
ATTEST: Carol Frame
Circuit Clerk-Wirt County, WV

Date _9-19-17_

APPROVED FOR ENTRY:

_RS Fluharty by ACBm_ [per email authorization 7/17/17]
Robert S. Fluharty, Jr. (1220)
J. Nicholas Barth (255)
Counsel for Plaintiff

_LL Maze by ACBoon_ [per email authorization 7/14/17]
Leslie L. Maze (8072)
Counsel for Defendants Donald Leaman Whited, Michael Ray Whited, Sheila Pettrey, Tywanna Pettrey, Amanda Pettrey, Terry Lee Whited, and Sherry Lynn Whited Salsbury

_J J Santer by ACBoon_ [per email authorization 7/15/17]
Joseph T. Santer (3252)
Guardian ad litem for unknown defendants

14

_____
Shawn M. Brotherton, admitted pro hac vice
Michael W. Taylor (11715)
James W. Marshall, III (10677)
Counsel for Mateo Cortez

9072845.1

APPENDIX I

IN THE CIRCUIT COURT OF WIRT COUNTY, WEST VIRGINIA

LINDA MURRAY, in Her Capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short Revocable Living Trust
Dated April 30, 1991,

        Plaintiff,

v.

LINDA LOU MURRAY, et al.,

        Defendants.

CIVIL ACTION NO. 15-C-28
JUDGE WATERS

## ORDER DENYING MOTION TO DISMISS

On June 27, 2017, this Court conducted a hearing on *Defendant Mateo Cortez's Motion to Dismiss* (the "Motion"). After considering the Motion, the response of defendant Connie Barry, the response of the Trustee, the arguments of counsel, and the record, this Court hereby DENIES the Motion for the reasons stated on the record and more fully below.

### Procedural Posture

1.     On June 12, 2017, Defendant Mateo Cortez filed *Defendant Mateo Cortez's Motion to Dismiss and Memorandum of Law in Support Thereof* (the "Motion"), requesting that the Court dismiss this action pursuant to Rule 12(b) of the West Virginia Rules of Civil Procedure. Mateo Cortez argues that this action should be dismissed because there is a previously-filed action pending in Texas on the same subject matter between the same parties, and as a result the Texas court has exclusive jurisdiction.

2.     On June 22, 2017, Plaintiff Linda Murray, in her capacity as Successor Trustee of the Trust (the "Trustee"), filed a response in opposition to the Motion. On June 23,

FILED
Circuit Court
Date 9-19-17
CLERK CF.

2017, Defendant Connie Lou Keith Barry ("Barry"), filed a response in opposition to the Motion and a request for sanctions. On June 27, 2017, the Court conducted a hearing on the Motion and other matters. The Court has reviewed the Motion, supporting memorandum and exhibits, the Trustee and Barry's responses and supporting exhibits, the Trust instrument, and entertained the arguments of the parties. The Court has also reviewed the entire record in this matter as part of its consideration of this Motion and the other matters pending before it.

## Findings of Fact & Conclusions of Law

3. This action involves the proper distribution of the assets of the "William D. Short and Phyllis D. Short Revocable Living Family Trust Dated April 30, 1991," as amended and restated by the "Second Amendment and Restatement of The William D. Short and Phyllis D. Short Revocable Living Trust" dated January 5, 2000 (collectively, the "Trust").

4. This Court recognizes that, prior to instituting this action in Wirt County, West Virginia, the Trustee asserted a claim in Texas.

    a. On August 28, 2014, the Trustee filed an action against Mateo Cortez in the Probate Court of Travis County, Texas, alleging that Mateo Cortez conspired to misappropriate funds from the Trust.

    b. On June 30, 2015, Mateo Cortez filed a petition in intervention within the Trustee's misappropriation action in Texas, seeking a declaratory judgment that Deborah Cortez was entitled to all of the Trust assets during her life, and an order directing the Trustee to distribute the remaining Trust assets to the Estate of Deborah Cortez.

2

c.    On November 16, 2015, the Trustee filed a motion for summary judgment in Texas, arguing that Mateo Cortez filed his petition in intervention solely to avoid liability on the Trustee's misappropriation claim.

5.    On November 20, 2015, the Trustee filed this action in the Circuit Court of Wirt County, West Virginia, to obtain "an order directing the distribution of the assets of the Trust to those persons determined by this Court to be entitled to receive the same in such proportions as may be determined by this Court to be proper and in conformity with the intent of the settlors of the Trust." The Trustee joined and served numerous defendants, including Mateo Cortez. The Trustee joined and served Mateo Cortez as a defendant because he "claims that as the surviving spouse of Deborah Ann (Short) Cortez he is entitled to the trust proceeds. His claim is without legal merit; nevertheless, in order that he may appear and protect his interest, if any, he is named as a defendant herein."

6.    On December 18, 2015, the Texas court held a hearing on a temporary restraining order and request for injunctive relief filed by Mateo Cortez. As part of his request for relief, Mateo Cortez sought an order from the Texas court enjoining the Trustee from proceeding any further in West Virginia and requiring her to dismiss this action. The Texas court refused to interfere with the Trustee's claims in this court: "THE COURT: I'm not going to prohibit them from proceeding, I'm not going to order them to dismiss in West Virginia. You all can go to West Virginia and argue."

7.    On December 28, 2015 Mateo Cortez filed a Rule 12(b) motion to dismiss this action pursuant to the doctrine of *forum non conveniens*, arguing that this action should be dismissed because the Trustee's claims were currently being litigated in Texas.

3

a.     In his motion, Mateo Cortez stated that he was seeking to administer the Estate of Deborah Cortez in Texas, and stated that "Mr. Cortez filed an *Original Petition in Intervention* that seeks a declaratory judgment regarding the distribution of the Trust to Mateo Cortez, the sole heir of the Estate of his late wife, Deborah Cortez."

b.     As an exhibit to his motion, Mateo Cortez attached a copy of his pleading in Texas, which did not request that the court determine the proper beneficiaries of the Trust in the event his declaratory claim failed.

8.     On March 16, 2016, this Court denied Mateo Cortez's motion to dismiss. On June 14, 2016, the Supreme Court of Appeals of West Virginia refused Mateo Cortez's petition for an extraordinary writ prohibiting this Court from enforcing its order.

9.     On September 15, 2016, this Court granted Defendant Barry's motion for partial summary judgment, and dismissed Mateo Cortez as a defendant in this case based upon the findings, conclusions, and rulings reflected therein.

10.     On December 19, 2016, the Texas court also granted summary judgment against Mateo Cortez on his declaratory claims to the Trust:

> On this day, the Court considered the Traditional and No Evidence Motion for Summary Judgment (the "Motion") filed by Third Party Defendants ... Connie [Lou] Keith Barry ... all in their individual capacities. Having considered the Motion, the response, all admissible summary judgment evidence, the arguments of counsel, and the other papers on file with the Court, the Court hereby GRANTS the Motion in its entirety.
>
> It is therefore, ORDERED, that Mateo Cortez's claims against Third Party Defendants in this lawsuit are dismissed in their entirety. In

4

particular, the Court hereby dismisses any and all claims that Mateo Cortez, in his individual capacity or in his capacity as personal representative of the Estate of Deborah Cortez, has to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust"), other than his claim for undistributed income from the Trust during the life of Deborah Cortez. This judgment has no effect on Mateo Cortez's breach of fiduciary duty against Linda Murray, in her capacity as trustee of the Trust.

11. On June 12, 2017, Mateo Cortez filed this Motion, and attached as exhibits multiple filings from Texas.

a. Mateo Cortez argues that the Texas filings attached to his Motion demonstrate that the Trust is being actively administered in Texas and that the claims pending before this Court are being litigated concurrently in Texas.

b. With the exception of Mateo Cortez's intervention pleadings, all of the attached filings from Texas relate to the administration of the Estates of William D. Short and Phyllis D. Short, which are legally distinct from the Trust. The remaining pleadings relate to Mateo Cortez's petition in intervention, which was dismissed by the Texas court on December 19, 2016.[1]

c. None of the filings attached to Mateo Cortez's Motion seek relief that is the same or similar to the relief sought in this action, to-wit: "an order directing the distribution of the assets of the Trust to those persons determined by this Court to be entitled to receive the same in such proportions as may be

_____

[1] Mateo Cortez also attached a pleading entitled *Fifth Amended Petition in Intervention and Fourth Amended Third Party Petition*, which was filed in Texas on May 25, 2017. As with his original intervention pleading, Mateo Cortez's fifth amended intervention pleading seeks a declaratory judgment that Deborah Cortez was entitled to all of the Trust assets during her life, and an order directing the Trustee to distribute the remaining Trust assets to the Estate of Deborah Cortez. Mateo Cortez's fifth amended intervention pleading does not request that the Texas court determine the proper beneficiaries of the Trust in the event his amended declaratory claim fails.

5

determined by this Court to be proper and in conformity with the intent of the settlors of the Trust." None of the other parties to the Texas action have requested that the Texas court determine the proper beneficiaries of the Trust or the proper distribution of the Trust assets. There is no claim of the Trustee pending in the Texas court that is duplicative of the Trustee's claim in this action.

## Conclusions of Law

12. "Every defense, in law or in fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter ... (6) failure to state a claim upon which relief can be granted .... A motion making any of these defenses shall be made before pleading if a further pleading is permitted." W.Va. R. Civ. P. 12(b).

13. "A defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." W.Va. R. Civ. P. 12(h)(2).

14. "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court shall dismiss the action." W.Va. R. Civ. P. 12(h)(3). "Lack of jurisdiction may be raised in any appropriate manner, and at any time during the pendency of the suit or action." *McKinley v. Queen*, 125 W.Va. 619, 25 S.E.2d 763, 766 (1943) (internal citations omitted).

15. "This Court has previously determined that when there is litigation on the same subject between the same parties pending in another state, our courts should not consider the

6

matter until the proceedings in the other state are resolved." *Morris v. Estate of Morris*, No. 15-1035, 2016 WL 6678988, at *5 (W.Va. Supreme Court, Nov. 14, 2016) (memorandum decision) (citing *Berger v. Berger*, 177 W.Va. 58, 350 S.E.2d 685 (1986)). *See also Berger*, 177 W.Va. at 60 (trial court erred by refusing to dismiss divorce action "where there was then pending a proceeding on exactly the same subject between the same parties in North Carolina.").

16. "[T]he principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property." *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939).

17. The principle announced in *Princess Lida of Thurn & Taxis* does not apply to suits "instituted in order to determine the validity of claims against the estate or claimants' interests therein. Such proceedings are not *in rem*; they seek only to establish rights; judgments therein do not deal with the property and other distribution; they adjudicate questions which precede distribution." *Commonwealth Trust Co. of Pittsburgh v. Bradford*, 297 U.S. 613, 619 (1936). *Cf. Princess Lida of Thurn & Taxis*, 305 U.S. at 466-67 (citing *Bradford*) (exclusive jurisdiction principle has no application to a case seeking to determine "the right of any person to participate in the *res* or as to his quantum of his interest in it.").

18. "Where the judgment sought is strictly *in personam*, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until

7

judgment is obtained in one court which may be set up as *res adjudicata* in the other." *State ex rel. Small v. Clawges*, 231 W.Va. 301, 308, 745 S.E.2d 192, 199 (2013).

19.     Mateo Cortez filed this Motion to dismiss post-judgment. To the extent he seeks to dismiss this case on any basis other than lack of subject matter jurisdiction, Mateo Cortez's Motion is procedurally improper and therefore denied. *See* W.Va. R. Civ. P. 12(h) (defenses other than lack of subject matter jurisdiction are waived unless raised prior to judgment). The Court will therefore construe Mateo Cortez's Motion as challenging the Court's subject matter jurisdiction.

20.     The Court finds that the principles announced in *Berger* and *Princess Lida of Thurn & Taxis* do not apply to this action and do not deprive this Court of subject matter jurisdiction over the Trustee's claims.

a.     First, the Trustee's claims in this action are not identical to the claims filed in Texas. The Trustee filed this action seeking "an order directing the distribution of the assets of the Trust to those persons determined by this Court to be entitled to receive the same in such proportions as may be determined by this Court to be proper and in conformity with the intent of the settlors of the Trust." In contrast, Mateo Cortez filed his intervention claims in Texas to obtain a declaration that Deborah Cortez was entitled to all of the Trust assets during her life, and an order directing the Trustee to distribute the remaining Trust assets to the Estate of Deborah Cortez. Mateo Cortez did not request that the Texas court determine the proper beneficiaries of the Trust in the event his declaratory claim failed.

8

b.     Second, Mateo Cortez's intervention claims in Texas are *in personam* only, and do not affect this Court's jurisdiction. Mateo Cortez filed his intervention claims in Texas to establish the Estate of Deborah Cortez's "right to participate in the *res* or as to [its] quantum of [its] interest in it," which falls under the rule set forth in *Bradford* and not the rule set forth in *Princess Lida of Thurn & Taxis*. The Texas court appears to be in agreement with this Court's conclusion, given its refusal to enjoin the Trustee from proceeding further with this action. Accordingly, even if the claims before this Court were identical to the claims filed in Texas, concurrent jurisdiction over those claims is proper until a judgment from one court operates as *res judicata* in the other.

21.     Additionally, even assuming that Mateo Cortez's intervention claims in Texas did implicate *Princess Lida of Thurn & Taxis*, his claims have been dismissed in their entirety by the Texas court. None of the other parties to the Texas proceedings have asked the Texas court to determine how the Trust should be distributed. That claim is only pending here in West Virginia, and the Texas court has stated that it won't interfere with this Court's adjudication of that issue.

## Ruling

For the reasons set forth above, and as stated more fully upon the record, this Court DENIES the motion to dismiss filed by Mateo Cortez.

The Court notes that Defendant Connie Lou Keith Barry has filed a motion for sanctions against Mateo Cortez, in either his personal capacity or in his capacity as the Personal

9

Representative of the Estate of Deborah Cortez, and his attorneys. The Court's ruling in this Order does not address, moot, or otherwise resolve that motion.

This Court ORDERS the Clerk to forward certified copies of this Order to all counsel of record and pro se parties.

ENTER _September 19, 2017_

_/s/ Robert A. Waters_
Robert A. Waters, Judge

PREPARED BY:

I hereby certify that the foregoing is a true and correct copy of the original entry on file in my office
ATTEST: Carol Frame
Circuit Clerk-Wirt County, WV
_Carol Frame_
Date _9-19-17_

_A. C. Boone_
Aaron C. Boone (WVSB #9479)
Counsel for Defendant Connie Lou Keith Barry

APPROVED FOR ENTRY:

_R.S. Fluharty by ACB_ [per email authorization 7/17/17]
Robert S. Fluharty, Jr. (1220)
J. Nicholas Barth (255)
Counsel for Plaintiff

_L.L. Maze by A.C.B._ [per email authorization 7/14/17]
Leslie L. Maze (8072)
Counsel for Defendants Donald Leaman Whited, Michael Ray Whited, Sheila Pettrey, Tywanna Pettrey, Amanda Pettrey, Terry Lee Whited, and Sherry Lynn Whited Salsbury

_J. Santer by ACB_ [per email authorization 7/15/17]
Joseph T. Santer (3252)
Guardian ad litem for unknown defendants

10

_____
Shawn M. Brotherton, admitted pro hac vice
Michael W. Taylor (11715)
James W. Marshall, III (10677)
Counsel for Mateo Cortez

11

9091503.1

APPENDIX J

IN THE CIRCUIT COURT OF WIRT COUNTY, WEST VIRGINIA

LINDA MURRAY, in Her Capacity
as Successor Trustee of the William D. Short
and Phyllis D. Short Revocable Living Trust
Dated April 30, 1991,

        Plaintiff,

v.

                                             CIVIL ACTION NO. 15-C-28
                                             JUDGE WATERS

LINDA LOU MURRAY, et al.,

        Defendants.

## ORDER DENYING MOTION TO INTERVENE

On June 27, 2017, this Court conducted a hearing on *The Estate of Deborah Cortez's Motion to Intervene* (the "Motion"). After considering the Motion, the response of defendant Connie Barry ("Response"), the response of the Trustee, the arguments of counsel, and the record, this Court hereby DENIES the Motion for the reasons stated on the record and more fully below.

### Procedural Posture

1.      On June 12, 2017 Defendant Mateo Cortez, in his capacity as the Personal Representative of the Estate of Deborah Cortez, filed *The Estate of Deborah Cortez's Motion to Intervene and Memorandum of Law in Support Thereof* (the "Motion"), requesting that the Court permit the Estate of Deborah Cortez to intervene pursuant to Rule 24 of the West Virginia Rules of Civil Procedure.

2.      Mateo Cortez attached to the Motion a proposed intervenor complaint entitled *The Estate of Deborah Cortez's Complaint Requesting Declaratory Relief*, in which

FILED
Circuit Court
Date 9-19-17
CLERK C.F.


Mateo Cortez, in his capacity as the Personal Representative of the Estate of Deborah Cortez, seeks a declaratory judgment that all of the assets of the "William D. Short and Phyllis D. Short Revocable Living Family Trust Dated April 30, 1991," as amended and restated by the "Second Amendment and Restatement of The William D. Short and Phyllis D. Short Revocable Living Trust" dated January 5, 2000 (collectively, the "Trust"), should have been inherited by Deborah Cortez following the death of Phyllis D. Short, as the sole heir and beneficiary of Phyllis's estate. The proposed intervenor complaint further requests an order directing that all the assets of the Trust be distributed to the Estate of Deborah Cortez.

3. On June 22, 2017, Plaintiff Linda Murray, in her capacity as Successor Trustee of the Trust (the "Trustee"), filed a response in opposition to the Motion. On June 23, 2017, Defendant Connie Lou Keith Barry ("Barry"), filed a response in opposition to the Motion and a request for sanctions. On June 27, 2017, the Court conducted a hearing on the Motion and other matters. The Court has reviewed the Motion, supporting memorandum and exhibits, the Trustee and Barry's responses and supporting exhibits, the Trust instrument, and entertained the arguments of the parties. The Court has also reviewed the entire record in this matter as part of its consideration of this Motion and the other matters pending before it.

## Findings of Fact & Conclusions of Law

4. On November 20, 2015, the Trustee filed this action to obtain "an order directing the distribution of the assets of the Trust to those persons determined by this Court to be entitled to receive the same in such proportions as may be determined by this Court to be proper and in conformity with the intent of the settlors of the Trust." (Complaint, p. 22). The Trustee joined and served Mateo Cortez as a defendant because he "claims that as the surviving spouse of Deborah Ann (Short) Cortez he is entitled to the trust proceeds." (Complaint, ¶ 13).

2

The docket sheet for this matter indicates that Mateo Cortez was served with process on December 4, 2015.

5.     At all times relevant to this action, Mateo Cortez was the sole heir and beneficiary of the Estate of Deborah Cortez, and had sole authority to act on its behalf. In both this action and the proceedings in Texas, Mateo Cortez's personal counsel also represents him in his capacity as the Personal Representative of the Estate of Deborah Cortez.

6.     On December 28, 2015, Mateo Cortez filed a Rule 12(b) motion to dismiss this action pursuant to the doctrine of *forum non conveniens*, arguing that this action should be dismissed because the Trustee's claims were currently being litigated in Texas.[1] In his motion, Mateo Cortez stated that he was seeking to administer the Estate of Deborah Cortez in Texas, and stated that "Mr. Cortez filed an *Original Petition in Intervention* that seeks a declaratory judgment regarding the distribution of the Trust to Mateo Cortez, the sole heir of the Estate of his late wife, Deborah Cortez." However, Mateo Cortez did not argue that the Estate of Deborah Cortez was a necessary or indispensable party to this action, did not seek to dismiss this action for failure to join the Estate of Deborah Cortez as an indispensable party, and did not attempt to join the Estate of Deborah Cortez as a party. On March 16, 2016, this Court denied Mateo Cortez's motion to dismiss.

7.     On April 8, 2016, Mateo Cortez filed his answer in this matter. In his answer to paragraph 13 of the Trustee's complaint, Mateo Cortez admitted "that he is the surviving spouse and sole heir of Deborah Ann Cortez and that, as a surviving spouse and sole heir of Deborah Ann Cortez, that he is entitled to the trust proceeds." Mateo Cortez further

---

[1] The Trustee and Barry dispute Mateo Cortez's characterization of the claims before the Texas court.

3

stated in his answer to paragraph 13 of the Trustee's complaint that the Texas court "has jurisdiction to declare that the Estate of Deborah Cortez is entitled to all of the assets of the trust." Mateo Cortez raised as his tenth defense to the Trustee's complaint that "[t]he Plaintiff has failed to join necessary and indispensable parties and thus this Complaint should be dismissed." However, Mateo Cortez did not allege that the Estate of Deborah Cortez was a necessary or indispensable party to this action, did not seek to dismiss this action for failure to join the Estate of Deborah Cortez as an indispensable party, and did not attempt to join the Estate of Deborah Cortez as a party.

8. On April 11, 2016, Defendant Barry filed a motion for partial summary judgment that Mateo Cortez is not entitled to share in the distribution of any assets of the Trust. Barry argued that the Trust instrument is unambiguous and that, pursuant to the terms of the Trust instrument, any remaining assets of the Trust are to be distributed to the heirs at law of William D. Short and Phyllis D. Short now that Deborah Cortez is deceased.

9. On May 9, 2016, Mateo Cortez filed a response to Barry's motion for partial summary judgment. In his response, Mateo Cortez stated that he "intends to conduct discovery to prove that as a surviving spouse of Deborah Cortez, he is entitled to the trust proceeds," and further argued he "is entitled to receive trust assets because he is the sole heir of the Estate of Deborah Cortez, the Shorts' only child." However, Mateo Cortez did not argue that the Estate of Deborah Cortez was a necessary or indispensable party to this action, did not seek to dismiss this action for failure to join the Estate of Deborah Cortez as an indispensable party, and did not attempt to join the Estate of Deborah Cortez as a party.

4

10. On May 13, 2016, the Court conducted a hearing on Barry's motion for partial summary judgment and took the matter under advisement.

11. On April 29, 2016, Mateo Cortez filed a petition for a writ of prohibition with the Supreme Court of Appeals of West Virginia, seeking to prohibit execution of this Court's order denying his motion to dismiss.[2] In his petition, Mateo Cortez asserted that "[u]nder Texas law, a sole heir may bring an action on behalf of the deceased's estate," and devoted several pages of his brief to discussing actions he had taken in Texas on behalf of the Estate of Deborah Cortez to adjudicate its interest in the Trust. The petition further asserted that "Mateo Cortez, as Representative of the Estate of Deborah Cortez, subsequently filed an Original Petition in Intervention [in Texas] seeking declaratory judgment on the distribution of the Trust assets to the Estate of Deborah Cortez," and that "the original Plaintiff/Petitioner in this matter is the Estate of Deborah Cortez which filed its Original Petition in Intervention five (5) months prior to filing the duplicative litigation in West Virginia." However, Mateo Cortez did not argue that the Estate of Deborah Cortez was a necessary or indispensable party to this action, or that this action should be dismissed for failure to join the Estate of Deborah Cortez as an indispensable party. On June 14, 2016, the Supreme Court of Appeals of West Virginia refused Mateo Cortez's petition.

12. On September 15, 2016, this Court granted Defendant Barry's motion for partial summary judgment, and dismissed Mateo Cortez as a defendant in this case based upon the findings, conclusions, and rulings reflected therein.

---

[2] Per the requirements of the Appellate Rules of Procedure, this Court received a copy of Mateo Cortez's petition, as reflected on the certificate of service.

13. At no time prior to this Court's September 15, 2016, order granting Defendant Barry's motion for partial summary judgment did Mateo Cortez: (1) argue that the Estate of Deborah Cortez was a necessary or indispensable party to this action; (2) file a motion to dismiss this action for failure to join the Estate of Deborah Cortez as an indispensable party, or otherwise argue that this action should be dismissed for failure to join the Estate of Deborah Cortez as an indispensable party; or (3) attempt to join the Estate of Deborah Cortez as a party, or intervene as a party on behalf of the Estate of Deborah Cortez.

14. On September 29, 2016, Mateo Cortez filed a motion to alter or amend this Court's order granting Defendant Barry's motion for partial summary judgment, arguing that the Court should vacate its order and dismiss this case with prejudice. Among other grounds for granting his motion to alter or amend, Mateo Cortez argued for the first time that the Estate of Deborah Cortez is an indispensable party to this action.

15. On December 19, 2016, the Probate Court of Travis County, Texas granted summary judgment against Mateo Cortez, dismissing "any and all claims that Mateo Cortez, in his individual capacity or in his capacity as personal representative of the Estate of Deborah Cortez, has to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the 'Trust'), other than his claim for undistributed income from the Trust during the life of Deborah Cortez." The Texas court subsequently amended its judgment to include monetary sanctions against Mateo Cortez's attorneys, finding that the arguments which Mateo Cortez advanced in Texas were frivolous and were not warranted by existing law; the extension, modification, or reversal of existing law; or the establishment of new law. The Texas court sanctioned Mateo Cortez's attorneys in the amount of $65,130.76 for driving up Defendant Barry's legal fees in Texas with frivolous claims.

6

## Conclusions of Law

16. Mateo Cortez, in his capacity as the Personal Representative of the Estate of Deborah Cortez, seeks to intervene in this action as a matter of right, pursuant to Rule 24(a)(2) of the West Virginia Rules of Civil Procedure. The rule states in pertinent part:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

W.Va. R. Civ. P. 24.

17. "West Virginia Rule of Civil Procedure 24(a)(2) allows intervention of right in an action if an applicant meets four conditions: (1) the application must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant must show that the interest will not be adequately represented by existing parties." Syl. Pt. 2, *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 540 S.E.2d 917 (1999). The Court finds that the movant cannot meet any of the above criteria.

*First Prong under Rule 24(a)(2)*
*Motion is Not Timely*

18. First, the Court finds that the Motion is untimely.

a. "While Rule 24 of the West Virginia Rules of Civil Procedure provides for the intervention of parties upon a timely application, the timeliness of

7

any intervention is a matter of discretion with the trial court." Syl. Pt. 3, *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 540 S.E.2d 917 (1999).

b.    The Supreme Court of Appeals of West Virginia has upheld refusals to grant intervention where the applicant had actual knowledge of a case but failed to move for intervention until after entry of judgment. *See West Virginia Public Employees Ins. Bd. v. Blue Cross Hosp. Service, Inc.*, 180 W.Va. 177, 375 S.E.2d 809 (1988) (motion to intervene untimely when filed three months after entry of dismissal order and applicants knew or had reason to know of the pendency of the action prior to judgment); *Pauley v. Bailey*, 171 W.Va. 651, 301 S.E.2d 608 (1983) (permissive intervention) (motion to intervene untimely when filed almost one year after evidentiary hearings had closed and seven months after entry of trial court's orders).

c.    It is undisputed that, at all times relevant to this action, Mateo Cortez was the sole heir and beneficiary of the Estate of Deborah Cortez, and had sole authority to act on its behalf.

d.    It is also undisputed that Mateo Cortez had actual notice of this action as of December 4, 2015, but did not attempt to intervene on behalf of the Estate of Deborah Cortez, or argue that the Estate of Deborah Cortez was an indispensable party to this action, until after this Court granted summary judgment against him and dismissed him as a defendant.

e. It is also undisputed that Mateo Cortez did not actually attempt to intervene in this matter on behalf of the Estate of Deborah Cortez until June 12, 2017 – nine (9) months after entry of judgment against Mateo Cortez.

*Second Prong under Rule 24(a)(2)*
*Applicant Does Not Have an Interest*

19. Second, the Court finds that the applicant does not have an interest in the property which is the subject of this action.

a. This action seeks to determine the proper distribution of the Trust assets which remained after the death of Deborah Cortez. The applicant is Mateo Cortez, in his capacity as the Personal Representative of the Estate of Deborah Cortez, so the question is whether the Estate of Deborah Cortez has an interest in the undistributed assets of the Trust.

b. However, as this Court and the Probate Court of Travis County, Texas have already ruled, Mateo Cortez and the Estate of Deborah Cortez do not have an interest in the assets of the Trust.

c. This Court has already ruled that Deborah Cortez's interest in the Trust was governed by Article VIII, Section B of the Trust instrument, which states that if Deborah "is living on the date of the death of the second one of us to die," then "during Deborah's life" she was entitled to an annual distribution of $25,000.00 of the Trust principal, and a quarterly distribution of the net Trust income. Article VIII, Section C of the Trust instrument sets forth how the remaining Trust assets are to be distributed upon Deborah's death, which is one-

9

half to the heirs at law of William D. Short and one-half to the heirs at law of Phyllis D. Short. Accordingly, the Estate of Deborah Cortez has no interest in the assets of the Trust because the plain and unambiguous language of the Trust instrument afforded no interest to Deborah upon her death.

d. Despite the fact that the Motion is not timely and despite the fact the applicant does not have an interest in the subject property, the proposed intervenor complaint nonetheless alleges that the Estate of Deborah Cortez has an interest in the Trust because Article VIII, Section A, Paragraph 2 of the Trust instrument invalidated the remaining provisions of Article VIII. This Court disagrees.

i. Article VIII, Section A sets forth a series of one-time distributions of cash, including a distribution to Deborah Cortez under the following condition:

2. Cash Distribution to Deborah. If our daughter, DEBORAH A. CORTEZ, is living and legally competent, the trustee shall distribute to her the sum of fifty thousand dollars $50,000.00 as soon as practicable after the death of the second one of us to die. If Deborah is not then living or is not legally competent, then this gift shall lapse, and the remainder of the trust estate shall be administered as provided below.

The applicant alleges that the second sentence of this provision dictates that the remainder of the Trust assets are only to be administered under the subsequent sections of Article VIII if "Deborah is not then living or is not legally competent." The applicant therefore alleges that "the Trust is ineffective for the disposition of the Trust assets at the time of Phyllis D.

10

Short's death since Deborah Cortez was alive and competent," that the remainder of the Trust therefore lapsed, and that all of the assets of the Trust passed by intestacy through the Estate of Phyllis D. Short to Deborah Cortez as her sole heir.

ii.     The Court, however, rejects this argument as frivolous and contravened by the plain language of the Trust instrument. By its terms, the second sentence of Article VIII, Section A, Paragraph 2 of the Trust instrument pertains solely to whether the cash distribution to Deborah under that paragraph lapses; and does not govern the "Continuing Trust for Deborah" established under Article VIII, Section B "[i]f our daughter, Deborah A. Cortez, is living on the date of the death of the second one of us to die." It is undisputed that Deborah was alive when Phyllis D. Short died; the Court must give effect to the intent of the settlors in creating the Trust, and will not read the Trust instrument as "ineffective for the disposition of the Trust assets" when the plain language of the Trust does in fact provide for the disposition of the Trust assets.

*Third Prong under Rule 24(a)(2)*
*Disposition of the Action Does Not Impair Applicant's Ability to Protect Interest*

20.     Third, the Court finds that its disposition of this action has not impaired or impeded the applicant's ability to protect its interest in the property which is the subject of this action. This Court and the Texas court have already ruled that Mateo Cortez and the Estate of Deborah Cortez do not have an interest in the undistributed assets of the Trust. Pursuant to Article VIII, Section B of the Trust instrument, Deborah Cortez only possessed a life interest in

11

the assets of the Trust, and that interest extinguished when she died; and the Trust instrument makes no provision for Mateo Cortez at all, despite the fact that the settlors clearly knew that Mateo Cortez and Deborah were married.

*Fourth Prong under Rule 24(a)(2)*
*Applicant Adequately Represented*

21. Fourth, the Court finds that the applicant was adequately represented by Mateo Cortez, who is the administrator and sole heir of the Estate of Deborah Cortez.

a. As to adequacy of representation by existing parties, "generally courts compare the interests asserted by the proposed intervenor with the interests of the existing party. If the proposed intervenor's interest is not represented by the existing party, or the existing party's interests are adverse to those of the proposed intervenor, intervention should be granted. … [However], if the interests are identical, intervention should be denied unless there is a compelling showing as to why the existing representation is inadequate." *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 403, 540 S.E.2d 917, 927 (1999) (internal citations omitted).

b. Mateo Cortez, in both his personal capacity and in his capacity as the Personal Representative of the Estate of Deborah Cortez, have identical interests in this action: both seek an order directing that all the assets of the Trust be distributed to Mateo Cortez, either through direct distribution to Mateo Cortez personally or indirectly through distribution to the Estate of Deborah Cortez, which then flows through to Mateo Cortez personally as its sole heir. This identity of interest is clear from the undisputed fact that Mateo Cortez controls

12

every decision made on behalf of the Estate of Deborah Cortez, and is the only heir and beneficiary of the estate.

    c.    Additionally, Mateo Cortez's attorneys represent him in both his individual capacity and in his capacity as the Personal Representative of the Estate of Deborah Cortez, which would violate the West Virginia Rules of Professional Conduct if their interests were adverse in any way. *See* W.Va. R. Prof. Conduct § 1.7 (simultaneous representation of adverse parties in litigation is a non-waivable conflict of interest).

## Ruling

For the reasons set forth above, and as stated more fully upon the record, this Court DENIES the Motion to Intervene filed by Mateo Cortez, in his capacity as the Personal Representative of the Estate of Deborah Cortez.

The Court notes that Defendant Connie Lou Keith Barry has filed a motion for sanctions against Mateo Cortez, in either his personal capacity or in his capacity as the Personal Representative of the Estate of Deborah Cortez, and his attorneys. The Court's ruling in this Order does not address, moot, or otherwise resolve that motion.

This Court ORDERS the Clerk to forward certified copies of this Order to all counsel of record and pro se parties.

ENTER *September 19, 2017*

Robert A. Waters, Judge

I hereby certify that the foregoing is a true and correct copy of the original entry on file in my office
ATTEST: Carol Frame
Circuit Clerk-Wirt County WV

Date 9-19-17

13

PREPARED BY:

_A.C. Boone_
Aaron C. Boone (WVSB #9479)
Counsel for Defendant Connie Lou Keith Barry


APPROVED FOR ENTRY:


_RS. Fluharty by ACB_ [per email authorization 7/17/17]
Robert S. Fluharty, Jr. (1220)
J. Nicholas Barth (255)
Counsel for Plaintiff


_L.L. Maze by A.C.B._ [per email authorization 7/14/17]
Leslie L. Maze (8072)
Counsel for Defendants Donald Leaman Whited, Michael Ray Whited, Sheila Pettrey, Tywanna Pettrey, Amanda Pettrey, Terry Lee Whited, and Sherry Lynn Whited Salsbury


_J. Santer by A.C.B._ [per email authorization 7/15/17]
Joseph T. Santer (3252)
Guardian ad litem for unknown defendants


_____
Shawn M. Brotherton, admitted pro hac vice
Michael W. Taylor (11715)
James W. Marshall, III (10677)
Counsel for Mateo Cortez and Estate of Deborah Cortez

14

9090664.1



APPENDIX K

ACCEPTED
03-17-00365-cv
17540220
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/9/2017 4:35:21 PM
JEFFREY D. KYLE
CLERK

Appellate Docket Number:  03-17-00365-CV

Appellate Case Style:  Mateo Cortez, as Representative of the Estate of Deborah Cortez

Vs.

Sandra Flesher Brown et al.

Companion Case No(s) :  C-1-PB-16-002348

## DOCKETING STATEMENT (Civil)

Amended/corrected statement:

Appellate Court:

(to be filed in the court of appeals upon perfection of appeal under TRAP 32)

| I. Appellant | II. Appellant Attorney(s) |
|---|---|
| [X] Person* [ ] Organization (choose one) | [X]  Lead Attorney |
| Organization: | First Name:  Susan |
| First Name: Mateo | Middle Name:  S. |
| Middle Name: | Last Name:  Vance |
| Last Name: Cortez | Suffix: |
| Suffix: | Law Firm Name:  Susan Vance Law, PLLC |
| Pro Se:  ◯ | Address 1:  201 West 5th Street |
|  | Address 2:  Suite 1100 |
| * As Representative of the Estate of Deborah Cortez | City:  Austin |
|  | State:  Texas   Zip+4:  78701-0060 |
|  | Telephone: 512-736-7295   ext. |
|  | Fax:  866-523-5449 |
|  | Email:  susan@svancelaw.com |
|  | SBN: 24036562 |

| III. Appellee | IV. Appellee Attorney(s) |
|---|---|
| [X] Persons [ ] Organization (choose one) | [X]  Lead Attorney |
| First Name: | First Name:  Amanda |
| Middle Name: | Middle Name:  G. |
| Last Name: | Last Name:  Taylor |
| Suffix: | Suffix: |
| Pro Se:  ◯ | Law Firm Name: Beck Redden, LLP |
| Sandra Flesher Brown | Address 1:  515 Congress Avenue |
| Charlotte Flesher Ash | Address 2:  Suite 1900 |
| Charlene Flesher Johnston | City:  Austin |
| Connie Lou Keith Barry | State:  Texas   Zip+4:  78701-3526 |
| Randall Wayne Davis | Telephone: 512-708-8100   ext. |
| Virginia Villers | Fax: 512-708-1002 |
| Charles Roberts | Email: ataylor@beckredden.com |
| Lisa A. Smith | SBN:  24045921 |
| Patricia Chapman | |
| Betty J. Marks Webb | |
| James Berl Marks | |
| Linda Murray | |
| Thomas Wayne Marks | |
| Donald Leman Whited | |

## V. Perfection Of Appeal And Jurisdiction

Nature of Case (Subject matter or type of case):   Estate proceedings and administration

Date order or judgment signed: 2/10/2017          Type of judgment:   Motion to Sever, Summary Judgment, and
Date notice of appeal filed in trial court: 1/9/2017; 3/13/2017; 5/25/2017    Motion to Modify Judgment to Include
                                                                             Award of Sanctions
If mailed to the trial court clerk, also give the date mailed:

Interlocutory appeal of appealable order:  ☐ Yes  ☒ No

If yes, please specify statutory or other basis on which interlocutory order is appealable (See TRAP 28):

Accelerated appeal (See TRAP 28):     ☐ Yes  ☒ No

If yes, please specify statutory or other basis on which appeal is accelerated:

Parental Termination or Child Protection? (See TRAP 28.4):  ☐ Yes  ☒ No

Permissive? (See TRAP 28.3):      ☐ Yes  ☒ No

If yes, please specify statutory or other basis for such status:

Agreed?  (See TRAP 28.2):      ☐ Yes  ☒ No

If yes, please specify statutory or other basis for such status:

Appeal should receive precedence, preference, or priority under statute or rule:   ☐ Yes  ☒ No

If yes, please specify statutory or other basis for such status:

Does this case involve an amount under $100,000?     ☐ Yes  ☒ No

Judgment or order disposes of all parties and issues:  ☒ Yes  ☐ No  due to severance

Appeal from final judgment:           ☒ Yes  ☐ No

Does the appeal involve the constitutionality or the validity of a statute, rule, or ordinance?   ☐ Yes  ☒ No

## VI. Actions Extending Time To Perfect Appeal

| | | | |
|---|---|---|---|
| Motion for New Trial: | ☒ Yes  ☐ No | If yes, date filed: | 01/19/2017; 3/14/2017 |
| Motion to Modify Judgment: | ☒ Yes  ☐ No | If yes, date filed: | 01/16/2017; granted on 2/10/2017 |
| Request for Findings of Fact and Conclusions of Law: | ☐ Yes  ☐ No | If yes, date filed: | |
| Motion to Reinstate: | ☐ Yes  ☐ No | If yes, date filed: | |
| Motion under TRCP 306a: | ☐ Yes  ☐ No | If yes, date filed: | |

Other:     Motion for Reconsideration; filed 1/19/2017 and 3/14/2017 incorporated into Motion for New Trial
If other, please specify:

## VII. Indigency Of Party: (Attach file-stamped copy of Statement, and copy of the trial court order.)

| | | | |
|---|---|---|---|
| Was Statement of Inability to Pay Court Costs filed in the trial court? | ☐ Yes  ☒ No | If yes, date filed: | |
| Was a Motion Challenging the Statement filed in the trial court? | ☐ Yes  ☒ No | If yes, date filed: | |
| Was there any hearing on appellant's ability to afford court costs? | ☐ Yes  ☒ No | Hearing date: | |
| Did trial court sign an order under Texas Rule of Civil Procedure 145? | ☐ Yes  ☒ No | Date of order: | |

If yes, trial court finding:      ☐ Challenge Sustained  ☐ Overruled

## VIII. Bankruptcy

Has any party to the court's judgment filed for protection in bankruptcy which might affect this appeal?  ☐ Yes  ☒ No

If yes, please attach a copy of the petition.

Date bankruptcy filed:                                    Bankruptcy Case Number:

## IX. Trial Court And Record

Court:  Probate Court No. 1

County:  Travis County

**Trial Court Docket Number (Cause No.):**  C-1-PB-16-002348

Trial Judge (who tried or disposed of case):

First Name:  Guy

Middle Name:

Last Name:  Herman

Suffix:

Address 1:  1000 Guadalupe

Address 2:  Room 217

City:  Austin

State:  Texas                Zip + 4:  78701-2328

Telephone: 512-854-9258      ext.

Fax:  512-854-4418

Email:

Clerk's Record:  Travis County Clerk

Trial Court Clerk:  ☐ District  ☒ County

Was clerk's record requested?  ☐ Yes  ☒ No

If yes, date requested:

If no, date it will be requested:  6/12/2017

Were payment arrangements made with clerk?
arrangements will be made
6/12/2017     ☐ Yes ☐ No ☐ Indigent

**(Note: No request required under TRAP 34.5(a),(b))**

---

Reporter's or Recorder's Record:

Is there a reporter's record?          ☒ Yes  ☐ No

Was reporter's record requested?      ☐ Yes  ☒ No

Was there a reporter's record electronically recorded?  ☐ Yes  ☐ No

If yes, date requested:

If no, date it will be requested:  6/12/2017

Were payment arrangements made with the court reporter/court recorder?  ☐ Yes  ☐ No  ☐ Indigent   Will arrange payment on 6/12/2017

☒ Court Reporter ☐ Court Recorder
☐ Official ☐ Substitute

First Name: Melissa
Middle Name:
Last Name: Voigt
Suffix:
Address 1: 1000 Guadalupe
Address 2:
City: Austin
State: Texas     Zip + 4: 78701-2328
Telephone: 512-854-4418    ext.
Fax:
Email: melissa.voigt@traviscountytx.gov

[ Add Reporter ]

## X. Supersedeas Bond

Supersedeas bond filed: ☐ Yes ☒ No    If yes, date filed:

Will file: ☒ Yes ☐ No

## XI. Extraordinary Relief

Will you request extraordinary relief (e.g. temporary or ancillary relief) from this Court? ☐ Yes ☒ No

If yes, briefly state the basis for your request:

## XII. Alternative Dispute Resolution/Mediation (Complete section if filing in the 1st, 2nd, 4th, 5th, 6th, 8th, 10th, 11th, 13th, or 14th Court of Appeal)

Should this appeal be referred to mediation? ☐ Yes ☒ No

If no, please specify: Mediated post-judgment now on appeal

Has the case been through an ADR procedure? ☒ Yes ☐ No

If yes, who was the mediator? Alice Oliver-Parrott

What type of ADR procedure? mediation

At what stage did the case go through ADR? ☐ Pre-Trial ☒ Post-Trial ☐ Other

If other, please specify:

Type of case?
Give a brief description of the issue to be raised on appeal, the relief sought, and the applicable standard for review, if known (without prejudice to the right to raise additional issues or request additional relief):

Improper summary judgment, improper award of sanctions, and improper severeance

How was the case disposed of? Through summary judgment and severance from remaining claims

Summary of relief granted, including amount of money judgment, and if any, damages awarded.

If money judgment, what was the amount? Actual damages:

Punitive (or similar) damages: Sanctions award against attorneys only for $65,130.76

Attorney's fees (trial): none

Attorney's fees (appellate): none

Other:

If other, please specify:

Will you challenge this Court's jurisdiction? ☐ Yes ☒ No

Does judgment have language that one or more parties "take nothing"? ☐ Yes ☒ No

Does judgment have a Mother Hubbard clause? ☐ Yes ☒ No

Other basis for finality? "disposes of all claims and parties and is final and appealable" as to severed case

Rate the complexity of the case (use 1 for least and 5 for most complex): ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5

Please make my answer to the preceding questions known to other parties in this case. ☐ Yes ☐ No

Can the parties agree on an appellate mediator? ☐ Yes ☐ No

If yes, please give name, address, telephone, fax and email address:

| Name | Address | Telephone | Fax | Email |
|------|---------|-----------|-----|-------|

Languages other than English in which the mediator should be proficient:

Name of person filing out mediation section of docketing statement:

## XIII. Related Matters

List any pending or past related appeals before this or any other Texas appellate court by court, docket number, and style.

Docket Number: 03-17-00044-CV                    Trial Court: Travis Count Probate No. 1
                                                              C-1-PB-16-002348

Style: Mateo Cortez, as Representative of the Estate of Deborah Cortez

Vs.

Sandra Flesher Brown et al.

## XIV. Pro Bono Program: (Complete section if filing in the 1st, 2nd, 3rd, 5th, 13th or 14th Courts of Appeals)

The Courts of Appeals listed above, in conjunction with the State Bar of Texas Appellate Section Pro Bono Committee and local Bar Associations, are conducting a program to place a limited number of civil appeals with appellate counsel who will represent the appellant in the appeal before this Court.

The Pro Bono Committee is solely responsible for screening and selecting the civil cases for inclusion in the Program based upon a number of discretionary criteria, including the financial means of the appellant or appellee. If a case is selected by the Committee, and can be matched with appellate counsel, that counsel will take over representation of the appellant or appellee without charging legal fees. More information regarding this program can be found in the Pro Bono Program Pamphlet available in paper form at the Clerk's Office or on the Internet at www.tex-app.org. If your case is selected and matched with a volunteer lawyer, you will receive a letter from the Pro Bono Committee within thirty (30) to forty-five (45) days after submitting this Docketing Statement.

Note: there is no guarantee that if you submit your case for possible inclusion in the Pro Bono Program, the Pro Bono Committee will select your case and that pro bono counsel can be found to represent you. Accordingly, you should not forego seeking other counsel to represent you in this proceeding. By signing your name below, you are authorizing the Pro Bono committee to transmit publicly available facts and information about your case, including parties and background, through selected Internet sites and Listserv to its pool of volunteer appellate attorneys.

Do you want this case to be considered for inclusion in the Pro Bono Program? ☐ Yes ☒ No

Do you authorize the Pro Bono Committee to contact your trial counsel of record in this matter to answer questions the committee may have regarding the appeal? ☐ Yes ☐ No

Please note that any such conversations would be maintained as confidential by the Pro Bono Committee and the information used solely for the purposes of considering the case for inclusion in the Pro Bono Program.

If you have not previously filed an Statement of Inability to Pay Court Costs and attached a file-stamped copy of that Statement, does your income exceed 200% of the U.S. Department of Health and Human Services Federal Poverty Guidelines? ☐ Yes ☐ No

These guidelines can be found in the Pro Bono Program Pamphlet as well as on the internet at http://aspe.hhs.gov/poverty/06poverty.shtml.

Are you willing to disclose your financial circumstances to the Pro Bono Committee? ☐ Yes ☐ No

If yes, please attach an Statement of Inability to Pay Court Costs completed and executed by the appellant or appellee. Sample forms may be found in the Clerk's Office or on the internet at http://www.tex-app.org. Your participation in the Pro Bono Program may be conditioned upon your execution of a Statement under oath as to your financial circumstances.

Give a brief description of the issues to be raised on appeal, the relief sought, and the applicable standard of review, if known (without prejudice to the right to raise additional issues or request additional relief; use a separate attachment, if necessary).

## XV. Signature

Signature of counsel (or pro se party)

Date: 6/9/2017

Printed Name: William J. Brotherton, Attorney for Appellant

State Bar No.: 00789989

Electronic Signature:
(Optional)

## XVI. Certificate of Service

The undersigned counsel certifies that this docketing statement has been served on the following lead counsel for all parties to the trial court's order or judgment as follows on

.

_____
Signature of counsel (or pro se party)

William J. Brotherton, Attorney for Appellant

Electronic Signature: (Optional)

State Bar No.: 00789989

Person Served

Certificate of Service Requirements (TRAP 9.5(e)): A certificate of service must be signed by the person who made the service and must state:

        (1) the date and manner of service;
        (2) the name and address of each person served, and
        (3) if the person served is a party's attorney, the name of the party represented by that attorney

Please enter the following for each person served:   Please see attached Certificate of Service.

Date Served:

Manner Served:

First Name:

Middle Name:

Last Name:

Suffix:

Law Firm Name:

Address 1:

Address 2:

City:

State     Texas                Zip+4:

 Telephone:            ext.

Fax:

Email:

If Attorney, Representing Party's Name:

| I. Appellant | II. Appellant Attorney(s) |
|---|---|
| [X] Person * [ ] Organization (choose one) | [ ] Lead Attorney   Additional Counsel: |
| | First Name:        William |
| First Name:        Mateo | Middle Name:     J. |
| Middle Name: | Last Name:        Brotherton |
| Last Name:        Cortez | Suffix: |
| Suffix: | Law Firm Name:  Brotherton Law Firm |
| Pro Se:  ○ | Address 1:   2340 FM 407 |
| | Address 2:  Suite 200 |
| * As Personal Representative of the Estate of Deborah Cortez | City:  Highland Village |
| | State:    Texas                    Zip+4: 75077-3070 |
| | Telephone: 972-317-8700              ext. |
| | Fax:   972-317-0189 |
| | Email:  william@brothertonlaw.com |
| | SBN:  00789989 |

| III. Appellee | IV. Appellee Attorney(s) |
|---|---|
| [X] Persons [ ] Organization (choose one) | [ ] Lead Attorney   Additional Counsel: |
| | First Name:     Brian |
| First Name:        Sandra Flesher Brown | Middle Name: T. |
|                    Charlotte Flesher Ash | Last Name:     Thompson |
| Middle Name:      Charlene Flesher Johnston | Suffix: |
| Last Name:        Connie Lou Keith Barry | Law Firm Name:  Hopper Mikeska, PLLC |
| Suffix:           Randall Wayne Davis | Address 1:   400 West 15th Street |
|                    Virginia Villers | Address 2:   Suite 408 |
| Pro Se:  ○         Charles Roberts | City:    Austin |
|                    Lisa A. Smith | State:    Texas                    Zip+4:  78701-1654 |
|                    Patricia Chapman | Telephone: 512-615-6195              ext. |
|                    Betty J. Marks Webb | Fax: 512-615-6194 |
|                    James Berl Marks | Email: bthompson@hoppermikeska.com |
|                    Linda Murray | SBN:  24051425 |
|                    Thomas Wayne Marks | |
|                    Donald Leman Whited | |

Service via Filetime.com E-Filing/E-Service on:

Rose Cohen
State Bar No. 24031961
rose@cohenlegalservices.com
Mark Cohen
State Bar No. 24031961
mark@cohenlegalservices.com
The Law Offices of Mark Cohen
805 W. 10th Street, Suite 100
Austin, Texas 78701-2029
512-474-4424
512-472-5444 fax

*Attorneys for Linda Murray in her capacity*
*as Successor Trustee*

Aaron C. Boone
WV Bar No., 9479
aboone@bowlesrice.com
Bowles Rice LLP
501 Avery Street, P.O. Box 49
Parkersburg, WV  26102-0049
304-420-5501
304-420-5587 fax

*Attorney for Connie Lee Keith Barry*

Amanda G. Taylor
State Bar No. 24045921
ataylor@beckredden.com
Beck & Redden, LLP
515 Congress Avenue, Suite 1750
Austin, TX 78701-3526
512-708-1000
512-708-1002 fax

Brian T. Thompson
State Bar No. 24051425
bthompson@hoppermikeska.com
Hopper Mikeska, PLLC
400 W. 15th Street, Suite 408
Austin, TX  78701-1654
512-615-6195
512-615-6194 fax

*Attorneys for Appellees*
*Sandra Flesher Brown*
*Charlotte Flesher Ash*
*Charlene Flesher Johnston*
*Connie Lou Keith Barry*
*Randall Wayne Davis*
*Virginia Villers*
*Charles Roberts*
*Lisa A. Smith*
*Patricia Chapman*
*Betty J. Marks Webb*
*James Berl Marks*
*Linda Murray*
*Thomas Wayne Marks*
*Donald Leman Whited*